# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: DOLLAR GENERAL CORP. | ) | MDL No. 2709 |
| MOTOR OIL MARKETING AND | ) | |
| SALES PRACTICES LITIGATION | ) | Master Case No. 16-02709-MD-W-GAF |
| | ) | |
| THIS PLEADING RELATES TO: | ) | |
| | ) | |
| ALL ACTIONS | ) | |

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARD............................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.   PLAINTIFFS' CLASSES AND SUB-CLASSES SATISFY RULE 23(A)'S
     REQUIREMENTS ......................................................................................................... 3

     A. Plaintiffs Satisfy the Commonality and Typicality Requirements of Rule
        23(a) .......................................................................................................................... 3

     B. Plaintiffs' Classes and Sub-Classes are Adequately Defined and
        Ascertainable............................................................................................................ 4

        1.   Plaintiffs' classes and sub-classes are properly defined and clearly ascertainable ......... 4

        2.   Defendants' arguments go beyond the face of the CAC and should be rejected ............ 8

II.  PLAINTIFFS HAVE STANDING AND ARE ADEQUATE CLASS
     REPRESENTATIVES ................................................................................................. 13

III. PLAINTIFFS' CLASSES AND SUB-CLASSES SATISFY RULE 23(B)'S
     REQUIREMENTS ....................................................................................................... 18

     A. Plaintiffs' Rule 23(b)(2) Allegations are Appropriate ......................................... 18

     B. Plaintiffs Can Satisfy Rule 23(b)(3)'s Predominance Requirement .................... 20

IV.  DEFENDANTS' MISCELLANEOUS "THRESHOLD" ISSUES SHOULD BE
     REJECTED .................................................................................................................. 26

     A. Plaintiffs' Unjust Enrichment Class Claims are Not Improper As a Matter
        of Law .................................................................................................................... 26

     B. Plaintiff Foppe's KCPA Claim is Properly Brought as a Class Action .............. 26

     C. Plaintiff Fruhling's OCSPA Claim is Properly Brought as a Class Action ........ 28

     D. Plaintiff Brown's CCPA Class Claim is Properly Pled ....................................... 29

     E. Plaintiff Sheehy's MUDTPA Class Claim is Properly Pled ................................ 29

CONCLUSION..................................................................................................................... 30

i

# TABLE OF AUTHORITIES

## Cases

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ...................................................... 4

*Barnett v. Johnson*, 839 F. Supp. 236 (S.D.N.Y. 1993) ................................................................ 18

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................... 19

*Blankenship v. CFMOTO Powersports, Inc.*, 166 Ohio Misc. 2d 21 (Ohio Misc. 2011)............. 22

*Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585 (8th Cir. 2009) ................................................... 15

*Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008)........................................................ 24

*Briseno v. ConAgra Foods, Inc.*, No. 15-55727, 2017 WL 24618 (9th Cir. Jan. 3, 2017)............. 5

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ................................................... 25

*Byrd v. Aaron's Inc.,* 784 F.3d 154 (3d Cir. 2015) ......................................................................... 5

*Canady v. Allstate Ins. Co.*, No. 96CV0174, 1997 WL 33384270 (W.D. Mo. June 19, 1997)...... 7

*Carnegie v. Household Int'l., Inc.,* 376 F.3d 656 (7th Cir. 2004) ................................................. 25

*Chaz Concrete Co., LLC v. Codell*, No. 3:03-52-KKC, 2006 WL 2453302
(E.D. Ky. Aug. 23, 2006)............................................................................................................... 12

*City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*,
281 F.R.D. 347 (D. Minn. 2012)............................................................................................ 16, 23

*Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75 (N.D.N.Y. 2011) ............................... 12

*Corder v. Ford Motor Co.*, 283 F.R.D. 337 (W.D. Ky. 2012) ............................................... 22, 28

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995); ....................................................... 3

*DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010)............................................. 11

*Dix v. Am. Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206 (Mich. 1987) ........................ 22

*Doyel v. McDonald's Corp.*, No. 4:08-CV-1198, 2009 WL 350627
(E.D. Mo. Feb. 10, 2009)............................................................................................................... 15

*Elias v. Ungar's Food Prods., Inc.,* 252 F.R.D. 233 (D.N.J. 2008) ............................................. 23

*Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388 (D. Neb. 2004).................................................. 24

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998).............................................. 15

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012)........................................... 17

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT,
2013 WL 5448078 (D. Colo. Sept. 27, 2013).................................................................................. 1

*Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92 (Colo. 2011) ............................................... 23, 29

*Gardner v. Hartford Life & Accident Ins. Co.*, 2008 WL 4279815,
No. 2:08-CV-04030-NKL (W.D. Mo. Sept. 15, 2008)................................................................... 2

ii

*Giesmann v. Am. Homepatient, Inc.*, No. 4:14-CV-1538, 2015 WL 3548803
(E.D. Mo. June 8. 2015)....................................................................................... 2, 15

*Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn. 2001)............................. 23

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012)..................................... 21

*Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013)............................... 12

*Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446 (D. Neb. 2010) .................................. 24

*Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D. Tex. 2000)....................................... 23

*In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 WL 927745
(W.D. Mo. Mar. 26, 2007)...................................................................................... 6

*In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919 (C.D. Cal. 2015)........................................ 23, 29

*In re K-Dur Antitrust Litig.*, No. 01-0652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) .............. 11

*In re McCormick & Co., Inc.*, No. 15-1825, 2016 WL 6678340 (D.D.C. Nov. 11, 2016)..... 21, 26

*In re Nexium Antitrust Litig.,* 777 F.3d 9 (1st Cir. 2015) ........................................... 11

*In re OnStar Contract Litig.*, 600 F. Supp. 2d 861 (E.D. Mich. 2009)....................................... 29

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) .................................... 16

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) .................................... 22

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) ...................... 26

*In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83 (Cal. App. Ct. 2009).................................... 22, 23

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838
(6th Cir. 2013)..................................................................................................... 11

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, 267 F.R.D. 549 (D. Minn. 2010).......................... 21

*Jones v. Murphy*, 256 F.R.D. 519 (D. Md. 2009) ................................................... 17

*Kaluom v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866 (S.D. Tex. 2007) ...................... 12

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) .......................... 24

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) .......................................... 24

*Kohen v. Pacific Inv. Mgmt. Co.,* 571 F.3d 672 (7th Cir. 2009)................................. 11

*Labrier v. State Farm Fire & Cas. Co.*, 315 F.R.D. 503 (W.D. Mo. 2016) ....................... 3, 5, 25

*Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 WL 4083478
(W.D. Mo. Aug. 1, 2016)......................................................................................... 5

*Lang v. Kansas City Power & Light Co.*, 199 F.R.D. 640 (W.D. Mo. 2001).................. 4, 5, 7, 8

*Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla. Dist. Ct. App. 2000) ..................... 22

*Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 WL 6055401
(S.D. Ohio Nov. 15, 2013)...................................................................................... 12

iii

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .................................................. 14

*Lunsford v. U.S.*, 570 F.2d 221 (8th Cir. 1977) ....................................................... 1

*Mahne v. Ford Motor Co.*, 900 F.2d 83 (6th Cir. 1990).............................................. 18

*Mayo v. UBS Real Estate Sec., Inc.,* No. 08-00568-CV-W-DGK, 2012 WL 2848002
(W.D. Mo. Jan. 13, 2012) ..................................................................................... 27

*McGee v. East Ohio Gas Co.*, 200 F.R.D. 382 (S.D. Ohio 2001) ............................... 12

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................ 11

*Midwestern Mach. v. Nw. Airlines, Inc.,* 211 F.R.D. 562 (D. Minn. 2001)................... 11

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ............... 15

*Mims v. Stewart Title Guar. Co.,* 590 F.3d 298 (5th Cir. 2009) .................................. 11

*Mitchell v. Frank Bank, S.S.B.*, No. 05-1320, 2006 WL 1132408 (D. Minn. Mar. 15, 2006)........ 2

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).................................... 5, 6

*Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600 (D. Kan. 2014)...................... 22, 25

*Nobles v. State Farm Mutual Automobile Ins. Co.*, No. 10-04175-CV-C-NKL,
2012 WL 4090347 (W.D. Mo. Sept. 17, 2012) ...................................................... 2

*O'Neill v. The Home Depot USA, Inc.*, 243 F.R.D. 469 (S.D. Fla. 2006) ................... 13

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010) .................................. 26

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982) ......................................... 3

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000)............................... 13

*Pitts v. Am. Sec. Ins. Co.,* 550 S.E.2d 179 (N.C. Ct. App. 2001) ............................. 23

*Plubell v. Merck & Co. Inc.*, 289 S.W.3d 707 (Mo. 2009)......................................... 22

*Powers v. Credit Mgmt. Servs., Inc.*, 313 F.R.D. 103 (D. Neb. 2016) ....................... 24

*Rawlings v. ADS All. Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 WL 3866885
(W.D. Mo. June 23, 2015) ..................................................................................... 2

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................... 19

*Rikos v. Procter & Gamble Co.,* 799 F.3d 497 (6th Cir. 2015) .................................. 5

*Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015)...................................... 11

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)...................................... 6

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 (8th Cir. 2016) ........ 4, 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ...................... 27

*Smith v. Conocophillips Pipe Line Co.*, 298 F.R.D. 575 (E.D. Mo. Mar. 31, 2014) ................... 20

*Speer v. Cerner Corp.*, No. 14-0204-CV-W-FJG, 2016 WL 5395268

iv

(W.D. Mo. Sept. 26, 2016) ........................................................................... 14

*Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) ......................................... 17

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) .................................................... 25

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ................................ 21, 22

*Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006) ............................................. 17

*Walker v. World Tire Corp.*, 563 F.2d 918 (8th Cir. 1977) ............................................................ 2

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 21

*Walters v. Reno,* 145 F.3d 1032 (9th Cir. 1998) ......................................................................... 11

**Statutes**

Ohio Admin. Code Chapter 109:4-3-10 ........................................................................................ 28

Ohio Revised Code §1345.02(B)(1), (2) ...................................................................................... 28

Ohio Revised Code §1345.03(B)(3), (6) ...................................................................................... 28

Ohio Revised Code §1345.05(B)(2) ............................................................................................ 28

**Rules**

NEWBERG ON CLASS ACTIONS §2:5 (4th ed. 2003) ...................................................................... 15

NEWBERG ON CLASS ACTIONS §4:80 (5th ed.) ............................................................................... 17

NEWBERG ON CLASS ACTIONS §7.22 (5th ed.) ................................................................................. 2

NEWBERG ON CLASS ACTIONS, §4:54 (Winter 2013 Supp.) ........................................................ 25

**Other Authorities**

Fed. R. Civ. P.  8(a) ..................................................................................................................... 17

Fed. R. Civ. P.  8(a)(3) ................................................................................................................ 20

Fed. R. Civ. P.  8(d)(2) ................................................................................................................ 20

Fed. R. Civ. P. 18 ........................................................................................................................ 20

Fed. R. Civ. P. 23(a)(2) ................................................................................................................. 3

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 3

Fed. R. Civ. P. 23(b)(2) ............................................................................................................... 20

Fed. R. Civ. P. 23(b)(3) ............................................................................................................... 20

v

# INTRODUCTION

This case is about Defendants' marketing and sale of obsolete motor oil, a product which has no legitimate use as a motor oil but which Defendants are able to sell because of their unlawful, deceptive, and unfair acts and practices. As set forth herein, Defendants' motion to strike Plaintiffs' class allegations is premature. Further, Plaintiffs have defined ascertainable classes and sub-classes of Defendants' customers who have purchased their obsolete oil, and Plaintiffs' allegations involve a common course of conduct by Defendants to mislead and deceive consumers. Plaintiffs' claims are typical of those of all class members, and common, class-wide evidence will be used to prove Defendants' violations of law. Moreover, Defendants' motion completely ignores the allegations in Plaintiffs' Consolidated Amended Complaint (CAC). For the reasons discussed below, Defendants' motion to strike should be denied.

# LEGAL STANDARD

Striking a party's pleadings is an extreme measure, such that motions to strike are viewed with disfavor and are infrequently granted. *Lunsford v. U.S.*, 570 F.2d 221, 229 (8th Cir. 1977). This is especially true with respect to a motion to strike class allegations based solely on the pleadings prior to any discovery because class certification determinations generally involve considerations that are enmeshed in factual and legal issues and courts lack the necessary facts at the pleading stage. *See, e.g., Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, *2 (D. Colo. Sept. 27, 2013) (finding that federal courts across the country have denied motions to strike class allegations at the pleading stage and collecting cases); *Giesmann v. Am. Homepatient, Inc.*, No. 4:14-CV-1538, 2015 WL 3548803, *5-6 (E.D.

1

Mo. June 8. 2015).[1]

A motion to strike class allegations is appropriate only where the face of the complaint demonstrates that the alleged class is impermissible. *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977).[2] "It is a rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class." *Rawlings v. ADS All. Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 WL 3866885, *3 (W.D. Mo. June 23, 2015) (quoting *Sherrard v. Boeing Co.*, 2013 WL 5786642, *3 (E.D. Mo. Oct. 28, 2013)); *Walker*, 563 F.2d at 921 ("The propriety of class action status can seldom be determined on the basis of the pleadings alone."). Where, as here, factual issues are disputed, discovery is needed to determine whether a class should be certified, and, it is thus premature to strike the class allegations. *Walker*, 563 F.2d at 921.

## ARGUMENT

Defendants' motion to strike prematurely seeks to hold Plaintiffs to a level of proof required for class certification. As discussed above, at this stage in the litigation, accepting the

---

[1] *See also Gardner v. Hartford Life & Accident Ins. Co.*, 2008 WL 4279815, No. 2:08-CV-04030-NKL (W.D. Mo. Sept. 15, 2008)(denying motion to strike class allegations); *Nobles v. State Farm Mutual Automobile Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347, *3 (W.D. Mo. Sept. 17, 2012) ("At this stage of the proceedings, the Court cannot say with certitude that the existence of evidence in support of class certification is so unlikely that dismissal of the state law class allegations is justified."); *Mitchell v. Frank Bank, S.S.B.*, No. 05-1320, 2006 WL 1132408, *2-3 (D. Minn. Mar. 15, 2006)(concluding that a motion to strike class allegations is premature where the plaintiff had not been afforded the opportunity to complete discovery and further development of the factual record was required to determine whether class certification was appropriate).

[2] *See also, e.g., Rawlings v. ADS All. Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 WL 3866885, *4 (W.D. Mo. June 23, 2015); *Nobles*, 2012 WL 4090347, *3 ("In order to dismiss or strike Plaintiffs' state law class action claims, the Court would have to find that, even accepting all of Plaintiffs' allegations as true, no additional evidence Plaintiffs could present via discovery and a class certification hearing would permit their proposed classes to be certified."); NEWBERG ON CLASS ACTIONS §7.22 (5th ed.) ("Rule 12-like procedures—accepting the pleaded facts as true and asking whether certification is plausible—apply before the end of discovery, but following discovery, a Defendants' motion to defeat certification will generally be adjudicated on the Rule 23 requirements.").

2

alleged facts in the CAC as true, the question is whether certification of the alleged classes and sub-classes is plausible. As set forth below, nothing on the face of Plaintiffs' CAC demonstrates that class certification is implausible, impossible or impermissible. Indeed, just the opposite is true. Plaintiffs' claims concern a single defendant, operating in the same type of store, using the same mode of sale, selling the same type of product, and using the same marketing plan. Defendants' motion to strike must be denied.

## I. PLAINTIFFS' CLASSES AND SUB-CLASSES SATISFY RULE 23(A)'S REQUIREMENTS

### A. Plaintiffs Satisfy the Commonality and Typicality Requirements of Rule 23(a)

The relevant question in this motion is whether, based on the allegations in the CAC, it is plausible that Plaintiffs will come forward with sufficient evidence at the class certification stage to demonstrate commonality and typicality. There is nothing in the CAC to support a finding that Plaintiffs would not be able to demonstrate commonality and typicality with respect to any of the alleged classes or sub-classes.

Commonality requires a showing that common issues of fact or law affect all class or sub-class members. Fed. R. Civ. P. 23(a)(2); *Labrier v. State Farm Fire & Cas. Co.*, 315 F.R.D. 503, 512 (W.D. Mo. 2016); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Typicality requires class representatives' claims to be typical of those of the individuals in the class or sub-class and is satisfied when each class member's claim arises from the same course of conduct and each class member makes similar legal arguments to prove the defendants' liability. Fed. R. Civ. P. 23(a)(3); *Labrier*, 315 F.R.D. at 514; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995); *Paxton*, 688 F.2d at 562. Differing factual situations of class members do not defeat typicality when the claims arise from the same event or course of

conduct. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996); *Lang v. Kansas City Power & Light Co.*, 199 F.R.D. 640, 647 (W.D. Mo. 2001).

Nothing on the face of Plaintiffs' CAC supports a finding that Plaintiffs will not be able to demonstrate commonality and typicality, as each Plaintiff's and each class member's claims arise from the same unfair and deceptive conduct employed by Defendants in their marketing and sale of obsolete motor oil, and they will use the same evidence to establish Defendants' liability. CAC at ¶¶110-111. Further, in addition to Defendants' deceptive and misleading conduct which is applicable to all Plaintiffs, Plaintiffs included a list of 25 factual and legal questions common to all Plaintiffs and class members in the CAC. *Id.* at ¶111. Moreover, Defendants previously admitted that the factual allegations are common and typical.[3] Thus, Defendants motion to strike with respect to Rule 23(a)'s commonality and typicality requirements should be denied.

**B.      Plaintiffs' Classes and Sub-Classes are Adequately Defined and Ascertainable**

**1.      Plaintiffs' classes and sub-classes are properly defined and clearly ascertainable**

Defendants' commonality and typicality arguments are essentially challenges to the ascertainability of the classes and sub-classes alleged. Def. Mem. at 7-12. An implicit requirement of Rule 23 is that "the class sought to be represented must be adequately defined and clearly ascertainable." *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 997-98 (8th Cir. 2016). This means that a class must be defined clearly such that the court is

---

[3] *See* Defendants' Memorandum Supporting Motion to Transfer at 5-6, *In re Dollar General Corp. Motor Oil Litig.*, MDL No. 2709 (J.P.M.L. Mar. 7, 2016) [Doc. No. 1-1], attached hereto as Exhibit A (acknowledging common factual and legal issues: "the core factual allegations asserted against Dollar General…in each action are practically identical," "these actions allege similar legal violations based on the same factual allegations," and "discovery in each case will require similar information from Dollar General").

able to determine class membership by reference to objective criteria. *Id*. This standard is not demanding, and as discussed below, Plaintiffs' classes and sub-classes are properly defined and ascertainable.[4]

Plaintiffs' have proposed two nationwide classes and 16 sub-classes, each of which is defined in Paragraph 101 of the CAC. The class and sub-class definitions are similar and generally include all persons -- either in the United States or in a particular state -- who purchased at least one of Defendants' three obsolete motor oil products for personal use within a given time period.[5] CAC ¶101. These class definitions use objective criteria, including a defined time period, to identify class members.

Plaintiffs' classes and sub-classes do not suffer from any of the three common problems that most often cause ascertainability problems discussed by the Seventh Circuit in *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015). They are not vague, as each class and

---

[4] There is a split among the circuit courts of appeal as to whether a plaintiff must also demonstrate that there is an administratively feasible means of identifying class members. Most recently, the Ninth Circuit discussed this issue, although declining to use the term "ascertainability" because of the variation in the meaning of this term among the courts. *Briseno v. ConAgra Foods, Inc.*, No. 15-55727, 2017 WL 24618 (9th Cir. Jan. 3, 2017); *see also Sandusky*, 821 F.3d at 995-96. The Eighth Circuit, along with the Sixth, Seventh, and Ninth Circuits do not require this additional showing of administrative feasibility. *Sandusky*, 821 F.3d at 997-98; *Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-04147-NKL, 2016 WL 4083478, *5 (W.D. Mo. Aug. 1, 2016); *Labrier*, 315 F.R.D. at 512; *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The Third Circuit recognizes a heightened ascertainability requirement which also requires a showing that there is a reliable and administratively feasible way to determine who falls within the class definition. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). However, even under the Third Circuit's heightened ascertainability requirement, a plaintiff need only show that class members can be identified and is not required to identify all class members at class certification. *Id*. As discussed herein, Plaintiffs can satisfy even this heightened requirement, to the extent it becomes applicable.

[5] The Court may modify Plaintiffs' proposed class and sub-class definitions as it deems necessary. *See Lang*, 199 F.R.D. at 644. Plaintiffs may also modify their proposed class and sub-class definitions in conjunction with their motions for class certification or by seeking to amend the CAC if "additional information obtained through further investigation and discovery" demonstrates the need to expand or narrow the proposed definitions. CAC ¶103.

5

sub-class identifies a particular group harmed during a particular time frame in a particular location in a particular way. *Id* at 660. They are not defined by subjective criteria, as they are defined in terms of conduct, rather than a state of mind. *Id.* And, they are not fail-safe classes, as membership does not depend on the liability of Defendants. *Id.*

Plaintiffs' classes and sub-classes likewise do not suffer from the deficiencies found in the proposed class definitions in the cases discussed by Defendants.[6] Def. Mem. at 9-12. Among the deficiencies in the plaintiff's claims in *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009), the court found that the class was defined to include individuals who did not purchase the product at issue and persons who did not see the advertisements that the plaintiff contended caused them to purchase the product. *Id.* Here, the CAC focuses on the point of sale, which Defendants have designed to be the same at all stores, so all customers have the same experience.

*In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007) concerns a putative class in a securities litigation using a "fraud on the market" theory of liability which does not require individual reliance or even awareness of the particular fraudulent statement or omission. *Id.* at *2. The court found the class definition to be overbroad and thus commonality lacking for reasons peculiar to the application of the plaintiffs' "fraud on the market" theory and having nothing to do with the issues of Plaintiffs' claims herein. *Id.* at *3. Nevertheless, the court ultimately certified a class using a modified class definition. *Id.* at *4, 7.

Plaintiffs' class definitions do not resemble the class in *Canady v. Allstate Ins. Co.*, No.

---

[6] Notably, of these cases, only *Sanders* was decided on a motion to strike class allegations. The remaining cases on which Defendants rely were decided on a motion for class certification following discovery.

6

96CV0174, 1997 WL 33384270 (W.D. Mo. June 19, 1997) as Defendants contend. Def. Mem. at 10. There, the plaintiffs brought claims for violations of the Civil Rights Act and the Fair Housing Act based on allegations that the defendant insurance companies conspired to and did refuse to sell homeowners' insurance on equal terms to residents of predominantly minority neighborhoods. The court found that the class, defined as all persons who owned a home in a minority neighborhood, was overbroad given that "neighborhood" was defined using zip code boundaries. *Id.* at *2. According to the court, minority zip codes often included historic homes and expensive neighborhoods, as well as less economically desirable neighborhoods, and the plaintiffs did not establish that the redlining practices of which they complained affected every homeowner in those minority neighborhoods. *Id.* By contrast, here, each class member purchased Defendants' obsolete oil and were subjected to Defendants' deceptive labeling and product placement practices. Moreover, *Canady* was not decided solely on the pleadings but was before the court on the plaintiffs' renewed motion to maintain the action as a class action following three months of discovery pertaining to class certification issues. *Id.* at *1.

Finally, Plaintiffs' classes are likewise unlike that proposed in *Lang*, 199 F.R.D. 640. There, the plaintiffs sought certification for a single class of defendant's employees who were adversely affected by five different types of racially discriminatory policies. *Id.* at 643. The court found this class definition to be overbroad because not all class members asserted each of the five claims and the class representatives likewise did not present all of the class' claims. *Id.* at 643-44. Further, the court found a lack of commonality because of the different factual and legal arguments associated with the five differing types of racial discrimination alleged. *Id.* at 644. However, noting that the court "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too

broadly" the court determined that the problems with the class definition could be solved by dividing the class into subclasses, one for each of the legal claims to be asserted, similar to what Plaintiffs have done here. *Id.* (internal quotation omitted).

Plaintiffs' classes and sub-classes are adequately defined and ascertainable, and Defendants' motion to strike should be denied.

### 2. Defendants' arguments go beyond the face of the CAC and should be rejected

Defendants go well beyond what is required of Plaintiffs at the pleading stage and improperly combine a number of inconsequential arguments under the "ascertainability" label. Defendants argue that Plaintiffs' proposed classes and sub-classes are overbroad and not ascertainable because they include some class members with no injury in that some class members were not misled and some class members intended to purchase Defendants' obsolete oil for use in pre-1988 and pre-1930 vehicles or for use in lawn mowers.[7] Def. Mem. at 9-12. These factual assertions are pure speculation and counter to the allegations in the CAC.

Plaintiffs allege that Defendants' deceptive labeling and product placement misleads all customers. CAC ¶¶44, 49. Plaintiffs allege that the front label used on Defendants' motor oil, which is the only portion of the label visible to consumers when the product is sitting on the store shelves, fails to provide any warning that Defendants' motor oil is obsolete and is deceptive in that it is designed to look like non-obsolete oil. *Id.* at ¶¶45-49, 53, 65. Plaintiffs allege that

---

[7] Defendants also suggest that the class definitions include class members who received a market advantage because they purchased Defendants' obsolete motor oil at a price lower than a competitor motor oil. Def. Mem. at 10. Plaintiffs do not understand Defendants' argument here, as Plaintiffs are not aware of any competitor's obsolete motor oils sold by Dollar General. Further, Plaintiffs allege that Defendants' obsolete motor oil is worthless and that the only reason anyone purchased Defendants' obsolete motor oil was because of Defendants' deceptive acts and practices. CAC ¶¶69, 76, 81, 119, 122-123. Thus, it is unclear what market advantage was received by the purchase of a worthless product, even if the customer would have spent more money on a legitimate product.

consumers do not read the back labels. *Id.* at ¶65. Plaintiffs also allege that Defendants'
intentional placement of their obsolete oil along-side legitimate motor oil further deceives
consumers into thinking Defendants' motor oil is comparable to the other motor oil sold. *Id.* at
¶¶48-49. And, Plaintiffs allege that even the back label, which discloses the fact that Defendants'
motor oil is obsolete, is deceptive and misleading to reasonable consumers even when read. *Id.* at
¶¶59-62. Defendants' contentions that their warnings were conspicuous, read, and understood are
contrary to Plaintiffs' allegations, which are accepted as true for purposes of this motion.
Further, the focus of Plaintiffs' claims is Defendants' uniform deceptive and misleading
practices in their sale of obsolete oil. In fact, whether the disclosures were adequate can be
decided once as to all class members' claims. In any event, for many of Plaintiffs' claims, there
is no reliance requirement and it does not matter whether anyone was in fact misled. *See*
discussion in Part III(B), *infra.* Defendants have presented nothing to support their speculation
here.

      That there are any owners of pre-1988 or pre-1930 vehicles who purchased Defendants'
obsolete oil for those vehicles is also pure speculation on Defendants' part, and Plaintiffs dispute
this notion.[8] It is contrary to discovery to date and is not likely to be heard at trial. Although
Defendants rely on a 2009 report to argue that "there is a segment of Dollar General customers
and the public at large who own" pre-1988 vehicles, Def. Mem. at 12, there are several problems
with Defendants' reliance on this report, the least of which is that the report says nothing specific
to Defendants' customers.[9] The standard for a motion to strike requires all reasonable inferences

---

[8]  Defendants misconstrue Plaintiffs' complaint to the extent they argue that Plaintiffs
acknowledge that class members exist who own pre-1988 or pre-1930 vehicles and who
purchase Defendants' obsolete motor oil for those vehicles. Def. Mem. at 12. *See* CAC ¶¶64, 69.
[9]  Additionally, the data in the report is pre-class period, so it is not relevant. Further, the number
of vehicles twenty years or older based on 2009 data includes vehicles for 1988 and 1989, for

to be drawn in Plaintiffs' favor, not Defendants'. It is not reasonable to believe that any class members, much less a significant number of them, have antique vehicles and purchase motor oil for those vehicles at Dollar General.[10] To the extent there are any class members with pre-1988 or pre-1930 vehicles who purchased Defendants' obsolete oil for those vehicles, that number is small. In any event, this is an issue to be borne out by discovery and not decided at the pleadings stage.

The same is true for Defendants' concerns over purchases of their motor oil for use in lawn mowers. Plaintiffs' claims arise from Defendants' deceptive marketing and advertising of their obsolete motor oil for use in modern automobiles, and there are no allegations that anyone purchased Defendants' motor oil solely for use in non-automobile engines. Defendants' use of the "DG Auto" label and a black and white checkered flag and their placement of the products in the automobile section of their store, as opposed to lawn and garden section, clearly demonstrated their intent for the products to be used in automobiles. The extent to which Defendants' products were suitable for lawn mowers is not an issue here.[11] The fact that a

_____

which Defendants' obsolete oil would not be suitable. Finally, even assuming these 6.7% of consumers are purchasing motor oil for their antique cars from Defendants, according to the industry recommendations cited by Defendants in the motion to dismiss, modern oil is backwards compatible and is preferred for these cars over obsolete oil.

[10] Notably, the SAE standard J183, relied on by Defendants in their motion to dismiss, states as follows with respect to Defendants' DG SAE 30 motor oil:

> [t]he number of vintage automotive engines, in use, which could use such a limited performance category without harm is extremely small (far less than 0.1% of vehicles registered in the U.S.

SAE J183, §A.2.3.2, Exh. D to Def. Mtn. to Dismiss [Doc. No. 84].

[11] This is an issue that can be explored in discovery; however, Plaintiffs are already aware of some documents that indicate Defendants' motor oil is not suitable for use in such equipment. Customer complaints have been produced from a few consumers whose lawn mowers or other equipment was damaged following the use of Defendants' obsolete motor oil. It is not clear whether these consumers purchased Defendants' products with the intent to use them in this equipment or if they purchased the products for use in their automobiles and used it in this other equipment simply because it was readily available. Defendants can also explore Plaintiff

10

consumer purchased Defendants' obsolete motor oil for use in their automobile and then also used it in their lawn mower or other equipment is not relevant, and it is pure speculation at this point to say that there are more than a handful of people who even did this. If discovery demonstrates that there are numerous consumers who purchased the products for use in lawn mowers, the class definition can be modified, if necessary, to address this.

Moreover, applicable case law further refutes Defendants' position. It is well established that the presence of some potential class members who have suffered no damages is not fatal to class certification, so long as liability for any damages is susceptible to common proof. *E.g., Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009).[12] Plaintiffs' CAC sets forth a common course of conduct establishing Defendants' liability.

In *Kohen*, the Seventh Circuit affirmed class certification in a case alleging that the defendants cornered the market in a particular futures contract. *Kohen*, 571 F.3d 672. While the court acknowledged that the class, defined to include all persons who bought a particular type of futures contract during a particular time period, may include some purchasers that may not have been harmed by the alleged manipulation depending on the individual characteristics of their trades, the court concluded that the class was sufficiently defined to exclude the likelihood that many plaintiffs were improperly included. *Id.* at 677. As discussed above, to the extent there are any class members with pre-1988 or pre-1930 vehicles and who intended to purchase

---

Barrow's use of their products, and if his use renders him an inadequate class representative, Plaintiffs can likewise address that at class certification.

[12] *In re K-Dur Antitrust Litig.*, No. 01-0652, 2008 WL 2699390, *18 (D.N.J. Apr. 14, 2008); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012); *Midwestern Mach. v. Nw. Airlines, Inc.*, 211 F.R.D. 562, 572 (D. Minn. 2001); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 855 (6th Cir. 2013); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 25, 30–31 (1st Cir. 2015); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 296 (S.D.N.Y. 2015).

Defendants' obsolete oil for those vehicles, that number is small.

The additional cases cited, but not discussed, by Defendants concerning overbroad classes are distinguishable from Plaintiffs' claims and thus, are not relevant.[13] Def. Mem. at 8. The primary distinction is the fact that here, Plaintiffs allege that all purchasers of Defendants' obsolete motor oil were subject to Defendants' deceptive labeling and product placement practices and purchased Defendants' obsolete motor oil as a result of those practices. Thus,

---

[13] In *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382 (S.D. Ohio 2001), the plaintiff complained of the defendant gas company's alleged practice of improperly consolidating unpaid balances onto new applicant accounts and then denying service to new applicants based on unpaid balances owed by non-applicants. The proposed class included all applicants for gas service from defendants, which the court found to be overbroad because it did not exclude applicants who were not subjected to the complained of unlawful consolidation practice. *Id.* at 388. In *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013) the plaintiff sought class certification for a class of insureds relating to the insurer's percentile reduction of payment for personal injury protection (PIP) insurance. Similar to the conclusions by numerous other courts confronted with a motion for class certification based on PIP coverage, the court determined that class certification was inappropriate because of the individualized determinations associated with the medical necessity of each claim, as well as the amount billed, the service provided and the fees customarily charged in each locale. *Id.* at 779-80. The overwhelming individualized questions inherent in claims of fraudulent representations regarding insurance coverage disputes are not present in this case. The court in *Chaz Concrete Co., LLC v. Codell*, No. 3:03-52-KKC, 2006 WL 2453302, *13 (E.D. Ky. Aug. 23, 2006) determined that the plaintiffs' RICO class could not be certified for a number of reasons, including that class membership was not based on an objective criteria; rather, the court would be required to make individual factual determinations as to whether each class member relied on the defendants' misrepresentations, as reliance could not be presumed for plaintiffs' RICO claims. In *Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 WL 6055401, *4 (S.D. Ohio Nov. 15, 2013), the court found the vast majority, if not all, of the putative class members lacked standing in the plaintiffs' false advertising claim because they were never exposed to the single statement on which plaintiffs' claims were based and thus, the class of mostly uninjured individuals was overbroad. The defendant produced all of its advertisements in conjunction with its motion and the plaintiffs were unable to identify any further discovery that could alter the fact that the statement at issue did not appear in any of the advertising. *Id.* at *3. Here, in contrast, any purchaser of Defendants' obsolete oil was necessarily exposed to the misleading statements and product placement at issue. The court in *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75 (N.D.N.Y. 2011) found the class definition to be adequate. *Id.* at 87. The quote cited by Defendants is from the *Colozzi* court's discussion of a different case that it found to be distinguishable. *Id.* at 86. *Kaluom v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866, 873 (S.D. Tex. 2007), involved a motion for notice in a FLSA claim, and the court found the class was overbroad, as it included workers exempt from the FLSA. These issues are not present here.

12

according to Plaintiffs' allegations, all class members were harmed by Defendants' unlawful conduct. Another important distinction is that *McGee, Halvorson, Chaz, Colozzi,* and *Kaluom,* like most of the cases cited by Defendants, were decided on the respective plaintiff's motion for class certification, where the plaintiffs were given the opportunity to develop the record, which is not the case here.

Finally, there is nothing in the CAC creating the conflicts present in *O'Neill* and *Pickett* (Def. Mem. at 12)[14] or otherwise demonstrating that Plaintiffs' classes and sub-classes are not ascertainable. Here, Plaintiffs allege that all class members were harmed by Defendants' deceptive acts and practices. CAC ¶110. Accordingly, Defendants' motion should be denied.

## II. PLAINTIFFS HAVE STANDING AND ARE ADEQUATE CLASS REPRESENTATIVES

Defendants' standing argument with respect to the various grades of obsolete motor oil sold by Defendants confuses Article III standing with Rule 23 class certification issues. Article III standing requires only that a named plaintiff personally suffered an injury in fact, attributable

---

[14] *O'Neill v. The Home Depot USA, Inc.*, 243 F.R.D. 469 (S.D. Fla. 2006), involved a proposed class of customers who rented equipment from the defendant claiming that the defendant's practice of adding a damage waiver charge to rental contracts violated the Florida Deceptive and Unfair Trade Practices Act. The court found the class definition to be inadequate, as it included individuals who knew the details of the damage waiver, knew the damage waiver was optional, or who understood the scope of the damage waiver and chose to purchase it anyway. *Id.* at 477. The court further noted that the plaintiff failed to propose any objective criteria to separate those individuals from class members who suffered from the injuries alleged by the plaintiff. *Id.* at 478. In *Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000), the plaintiffs alleged that forward contracts and marketing agreements between cattle producers and the defendant packer were discriminatory because they could be used to force cattle producers who sell on the spot market to accept a lower price for their cattle. *Id.* at 1278. However, the plaintiffs' class included not only those producers who sold cattle on the spot market but also producers who sold cattle under the challenged forward contracts and marketing agreements. *Id.* at 1280. Finding that the plaintiffs could not adequately represent a class that included those who were harmed by the same acts from which other class members benefitted, the court denied class certification. *Id.* Again, as with most of the cases cited by Defendants, *O'Neill,* and *Pickett* were decided on the respective plaintiff's motion for class certification where the plaintiffs were given the opportunity to develop the record.

13

to defendant's conduct, capable of redress. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). It cannot reasonably be disputed that each Plaintiff has standing to pursue their own individual claims. Each Plaintiff alleges that they purchased Defendants' obsolete motor oil as a result of Defendants' deceptive labeling and product placement. *E.g.*, CAC ¶¶76, 81-99, 110, 124. Given that Plaintiffs have standing to pursue their own, individual claims, the standing inquiry ends.[15] Whether Plaintiffs may also represent other absent class members who suffered a similar injury (*e.g.*, consumers who purchased a grade of Defendants' obsolete motor oil different from that purchased by Plaintiffs) is a separate question relevant only to Rule 23 class certification, not standing. *Speer v. Cerner Corp.*, No. 14-0204-CV-W-FJG, 2016 WL 5395268, *11 (W.D. Mo. Sept. 26, 2016) ("[O]nce a named plaintiff establishes individual standing, the issue of whether a named plaintiff can assert claims on behalf of absent class members is determined at the class certification stage of the litigation.") (quoting *Indergit v. Rite Aid Corp.*, No. 08 CIV. 9361 (PGG), 2009 WL 1269250, *4 (S.D.N.Y. May 4, 2009)); *Braden v. Wal–Mart*

---

[15] Defendants' assertion that Plaintiffs Taschner and Raab are not adequate class and sub-class representatives and lack standing to bring their own claims is wrong. Def. Mem. at 18-19. While Plaintiffs inadvertently omitted the specific paragraphs setting forth the details of Plaintiffs Taschner's and Raab's respective motor oil purchases in the section of the CAC concerning Plaintiffs' purchases (CAC ¶¶82-99), Defendants cannot ignore the remainder of Plaintiffs' allegations in the CAC. There are numerous allegations establishing that Plaintiffs Taschner and Raab purchased Defendants' obsolete motor oil as a result of Defendants' unlawful acts. CAC ¶¶ 22, 28, 149, 166, 184, 389-390, 392, 394, 399, 454; *see also, e.g., id.* at ¶¶76, 121 (alleging that all Plaintiffs, which includes Plaintiffs Taschner and Raab, purchased Defendants' obsolete motor oil as a result of Defendants' unlawful acts and practices). There is no requirement, and Defendants cite none, that Plaintiffs must allege the specific date on which they made their purchases to have standing. Nevertheless, Plaintiff Taschner specifically allege that he purchased approximately $286.00 of Defendants' obsolete motor oil in the past year. *Id.* at ¶399. And, while the CAC does not include specific dates for Plaintiff Raab's purchases, the CAC references Plaintiff Raab's pre-suit notice provided to Defendants, which contains that information. *Id.* at ¶149. Further, definitions of the sub-classes that Plaintiff Taschner and Raab seek to represent contain dates within which all class member purchases, including the named Plaintiffs, were made. Plaintiffs could easily amend the CAC to include the two paragraphs describing Plaintiffs Taschner's and Raab's purchases, should the Court deem it necessary.

14

*Stores, Inc.,* 588 F.3d 585, 592 (8th Cir. 2009); *Giesmann*, 2015 WL 3548803 at *6 n.3 (E.D. Mo. June 8, 2015); *Doyel v. McDonald's Corp.*, No. 4:08-CV-1198, 2009 WL 350627, *5 (E.D. Mo. Feb. 10, 2009); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998); *see also* NEWBERG ON CLASS ACTIONS §2:5 (4th ed. 2003) ("whether a plaintiff will be permitted to represent not only individual claims, but also those of parties not directly before the court who have common claims, depends on whether the plaintiff is able to meet additional criteria, apart from threshold standing tests").[16]

At the class certification stage, the question will be whether Plaintiffs can adequately represent the classes and sub-classes they have defined, which include purchasers of other grades of Defendants' obsolete oil. While there is disagreement on this issue among the district courts, one court has found that "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). As discussed in Part I(A), *supra,* regarding the typicality requirement of Rule 23, Plaintiffs' allegations concern Defendants' marketing and sales practices which are virtually identical for each of the three grades of their DG-brand motor oil. Plaintiffs allege that their injuries are the same as that of all class members, regardless of the particular grade of Defendants' motor oil purchased, and is the result of the same unfair and deceptive conduct on the part of Defendants. There is nothing about the three different grades of Defendants' obsolete oil that would create intra-class conflicts or otherwise make Plaintiffs' claims atypical of class

---

[16] This was also the finding of the court in the related action in Oklahoma. *See* Exh. B, *Sisemore v. Dolgencorp, LLC*, No. 15-cv-724-GKF-TLW, Order at *8 (N.D. Okla. May 11, 2016) [Doc. No. 22]; Exh. C, *Sisemore v. Dolgencorp, LLC*, No. 15-cv-724-GKF-TLW, Order at *3-4 (N.D. Okla. May 13, 2016) [Doc. No. 23].

15

member claims. *See City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 352-53 (D. Minn. 2012); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 691 & n.11 (D. Minn. 1995) (collecting cases). Defendants' standing arguments with respect to the three grades of obsolete motor oil should be rejected.[17]

Likewise, Defendants' arguments regarding standing and adequacy associated with Plaintiffs' allegations relating to automobile damage should be rejected. As Defendants acknowledge, Plaintiff Wood alleges he sustained damage to his automobile as a result of the use of Defendants' obsolete motor oil. Def. Mem. at 16-17. Plaintiffs are also aware of other class members who have sustained similar damage, as asserted in CAC Paragraph 77. Thus, there is no basis to strike Paragraph 77 from the CAC. Further, this automobile damage is not a separate claim, as Defendants seem to suggest. Instead, it is further economic damage that some class members sustained as a result of Defendants' deceptive acts and practices. Defendants' argument is premature, as Plaintiffs have not yet filed their motion for class certification nor proposed their trial plan for dealing with these issues. There are many management techniques available for a court to manage these particular damage concerns at trial, while still efficiently and economically

---

[17] Defendants' requested relief—that the Court strike all class allegations and limit each Plaintiff to their individual claims—is totally unsupported. Def. Mem. at 15. Even if the Court were to agree with Defendants and determine that Plaintiffs can only represent absent class members who purchased the exact grade of Defendants' obsolete oil that each respective Plaintiff purchased, Defendants' own chart demonstrates that for the nationwide classes, all three types of Defendants' obsolete oil were purchased by at least one Plaintiff. Def. Mem. at 13-14. And, at the very least, Plaintiffs are entitled to proceed with their respective classes and sub-classes representing class members who purchased the same type(s) of Defendants' oil that each respective Plaintiff purchased. Moreover, at class certification, if the Court were to ultimately determine that Plaintiffs' claims are typical only of other class members who purchased the same grade of Defendants' motor oil as the Plaintiffs, sub-classes could be created and additional class representatives could be added at that time.

16

deciding common issues on a class-wide basis, including bifurcation and issue certification.[18] Nothing about Plaintiffs' automobile damage allegations affects any Plaintiffs' standing or adequacy as class representatives.

Next, Defendants' argument that certain Plaintiffs are not adequate class representatives for the unjust enrichment class because they did not allege they purchased Defendants' obsolete motor oil for use in a vehicle manufactured after 1988 should be rejected as contrary to the CAC.[19] Def. Mem. at 17. Plaintiffs allege they are members of the unjust enrichment nationwide class, which is defined to include individuals who purchased DG Motor Oil "for use in vehicles manufactured after 1988." CAC ¶¶13-17, 20-23, 28-31, 101, 109.[20] These allegations sufficiently satisfy Fed. R. Civ. P. Rule 8(a)'s liberal pleading standard. Defendants may obtain details about each Plaintiffs' vehicles and purchases through discovery, but there is nothing on the face of the CAC to demonstrate that Plaintiffs are not adequate class representatives.

Finally, Defendants' argument that Plaintiffs are inadequate class representatives for their nationwide implied warranty class confuses standing with choice of law issues. Defendants do not assert that any of the Article III standing requirements are not met; rather, Defendants contend, without any legal support, that Tennessee law applies only to Tennessee residents. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160-61 (C.D. Cal. 2012) (discussing issues of standing and choice of law). There is a causal relationship between Plaintiffs' claims and

---

[18] *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 605-06 (E.D. La. 2006); *Jones v. Murphy*, 256 F.R.D. 519, 525–26 (D. Md. 2009); NEWBERG ON CLASS ACTIONS §4:80 (5th ed.). *See also* Part III(B) & n.27, *infra*.

[19] In their motion to dismiss, Defendants make the same argument with respect to proving the breach element of Plaintiffs' warranty claims, which should likewise be rejected for the same reasons discussed herein. Def. Mtn. to Dismiss at 55-56.

[20] Plaintiffs also allege that they purchased a product not suitable for use in their vehicle. *See* CAC ¶¶64, 124-126, 191-192, 196, 260-263, 276, 288, 301, 311-314, 328, 336-339, 370-371, 398, 413, 455, 475, 488.

17

Tennessee law, as the decisions for and implementation of Defendants' scheme to market and sell obsolete motor oil to consumers occurred in Tennessee. There is no basis to find as a matter of law, relying solely on the pleadings and before choice of law issues have been briefed, that a choice of law analysis could not result in the application of Tennessee law to all Plaintiffs or that the laws of the states conflict in any material way. *See* Plaintiffs' Suggestions in Opposition to Defendants' Motion to Dismiss, Part II(B). And, contrary to Defendants' assertion, there is no requirement that a plaintiff must reside in a state in order for that state's law to apply. *See, e.g., Barnett v. Johnson*, 839 F. Supp. 236, 242 (S.D.N.Y. 1993) (finding Texas law applied in claim brought by South Carolina resident); *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir. 1990) (applying Michigan law to a claim brought by a Florida resident). The cases cited by Defendants are distinguishable in that in those cases, the plaintiffs brought claims under their own state's law and also sought to represent class members with claims under a different state's law. Defendants' adequacy arguments should be rejected.

## III.    PLAINTIFFS' CLASSES AND SUB-CLASSES SATISFY RULE 23(B)'S REQUIREMENTS

### A.    Plaintiffs' Rule 23(b)(2) Allegations are Appropriate

Plaintiffs allege that Defendants' unlawful, deceptive conduct is ongoing and that injunctive and/or declaratory relief, including restraining Defendants from continuing their unlawful conduct, requiring corrective advertising, and requiring accurate representations of the quality of their products sold, is necessary and appropriate.[21] *E.g.*, CAC ¶¶6, 76-77, 113-114, 129, 215, 217, 237, 324, 350, Prayer for Relief at (E), (F), (H). Defendants argue that Plaintiffs

---

[21] Many of Plaintiffs' statutory claims specifically provide for injunctive relief in addition to statutory and/or compensatory damages (*e.g.*, MMPA (Mo. Rev. Stat. §407.025)), and for other of Plaintiffs' claims, the remedy is limited to declaratory/injunctive relief and restitution (*e.g.*, UCL (Cal. Bus. & Prof. Code §17203)). However, Defendants mischaracterize Plaintiffs' MMPA claim and seven other claims as seeking only injunctive relief. Def. Mem. at 21, n.11. The CAC clearly refutes Defendants' contentions. *See, e.g.,* CAC ¶393; Prayer for Relief.

lack standing to assert a claim for injunctive relief because there is no likelihood that Plaintiffs will be injured in the future. Def. Mem. at 20. Courts across the country disagree on this issue. "Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (internal quotation omitted). The *Belfiore* court reviewed numerous federal court opinions and concluded that public policy and precedent support a finding of Article III standing for injunctive relief in such cases. *Id.* "An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Id.*; *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012) ("[W]ere the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."). Defendants' standing argument should be rejected.[22]

Defendants also argue that Plaintiffs' Rule 23(b)(2) class should be stricken because Plaintiffs seek monetary damages and because they believe "[m]onetary damages are the primary object of this litigation." Def. Mem. at 22. This premature argument mischaracterizes the CAC and the law.

First, Plaintiffs allege a number of causes of action applicable to certain alleged classes and sub-classes, with varying available types of relief for each. *See, e.g.,* n.21, *supra.* Thus, it is

---

[22] This was also the finding of the Oklahoma federal court in the related matter, *Sisemore v. Dolgencorp, LLC,* No. 15-cv-724-GKF-TLW, Order at *4-5 (N.D. Okla. May 13, 2016) [Doc. No. 23], attached hereto as Exhibit C.

not correct to say that monetary relief is the primary object for all of Plaintiffs' claims. Further, Plaintiffs are permitted to plead alternative theories of liability and relief sought. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *see also* Fed. R. Civ. P. 18 ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.") Here, Plaintiffs allege facts showing class certification is proper under Fed. R. Civ. P. Rule 23(b)(2) and (b)(3). The rationale for this rule is the fact that there may be factual issues related to class-wide damages, restitution and injunctive relief which are not apparent at the time of pleading. Moreover, the class definition may be modified as the case progresses. At the time of certification, Plaintiffs should be permitted to move for certification under (b)(2) and (b)(3) in the alternative, as well as seek certification of subclasses requesting different remedies. *See, e.g., Smith v. Conocophillips Pipe Line Co.*, 298 F.R.D. 575, 581 (E.D. Mo. Mar. 31, 2014) (certifying property damages and declining to certify medical monitoring class) (citing *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006)).

The cases Defendants cite are inapposite because they involve decisions at the class certification stage. Def. Mem. at 21. Here, in contrast, Defendants ask the Court to adopt dicta within these cases, none of which squarely prohibits bringing a class claim under Rule 23(b)(2) if any monetary damages are claimed at the pleadings stage. Defendants' request is premature and should be denied.

### B.    Plaintiffs Can Satisfy Rule 23(b)(3)'s Predominance Requirement

Plaintiffs will be able to demonstrate that common questions of law and fact predominate

over individual issues, and there is nothing on the face of the CAC to support a finding otherwise. Defendants' general argument that individual issues of causation and reliance prevent common issues from predominating over individual issues is premature, lacks reference to any specific claim(s), and is wrong. Def. Mem. at 23-27.

First, the issues raised by Defendants' predominance arguments are precisely the issues to be litigated and decided in the context of Plaintiffs' motion for class certification. These issues involve considerations that are intertwined with the factual and legal issues comprising Plaintiffs' claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Accordingly, Defendants' motion, based solely on the pleadings, is procedurally premature. Defendants have cited no authority providing that one or more of Plaintiffs' claims cannot, as a matter of law, serve as a viable class claim.

Next, Defendants' predominance arguments are simply incorrect. For many of Plaintiffs' statutory consumer protection claims, individual reliance is not a required element.[23] In those cases, reliance is judged by an objective standard, from a reasonable consumer's perspective, and

---

[23] Certification of Plaintiffs' breach of implied warranty claims and Plaintiff Vega's Song-Beverly claims is likewise not precluded by individual issues. *See, e.g., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (finding claims of breach of implied warranty claims under California and New York state laws require an objective standard and that since the plaintiffs' theory is grounded in a defective design common to all washers, the breach of implied warranty claim is susceptible of common proof and noting that "courts routinely certify implied warranty classes for this reason"); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 480-82 (C.D. Cal. 2012) (finding nature of Song–Beverly violation is common to all class members); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 267 F.R.D. 549, 564 (D. Minn. 2010) (certifying breach of implied warranty class and finding "each class member will not be required to prove that he or she relied on the warranty in order to succeed on the breach of warranty claim"), *aff'd*, 644 F.3d 604 (8th Cir. 2011). Additionally, contrary to Defendants' argument, unjust enrichment classes can be and have been certified. *See In re McCormick & Co., Inc.*, No. 15-1825, 2016 WL 6678340, *13-14 (D.D.C. Nov. 11, 2016) (on defendant's motion to dismiss, collecting cases demonstrating courts' differing outcomes concerning certification of unjust enrichment claims and concluding that it is premature to make a ruling without extensive analysis of state laws at class certification).

21

subjective evidence of reliance is not required.[24]  Even for those claims that do require proof of

reliance or causation, this does not automatically mean that common issues do not predominate.

---

[24] This is true for Plaintiff Vega's UCL and FAL claims (*In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 100 (Cal. App. Ct. 2009) (stating that the UCL and FAL allow an award of restitution without individualized proof of deception, reliance and injury)); Plaintiff Barfoot's FDUTPA claims (*Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699, 703 (Fla. Dist. Ct. App. 2000) (concluding that class members bringing FDUTPA claim need not individually prove reliance; "It is sufficient if the class can establish that a reasonable person would have relied on the representations.") (internal quotation omitted)); Plaintiff Meyer's KCPA claims (*Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 615–16 (D. Kan. 2014)("[P]laintiff need not prove on an individual basis that defendants' allegedly material omissions caused harm to each putative class member. Based on a review of §50–626 of the KCPA and to give effect to the class action provision under §50–634, the Court concludes that the putative class may prove causation by showing that the objective, reasonable person would have been harmed by the omission.")); Plaintiff Foppe's KCPA claims (*Corder v. Ford Motor Co.*, 283 F.R.D. 337, 340 (W.D. Ky. 2012) ("[T]he Sixth Circuit made clear that the "ascertainable loss" element may be shown by evidence that a purchased truck "was not as a reasonable consumer would expect it." *Corder*, 285 Fed. App'x. at 229. That objective standard would also lend itself to class-wide proof.")); Plaintiff McCormick's MCPA claims (*Tait*, 289 F.R.D. at 483-84 (concluding that under Maryland law, whether a statement is misleading or an omission is material is judged from the view point of a reasonable, but unsophisticated consumer and certifying a Maryland class of consumers under the MCPA, noting the "dearth of class actions applying Maryland law" but noting that the Fourth Circuit found that it is possible to certify a nationwide class of consumers with respect to MCPA claims) (citing *Amerix Corp. v. Jones*, 457 Fed. App'x. 287, 293 (4th Cir. 2011))); Plaintiff Gooel's MCPA claims (*Dix v. Am. Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206, 209 (Mich. 1987) (class proceeding under the MCPA "need not individually prove reliance on the alleged misrepresentations. It is sufficient if the class can establish that a reasonable person would have relied on the representations")); Plaintiffs Oren's and Taschner's MMPA claims (*Plubell v. Merck & Co. Inc.*, 289 S.W.3d 707, 713-14 (Mo. 2009)("[I]ndividualized evidence of each physician's and consumer's reliance on the misrepresentations is not required. Both our case law and the governing regulations make clear that the consumer's reliance on an unlawful practice is not required under the MMPA.")); Plaintiffs Barrow's, Gadson's, and Wood's New York §349 and §350 claims (*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (finding that for both §§349 and 350 claims materiality is an objective inquiry, neither require proof of reliance, and neither require proof that defendants intended to mislead consumers)); and Plaintiff Fruhling's OCSPA claims (*Blankenship v. CFMOTO Powersports, Inc.*, 166 Ohio Misc. 2d 21, 45-46 (Ohio Misc. 2011) ("[T]o prove consumer deception under R.C. 1345.1 *et seq.*, the deception can be established without proof that the individual class member-plaintiffs were exposed to a misleading representation or advertisement....'In a class action under R.C. 1345.01 *et seq*. plaintiffs' reliance upon some misleading representation or advertisement may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury

Rather, in many cases, these issues can be established by common, class-wide evidence or they can be inferred or presumed under the circumstances.[25]  Here, class-wide proof will be used to

---

without direct testimony from each member of the class.'") (quoting *Amato v. Gen Motors Corp.*, 463 N.E.2d 625 (Ohio Ct. App. 1982))).

[25] Proof of reliance is not required, and causation can be established on a class-wide basis and by inference for Plaintiff Vega's CLRA claims (*In re: Vioxx Class Cases*, 103 Cal. Rptr. 3d at 95 ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.")); Plaintiff Brown's CCPA claims (*Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 94 & 98-99 (Colo. 2011) ("[T]he causation and injury elements of a CCPA claim may be inferred from circumstantial evidence common to a class.")); Plaintiff Solis' ICFA claims (*In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919, 997 (C.D. Cal. 2015) ("[W]here the representation being challenged was made to all putative class members, Illinois courts have concluded that causation is susceptible of classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material.") (collecting cases)); and Plaintiff Flinn's NJCFA claims (*Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 249 (D.N.J. 2008) ("Where the representations are in written and uniform materials presented to each prospective plaintiff, there is a presumption of causation in NJCFA cases...[T]he plaintiff need not show that that each class member would not have purchased the product 'but for' the fat and caloric values on the label, and nor must plaintiffs demonstrate that each class member read the label and purchased the product as a result of that information…[T]he plaintiffs identif[ed] a small core of misrepresentations…made to all, or most, of the class members and the representations are likely to have made a difference in the decision to purchase a product that was different from what was promised. These facts will be established via common proof and will not present individual issues.") (internal quotations and citations omitted)). Proof of reliance is necessary but can be presumed using circumstantial evidence and/or class-wide proof with respect to Plaintiff Sheehy's MUDTPA and MCFA claims (*Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 14-15 (Minn. 2001) (rejecting the notion that such reliance could only be shown by direct evidence from individual consumers and finding that "the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct") and *City of Farmington*, 281 F.R.D. at 356 (finding certification of an MCFA claim is appropriate because plaintiff "can rely upon direct and circumstantial evidence to prove reliance on a class-wide basis")); Plaintiff Raab's NCUDTPA claims (*Pitts v. Am. Sec. Ins. Co.,* 550 S.E.2d 179, 189-90 (N.C. Ct. App. 2001) (holding common issues predominated and finding that "although individualized showings may be required in actions for fraud, this does not in and of itself preclude a finding of the existence of a class" and "the benefit of allowing consumer fraud actions to proceed as class actions must be considered when determining whether the element of reliance, an individual issue, renders a class non-existent.") (internal quotation marks omitted), *aff'd,* 569 S.E.2d 647 (N.C. 2002)); and Plaintiffs Preas' and Johnson's TDTPA claims (*Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 571-72 (S.D. Tex. 2000) (certifying a class asserting RICO and DTPA claims, among others, where the same alleged deceptive trade practices were the same for all class members in a standardized scheme)). Plaintiff Barfoot's FAL claims, like

23

establish Defendants' liability for their deceptive and unfair practices associated with their marketing and sale of obsolete motor oil. *See, e.g.,* CAC ¶111 (listing common questions of law and fact). Plaintiffs allege that Defendants made the same representations and omissions to all class members and that these misrepresentations caused the economic injury Plaintiffs and class members sustained. *E.g., id.* at ¶¶44, 49, 76. Plaintiffs further allege that no one would have purchased Defendants' obsolete oil but for Defendants' deceptive and misleading practices. *Id.* at ¶¶50, 122-123. Indeed, the evidence in this case, including industry standards upon which Defendants rely, will show that there is no need for obsolete oil in the marketplace today. As discussed above, such evidence has been found to be sufficient to satisfy the predominance requirement with respect to reliance and/or causation. Nothing in the CAC supports a finding that common issues do not predominate such that class certification is prohibited as a matter of law.

The same is true with respect to proof of the fact of damages, which Defendants also

---

common law fraud, require proof of reliance. Although Florida courts have stated that certification of fraud cases is disfavored, no court has held proof of reliance to be an absolute bar to class certification. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1258–59 (11th Cir. 2004) (based on uniform misrepresentations, "the circumstantial evidence that can be used to show reliance is common to the whole class" and stating that "[u]nder well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification."), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724–25 (11th Cir. 1987) ("In view of the overwhelming number of common factual and legal issues presented by plaintiffs' misrepresentation claims, however, the mere presence of the factual issue of individual reliance could not render the claims unsuitable for class treatment.…each of the complaints alleges a single conspiracy and fraudulent scheme against a large number of individuals and thus is particularly appropriate for class action.") (internal citation and quotation omitted). Regarding Plaintiff Harvey's NCPA and NDTPA claims, Plaintiffs were not able to locate a case discussing these issues. However, courts have certified NCPA and NDTPA classes, and, particularly at this point in the litigation, there is no reason to believe that Plaintiff Harvey cannot use common, class-wide evidence to establish her claims. *See Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446 (D. Neb. 2010); *Powers v. Credit Mgmt. Servs., Inc.*, 313 F.R.D. 103, 117 (D. Neb. 2016); *Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388, 390 (D. Neb. 2004).

24

incorrectly argue prohibits a finding of predominance.[26] Def. Mem. at 25-26.  It is well-settled

that individualized inquiries into damages do not defeat predominance for purposes of class

certification. *See Labrier*, 315 F.R.D. at 521 ("[C]ourts in every circuit have uniformly held that

the 23(b)(3) predominance requirement is satisfied despite the need to make individualized

damage determinations and a recent dissenting decision of four Supreme Court Justices

characterized the point as 'well-nigh universal.'") (quoting NEWBERG ON CLASS ACTIONS, §4:54

(Winter 2013 Supp.)), *leave to appeal granted* (Sept. 9, 2016).  As Judge Posner wrote:

> It would drive a stake through the heart of the class action device, in cases in
> which damages were sought rather than an injunction or a declaratory judgment,
> to require that every member of the class have identical damages. If the issues of
> liability are genuinely common issues, and the damages of individual class
> members can be readily determined in individual hearings, in settlement
> negotiations, or by creation of subclasses, the fact that damages are not identical
> across all class members should not preclude class certification. Otherwise
> defendants would be able to escape liability for tortious harms of enormous
> aggregate magnitude but so widely distributed as not to be remediable in
> individual suits. As we noted in *Carnegie v. Household Int'l., Inc.,* 376 F.3d 656,
> 661 (7th Cir. 2004), "the more claimants there are, the more likely a class action
> is to yield substantial economies in litigation."

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).[27]  "The importance of the

class action device in vindicating the rights of consumers is one reason why the Supreme Court

held that "[p]redominance is a test readily met in certain cases alleging consumer or securities

fraud or violations of the antitrust laws." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th

Cir. 2014) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

There is nothing in the CAC to support a finding that common issues will not

---

[26] Defendants' argument here repeats their arguments concerning reliance and causation, discussed herein, and the sufficiency of Plaintiffs' damage allegations, discussed in Plaintiffs' Suggestions in Opposition to Defendants' Motion to Dismiss. These individual questions raised by Defendants are not relevant to Plaintiffs' claims.

[27] *See also Nieberding*, 302 F.R.D. at 618 (recognizing that, consistent with Rule 23(c)(4), if individualized issues predominate the damage inquiry the more appropriate action would be to bifurcate a damages phase).

predominate such that class certification is inappropriate as a matter of law.

## IV. DEFENDANTS' MISCELLANEOUS "THRESHOLD" ISSUES SHOULD BE REJECTED

### A. Plaintiffs' Unjust Enrichment Class Claims are Not Improper As a Matter of Law

Defendants' arguments against Plaintiffs' nationwide unjust enrichment class are premature, as it cannot be said that Plaintiffs' claims are precluded as a matter of law. Def. Mem. at 3-4. Indeed, courts have certified multi-state unjust enrichment classes. *E.g.*, *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 19–21 (D. Mass. 2010) (certifying a 34-state class where "unjust enrichment claims in different states are substantially similar"); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("standards for evaluating various states classes' unjust enrichment claims are virtually identical"). Plaintiffs should be given the opportunity in a motion for class certification to present an analysis of states' laws and brief issues such as manageability and grouping for purposes of class certification. *In re McCormick & Co., Inc.*, No. 15-1825, 2016 WL 6678340, *10-11 (D.D.C. Nov. 11, 2016) (collecting cases and concluding that "this Court cannot determine the manageability of grouping unjust enrichment laws without an extensive analysis of the states' laws. Plaintiffs have the burden to present such an analysis with their motion for class certification…" and "[w]hether the named plaintiffs can adequately represent unnamed class members with claims under other states' laws depends on how variable the laws are").

### B. Plaintiff Foppe's KCPA Claim is Properly Brought as a Class Action

There is no binding authority prohibiting consumer class actions under Rule 23 for Plaintiff Foppe's KCPA claims, contrary to Defendants' contentions. Def. Mem. at 4. Moreover, as an initial matter, Defendants' argument should be rejected on grounds of waiver, as

Defendants did not argue, let alone mention, their contention that KCPA claims cannot proceed on a class-wide basis in their original motion to strike (filed in Kentucky prior to MDL coordination). *See Foppe v. Dollar General Corp*., No. 4:16-cv-00523-GAF (W.D. Mo. April 15, 2016) [Doc. No. 25]. Defendants did, however, vigorously attack Plaintiff Foppe's class allegations under other theories. *Id* at 8-23. It is well-established in the Eighth Circuit that a litigant that has been previously been given a full and fair opportunity to argue an issue is not permitted to later make an argument that could have been, and should have been, raised earlier. *Mayo v. UBS Real Estate Sec., Inc.,* No. 08-00568-CV-W-DGK, 2012 WL 2848002, *3 (W.D. Mo. Jan. 13, 2012) ("Allowing a party to raise new arguments months later…encourages serial litigation and undermines the efficient administration of justice) (citing *Martin v. Am. Airlines, Inc.,* 390 F.3d 601, 609 n. 4 (8th Cir. 2004)).

Defendants' argument fails also on its merits. The statute itself does not expressly prohibit class actions. And, federal district courts in Kentucky addressing motions for class certification have analyzed the issues pursuant to Rule 23's requirements and have not denied class certification as a matter of law, as Defendants request.[28] *E.g., Corder v. Ford Motor Co.*,

---

[28] Defendants instead rely on *In re Anthem Inc. Data Breach Litig.,* 162 F. Supp. 3d 953, 999-1001 (N.D. Cal. 2016), which collects cases stemming from a 2000 Kentucky Circuit Court decision declining to use the KCPA as "a vehicle for Class Action suits" in an antitrust case. *See Arnold v. Microsoft Corp.,* No. 00-CI-000123, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000), *aff'd, Arnold v. Microsoft Corp.,* No. 2000-CA-2144-MR, 2001 WL 1835377, *7-8 (Ky. Ct. App. Nov. 21, 2001). Setting aside that *Arnold* is not binding authority, its reasoning is distinguishable. Here, Plaintiff Foppe does not seek certification under the KCPA in Kentucky state court. Rather, he alleges he will seek certification under Fed. R. Civ. P. Rule 23. CAC ¶101. Since the Court is sitting in diversity, federal procedural law applies. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (Stevens, J., concurring in part and concurring in the judgment) ("It is a long-recognized principal that federal courts sitting in diversity 'apply state substantive law and *federal procedural law*'") (emphasis added) (quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965)).

297 F.R.D. 572 (W.D. Ky. 2014). Accordingly, Plaintiff Foppe's class claims of KCPA violations should not be barred as a matter of law.

### C. Plaintiff Fruhling's OCSPA Claim is Properly Brought as a Class Action

Defendants' next contend that Plaintiff Fruhling's OCSPA claims are not properly brought as a class action because Plaintiff Fruhling failed to allege prior notice as required by Section 1345.09(B) of the Ohio Revised Code. Def. Mem. at 5. Here, Plaintiff Fruhling alleges that in selling their obsolete oil, Defendants engaged in deceptive and/or unconscionable acts or practices by misrepresenting material facts, either expressly or by implication, by representing that Defendants' DG-branded motor oil: (i) was suitable for use in their customers' automobiles; (ii) was safe to use in their customers' automobiles; and (iii) was of similar quality as the other motor oils beside which Defendants' positioned their products on store shelves in violation of at least §1345.02(B)(1), (2) and §1345.03(B)(3), (6) of the Ohio Revised Code. CAC at ¶¶464-469. These acts and practices have been declared to be deceptive or unconscionable by administrative rule adopted under §1345.05(B)(2) of the Ohio Revised Code, including Ohio Admin. Code Chapter 109:4-3-10 which states that "[i]t shall be a deceptive act or practice in connection with a consumer transaction for a supplier to: (A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact." Accordingly, Plaintiff Fruhling's OCSPA claims are properly brought as a class action. To the extent the Court determines that Plaintiff Fruhling must specifically plead this rule in the CAC, Plaintiffs request

leave to amend the CAC to correct this and any other deficiency the Court finds in the CAC.

### D. Plaintiff Brown's CCPA Class Claim is Properly Pled

Defendants' argument that Plaintiff Brown's requested relief pursuant to the CCPA is inappropriate should be rejected on the grounds of waiver, as discussed in Part IV(B), *supra*, as Defendants failed to make this argument in their original motion to strike (filed in Colorado prior to MDL coordination). *Brown v. Dollar General Corp.*, No. 4:16-cv-00519-GAF (W.D. Mo. April 21, 2016) [Doc. No. 48].

On the merits, in arguing that the CCPA does not permit injunctive relief in a private action or monetary damages in a class action, Defendants' position is that the CCPA does not permit class actions. Def. Mem. at 5-6. This is clearly not the case, as there are numerous cases discussing and certifying class actions with respect to CCPA claims.[29] *See, e.g., Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 102 (Colo. 2011) (discussing the use of class-wide evidence to establish injury to satisfy Rule 23(b)(3)'s predominance requirement in plaintiff's CCPA class action); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) (certifying damages class under Rule 23(b)(3) for CCPA claims); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 874 (E.D. Mich. 2009) (finding that the CCPA does not preclude class actions for actual damages). Thus, Plaintiff Brown's class allegations are not improper as a matter of law.

### E. Plaintiff Sheehy's MUDTPA Class Claim is Properly Pled

Defendants also failed to raise their arguments concerning Plaintiff Sheehy's MUDTPA claim in their original Rule 12 motion,[30] and Defendants' argument seeking to strike Plaintiffs'

---

[29] Plaintiffs acknowledge that there are cases supporting Defendants' position, but Plaintiffs suggest their view is the better one; otherwise, there would be no reason for the Colorado state courts to discuss class issues relating to causation and damages in CCPA claims.

[30] Defendants filed a single Rule 12 motion containing their motion to dismiss and motion to strike class allegation arguments in *Sheehy*.

claims for disgorgement and restoration relief should be considered waived, as discussed in Part IV(B), *supra*. *See Sheehy v. Dollar General Corp., et al.*, No. 4:16-cv-00526-GAF (W.D. Mo. April 7, 2016) [Doc. No. 31].

On the merits, Plaintiff Sheehy requested injunctive relief for his MUDTPA claim, as well as "such other orders and judgments which the court considers necessary," including disgorgement and restoration. CAC ¶371. The primary relief requested by Plaintiff Sheehy is injunctive relief, which, as Defendants acknowledge, is appropriate. The fact that Plaintiff Sheehy asked for any such other orders and judgments considered by the Court to be appropriate under its equitable powers does not render his MUDTPA claim improper. If the Court ultimately determines that no other such relief is appropriate, no other such relief need be awarded.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully requests that the Court deny Defendants' Motion to Strike Class Allegations. Alternatively, Plaintiffs request leave to amend to address any deficiencies the Court may find in Plaintiffs' CAC.


Dated:  January 19, 2017                     Respectfully submitted,

                                              */s/ Cynthia St. Amant*
                                             Allan Kanner
                                             Cynthia St. Amant
                                             KANNER & WHITELEY, LLC
                                             701 Camp Street
                                             New Orleans, LA 70130
                                             Tel: (504) 524-5777
                                             Fax: (504) 524-5763
                                             a.kanner@kanner-law.com
                                             c.stamant@kanner-law.com
                                             *Lead Counsel for Plaintiffs*

                                             *and*

30

Kenneth B. McClain
Kevin D. Stanley
Colin W. McClain
J'Nan C. Kimak
Andrew K. Smith
HUMPHREY FARRINGTON & MCCLAIN, P.C.
221 West Lexington, Suite 400
Independence, Missouri  64050
Telephone:  (816) 836-5050
Facsimile:   (816) 836-8966
kbm@hfmlegal.com
kds@hfmlegal.com
cwm@hfmlegal.com
jck@hfmlegal.com
aks@hfmlegal.com
*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send e-mail notification of such filing to all attorneys of record in this action.

*/s/ Cynthia St. Amant*

31