**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DOLLAR GENERAL CORP. | ) | MDL No. 2709 |
| MOTOR OIL MARKETING AND | ) | |
| SALES PRACTICES LITIGATION | ) | Master Case No. 16-02709-MD-W-GAF |
| | ) | |
| THIS PLEADING RELATES TO: | ) | |
| | ) | |
| ALL ACTIONS | ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THE CONSOLIDATED AMENDED CLASS-ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

RELEVANT FACTS UNDERLYING PLAINTIFFS' CLAIMS ................................. 2

LEGAL STANDARD .............................................................................................. 4

ARGUMENT .......................................................................................................... 5

I.     PLAINTIFFS' STATUTORY STATE CONSUMER PROTECTION ACT CLAIMS...... 5

   A.  Plaintiffs Sufficiently State Plausible Claims for Relief for Defendants' Violations of State Consumer Protection Statutes ......................................................... 5

      1.  Plaintiffs' allegations adequately state statutory violations.................................... 5

      2.  Plaintiffs' allegations comply with applicable pleading requirements ................. 17

      3.  Plaintiffs allege they purchased a worthless product and adequately plead their damages................................................................................................. 19

      4.  The economic loss doctrine does not bar Plaintiffs' claims ................................. 23

   B.  Defendants' Arguments Regarding Their Marketing and Labeling Highlight Factual Disputes and are Improper for Determination as a Matter of Law ................................... 27

      1.  Defendants' arguments are contrary to the purpose of consumer protection statutes.................................................................................................. 27

      2.  Defendants' arguments are contrary to relevant case law .................................... 28

      3.  Defendants' arguments are contrary to the facts as alleged by Plaintiffs ........... 33

   C.  There is No Comprehensive Regulatory Scheme Governing the Labeling of Motor Oil to Preempt Plaintiffs' Claims or to Provide a Safe Harbor for Defendants' Conduct ...................................................................................................... 38

      1.  NIST and SAE are non-binding voluntary industry standards and recommendations that do not relate to or regulate the deceptive and unfair acts and practices of which Plaintiffs complain ........................................................... 38

      2.  Defendants do not comply with the NIST and SAE standards ........................... 43

      3.  Plaintiffs' claims are not preempted ..................................................................... 44

      4.  The safe harbor provisions do not protect Defendants ........................................ 47

      5.  NIST Handbook's recommendations and SAE voluntary standards, if applicable at all, are considerations for the trier of fact ................................... 53

II.    PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS .................................. 54

   A.  Plaintiffs Sufficiently State Plausible Claims for Breach of Implied Warranty ............... 54

   B.  Plaintiffs' Nationwide Breach of Implied Warranty Claim is Proper............................... 56

i

      1.    A choice of law analysis is premature ................................................... 57

      2.    A choice of law analysis is not necessary here since there are no  material conflicts.......................................................................................................... 61

      3**.**    Application of Tennessee law does not warranty dismissal of Plaintiffs' claims ................................................................................................................... 63

  C.   Defendants' Remaining Arguments Turn on Disputed Factual Issues ............................ 65

III.       PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ........................................................ 70

  A.   Plaintiffs' Sufficiently State Plausible Claims for Unjust Enrichment............................. 70

  B.   Plaintiffs' Unjust Enrichment Claims Are Not Barred ..................................................... 71

IV.     PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS ............................... 72

V.      CONCLUSION ............................................................................................................... 73

TABLE OF AUTHORITIES

**Cases**

*Aas v. Super. Ct.*, 12 P.3d 1125 (Cal. 2000) ............................................................. 24

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955
  (E.D.N.Y. July 21, 2010) ........................................................................................ 30

*Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671 (E.D. Mich. 2012)...................... 70

*Am. Home Prods. Corp. v. FTC*, 695 F.2d 681 (3d Cir. 1982)..................................... 30

*Andriesian v. Cosmetic Dermatology, Inc.,* No. 3:14-CV-01600-ST, 2015 WL 1638729
  (D. Or. Mar. 3, 2015), *report and recommendation adopted,* No. 3:14-CV-01600-ST, 2015
  WL 1925944 (D. Or. Apr. 28, 2015).................................................................. 58, 63

*Annecharico v. Raymour & Flanigan*, No. CV 16-1652(FLW), 2016 WL 7015615
  (D.N.J. Nov. 30, 2016)............................................................................................ 21

*APS Tech., Inc. v. Brant Oilfield Mgmt. & Sales, Inc.*, No. 13CV6500-LTS-KNF,
  2015 WL 5707161 (S.D.N.Y. Sept. 29, 2015)........................................................ 69

*Arlandson v. Hartz Mountain Corp.,* 792 F. Supp. 2d 691 (D.N.J. 2011)....................... 58, 60, 63

*Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746 (N.D. Ill. 2012)................ 8

*Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381 (E.D.N.Y. 2013) ........................ 15

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967 (7th Cir. 1999)............... 53

*Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505 (D. Md. 2011)........ 10, 29

*BCC Merchant Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440 (N.D. Tex. 2015)..................... 26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 4

*Bell v. Campbell Soup Co.*, 65 F. Supp. 3d 1328 (N.D. Fla. 2014) .............................. 47

*Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007).......................... 29

*Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................. 59, 60

*Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 4:15CV384 RWS, 2015 WL 3645262
  (E.D. Mo. June 10, 2015)........................................................................................ 32

*Bond v. U.S.*, 134 S. Ct. 2077 (2014)............................................................................ 45

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899 (5th Cir. 2002) ...................... 16

*Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C. 2006) ............................... 26

*Buzadzhi v. Bexco Enterprises, Inc.*, No. 10-CV-247-GKF-PJC, 2011 WL 43086
  (N.D. Okla. Jan. 4, 2011) ....................................................................................... 68

*Campbell v. Hussey*, 368 U.S. 297 (1961)................................................................... 45

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, No. 07-111, 2009 WL 150942
  (S.D. Tex. Jan. 21, 2009)......................................................................................... 24

*Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323 (S.D. Fla. 2014) ........................ 70

*Cartillar v. Turbine Conversions, Ltd.*, 187 F.3d 858 (8th Cir. 1999) ......................... 69

*Caudill Seed and Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 161 F. Supp. 3d 513
  (W.D. Ky. 2015)....................................................................................................... 25

*Christmas v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 435 (E.D.N.C. 2014)............. 15

*Ciser v. Nestle Waters N.Am., Inc.*, No. 2:11-05031, 2013 WL 5774121
  (D.N.J. Oct. 24, 2013) ............................................................................................ 29

*Clayton Ctr. Associates v. W.R. Grace & Co.*, 861 S.W.2d 686 (Mo. App. E. Dist. 1993)......... 26

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011).................................... 70, 71

*Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898 (Mo. App. 2003) ...................... 29

*Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013)........................................... 72

iii

*Coker v. DaimlerChrysler Corp.*, No. 01-1264, 2004 WL 32676
  (N.C. Super. Jan. 5, 2004), *aff'd*, 617 S.E.2d 306 (N.C. App. 2005), *aff'd,*
  627 S.E.2d 461 (N.C. 2006) ........................................................................... 26
*Coker v. Siler*, 304 P.3d 689 (Kan. App. 2013) ................................................... 24
*Complete Auto. Repair Servs. v. Capps*, No. 2012-CA-002145-MR, 2015 WL 2445911
  (Ky. Ct. App. May 22, 2015), *as modified* (May 29, 2015), *review denied* (Dec. 10, 2015) ... 10
*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. 2014) ................................ 12
*Cotton v. Commodore Exp., Inc.*, 459 F.3d 862 (8th Cir. 2006) ......................... 61
*Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848
  (E.D. Tex. 2004), *aff'd sub nom.*, 133 Fed. App'x. 944 (5th Cir. 2005) ......... 23
*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.,* 747 A.2d 600 (Md. 2000)... 72
*Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186 (Minn. Ct. App. 2007) ........... 70
*Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902 (8th Cir. 2013) ........... 24
*Daugherty v. Am. Honda Motor Co.*, 51 Cal.Rptr.3d 118 (Cal. Ct. App. 2006) ........... 6
*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152 (9th Cir. 2012) ........................... 7
*Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003) ................... 71, 72
*Depositors Ins. Co. v. Estate of Ryan*, Nos. 15-5507/15-5516, 2016 WL 66545
  (6th Cir. Jan. 6, 2016) ................................................................................ 32
*Dolan v. McQuaide*, 79 A.3d 394 (Md. Ct. Spec. App. 2013) .............................. 70
*Drobnak v. Andersen Corp.,* 561 F.3d 778 (8th Cir.2009) ................................... 19
*Dubinsky v. Mermart, LLC,* 595 F.3d 812 (8th Cir. 2010) ................................... 72
*Duke v. Flying J, Inc.*, 178 F.Supp.3d 916 (N.D. Cal. 2016) ................. 47, 51, 52
*Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557 (D. Md. 2012) ................... 25
*Ellis v. La.–Pac. Corp.*, 699 F.3d 778 (4th Cir. 2012) ....................................... 24
*Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197 (D. Md. 2012) ................ 10
*Fed. Ins. Co. v. Binney & Smith, Inc.,* 913 N.E.2d 43 (Ill. App. Ct. 2009) .............. 49
*Fermin v. Pfizer Inc.*, No. 15-CV-2133, 2016 WL 6208291 (E.D.N.Y. Oct. 18, 2016) ............ 33
*Forcellati v. Hyland's, Inc.,* 876 F. Supp. 2d 1155 (C.D. Cal.2012) ....................... 58
*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .......................................... 31
*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006) ....................... 30, 35
*Galstaldi v. Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045 (S.D. Fla. 2009) ............... 18
*Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92 (Colo. 2011) ........................ 7, 28
*GFRE, Inc. v. U.S. Bank, N.A.*, 130 A.D.3d 569 (N.Y. App. Div. 2015) ................... 71
*Gitson v. Trader Joe's Co.*, No. 13–CV–01333–VC, 2014 WL 3933921
  (N.D. Cal. Aug. 8, 2014) ............................................................................ 59
*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467
  (S.D.N.Y. 2014) ........................................................................................ 14
*Golf v. Henderson*, 876 N.E.2d 105 (Ill. App. 1st Dist. 2007) ........................... 24
*Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007) ........................... 9
*Great Am. Ins. Co. v. Honeywell Int'l Inc.*, No. CIV.A. 05-857, 2007 WL 2905898
  (W.D. Pa. Sept. 28, 2007) .......................................................................... 69
*Gregory Wood Prod., Inc. v. Advanced Sawmill Mach. Equip., Inc.*, No. 5:06-CV-00087,
  2007 WL 1825179 (W.D.N.C. June 25, 2007) ............................................. 69
*Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883 (D. Neb. 2003) ........................... 50
*Hasemann v. Gerber Prods. Co.,* No. 15-CV-2995, 2016 WL 5477595
  (E.D.N.Y. Sep. 28, 2016) ...................................................................... 20, 21

iv

*Hassler v. Sovereign Bank*, 664 F. Supp. 2d 509 (D.N.J. 2009).................................................. 29

*Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ....................................... 71

*Howes v. Wells Fargo Bank, N.A.*, No. 14-2814, 2015 WL 5836924 (D. Md. Sept. 30, 2015)... 18

*Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721 (Mo. 2009).................................................. 27

*In re 5–hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13–2438 PSG PLAX,
    2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)........................................................................... 58

*In re Anheuser-Busch Beer Labeling Mktg. and Sales Practices Litig.*, No. 14-3653,
    2016 WL 1104916 (6th Cir. Mar. 22, 2016) ................................................................. 43, 49

*In re Apple, Inc.*, 602 F.3d 909 (8th Cir. 2010) ......................................................................... 64

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069
    (S.D. Ind. 2001), *on reconsideration in part*, 205 F.R.D. 503 (S.D. Ind. 2001),
    *rev'd in part*, 288 F.3d 1012 (7th Cir. 2002)...................................................................... 65

*In re Caterpillar Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 14-cv-3722, 2015 WL
    4591236 (D.N.J. Jul. 29, 2015)............................................................................................ 20

*In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012)...................................... 70, 71

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).................................................................. 48, 49

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 438 F. Supp. 2d 291
    (S.D.N.Y. 2006) ................................................................................................................. 41

*In re Motor Fuel Temperature Sales Practices Litig.*, No. 06–CV–7621, 2013 WL 3795206
    (D. Kan. July 19, 2013)....................................................................................................... 50

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................ 23

*In re Nat. Hockey League Players' Concussion Injury Litig.*, No. MDL 14-2551 SRN,
    2015 WL 1334027 (D. Minn. Mar. 25, 2015)..................................................................... 58

*In re Nissan N.A., Inc. Odometer Litig.*, 664 F. Supp. 2d 873 (M.D. Tenn. 2009) .................... 53

*In re OnStar Contract Litig.*, 600 F. Supp. 2d 861 (E.D. Mich. 2009)...................................... 58

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
    No. ML 12-2317 CAS JEMX, 2012 WL 6062047 (C.D. Cal. Dec. 3, 2012)......................... 69

*In re Payless Cashways*, 203 F.3d 1081 (8th Cir. 2000) ............................................................ 59

*In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422 (D.N.J. 2015) .......................... 20

*In re Samsung DLP Television Class Action Litig.*, No. 07–2141, 2009 WL 3584352
    (D.N.J. Oct. 27, 2009)........................................................................................................ 58

*In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2014 WL 3557189
    (M.D. Pa. July 17, 2014).............................................................................................. 58, 62

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................................... 59

*In re StarLink Corn Products Liab. Litig.*, 212 F. Supp. 2d 828 (N.D. Ill. 2002) ....................... 26

*In re TFT-LCD Antitrust Litig.*, No. M-07-1827-SI, 2011 WL 4345446
    (N.D. Cal. Sep. 15, 2011).................................................................................................... 22

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ...................................................................... 6

*Ivie v. Kraft Foods Global, Inc.*, No. 12-02554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013).... 53

*Izqauierdo v. Mondelez Intern'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832
    (S.D.N.Y. Oct. 26, 2016)..................................................................................................... 33

*Jenkins v. Pech*, 301 F.R.D. 401 (D. Neb. 2014)...................................................................... 12

*Johnson v. Ford Motor Co.*, No. 13-6529, 2015 WL 7571841 (S.D. W.Va. Nov. 24, 2015) ...... 27

*Johnson v. MFA Petroleum Co.*, 10 F. Supp. 3d 982 (W.D. Mo. 2014)................................. 47, 50

*Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919 (N.D. Tex. 2014) ............................... 72

*Jones v. Sparks,* 297 S.W.3d 73 (Ky. App. 2009) .................................................................. 70

*Jovine v. Abbott Labs., Inc*., 795 F. Supp. 2d 1331 (S.D. Fla. 2011) ......................................... 22

*Kasky v. Nike, Inc*., 45 P.3d 243 (Cal. 2002) ......................................................................... 7

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015)................................. 32

*Kuenzig v. Kraft Foods, Inc.*, No. 8:11-838, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) ...... 31

*Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599 (D.N.J. 2013).............................. 69

*Langan v. Johnson & Johnson Consumer Cos., Inc*., 95 F. Supp. 3d 284 (D. Conn. 2015) ........ 30

*Lass v. Bank of Am., N.A.*, 695 F.3d 129 (1st Cir. 2012) ......................................................... 72

*Leisman v. Archway Med., Inc.*, 53 F. Supp. 3d 1144 (E.D. Mo. 2014)..................................... 57

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546 (N.J. 1997) .................................. 51

*LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481 (D. Minn. 1996)............................ 28

*Lesiak v. C. Valley Ag Co-op., Inc.*, 808 N.W.2d 67 (Neb. 2012) ....................................... 24, 26

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011) ....... 14

*Lingo v. Hartford Fire Ins. Co.*, No. 4:10-cv-84, 2011 WL 1642223
  (E.D. Mo. May 2, 2011) ....................................................................................................... 30

*Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403
  (S.D. Fla. Feb. 22, 2011) ...................................................................................................... 18

*Lopez v. Nissan N. Am., Inc.,* 135 Cal.Rptr.3d 116 (Cal. Ct. App. 2011)................................... 50

*Louisburg Bldg. & Dev. Co., L.L.C. v. Albright*, 281 P.3d 1146 (Kan. App. 2012).................... 25

*Manning Intern. Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432
  (S.D.N.Y. 2001) .................................................................................................................... 53

*Margolis v. Sandy Spring Bank*, 110 A.3d 784 (Md. Ct. App. 2015)......................................... 29

*Marty v. Anheuser-Busch Cos., LLC*, 43 F.Supp.3d 1333 (S.D. Fla. 2014) .................... 28, 30, 48

*McGregor v. Uponor, Inc.*, No. 09-1136 ADM/JJK, 2010 WL 55985
  (D. Minn. Jan. 4, 2010) ......................................................................................................... 18

*Mickens v. Ford Motor Co*., 900 F. Supp. 2d 427 (D.N.J. 2012) ..................................... 14, 21, 27

*Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360 (D.N.J. 2015) ........................ 21

*Mojica v. Securus Techs., Inc.*, No. 5:14-CV-5258, 2015 WL 429997
  (W.D. Ark. Jan. 29, 2015)..................................................................................................... 57

*Murphy v. Stonewall Kitchen, LLC*, No. ED 104072, 2016 WL 6596083
  (Mo. Ct. App. Nov. 8, 2016). ........................................................................................... 32, 33

*Murphy v. The Proctor & Gamble Co.*, 695 F. Supp. 2d 600 (E.D. Mich. 2010) ....................... 26

*N.W. Arkansas Masonry, Inc. v. Summit Specialty Products, Inc.*, 31 P.3d 982
  (Kan. App. 2001)................................................................................................................... 26

*Nestlé Purina Petcare Co. v. The Blue Buffalo Co. Ltd.*, No. 4:14 CV 859 RWS,
  2016 WL 5390945 (E.D. Mo. Sept. 27, 2016) ................................................................. 57, 62

*Olson v. Hunter's Point Homes, LLC*, 964 N.E.2d 60 (Ill. App. 5th Dist. 2012)........................ 25

*Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984) .......................................................... 69

*Pasternak & Fidis, P.C. v. Recall Total Info. Mgt., Inc.*, 95 F. Supp. 3d 886 (D. Md. 2015)...... 24

*Payan v. GreenPoint Mortgage Funding,* 681 F. Supp. 2d 564 (D.N.J. 2010) ............................ 13

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ............................... 18

*Perkins v. DaimlerChrysler Corp.,* 890 A.2d 997 (N.J. Super. Ct. App. Div. 2006) ................... 21

*Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241 (3d Cir. 2011) ........................... 30

*Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274 (8th Cir. 1996) ...................... 61, 62

vi

*Polinsky v. Cmty. Health Partners Reg'l Health Sys.*, 858 F. Supp. 2d 891
(N.D. Ohio 2012) ........................................................................................ 18
*Primerica Life Ins. Co. v. James Massengil & Sons Const. Co.*, 712 S.E.2d 670
(N.C. Ct. App. 2011) .................................................................................. 71
*Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971 (Md. Spec. App. 2007), *aff'd*,
942 A.2d 722 (Md. 2008) ............................................................................ 26
*Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ............... 29
*Reynolds v. Credit Mgmt. Servs., Inc.*, No. 8:14CV391, 2016 WL 756469
(D. Neb. Feb. 25, 2016) .............................................................................. 12
*Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622 (Kan. 2013) .................................................... 23, 24
*Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727 (S.D. Iowa 2007) ............ 57, 60, 63, 64
*Risner v. Regal Marine Indus. Inc.*, 8 F. Supp. 3d 959 (S.D. Ohio 2014) .................................... 15
*Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004) .................................... 25
*Robinson v. Match.com*, LLC, No. 3:10-CV-2651-L, 2012 WL 500777
(N.D. Tex. Oct. 17, 2012) ........................................................................... 29
*Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ........................................ 8, 28
*Rowe Int'l, Inc. v. J-B Enterprises, Inc.*, 647 F.2d 830 (8th Cir. 1981) ...................................... 68
*Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47 (Colo. 2002) ......................... 41, 49
*Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286 (M.D. Fla. 2009 ............................................. 29
*Simpson v. Kroger Corp.*, 162 Cal. Rptr. 3d 652 (Cal. Ct. App. 2013) ...................................... 32
*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011) ........................................... 28
*Smith v. Mellon Bank*, 957 F.2d 856 (11th Cir. 1992) .............................................................. 8
*Solo v. United Parcel Serv. Co.*, No. 15-1426, 2016 WL 1077163 (6th Cir. Mar. 18, 2016) ....... 72
*Soo Line R.R. Co. v. Werner Enterprises*, 825 F.3d 413 (8th Cir. 2016) ............................... 45, 46
*Spires v. Hosp. Corp. of Am.*, 289 Fed. App'x. 269 (10th Cir. 2008) ....................................... 70
*Standard Oil Co. of California v. FTC,* 577 F.2d 653 (9th Cir.1978) ........................................ 30
*Stark v. Soteria Imaging Servs., Inc.*, 276 F. Supp. 2d 989 (D. Neb. 2003) .............................. 71
*State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 89 F. Supp. 3d 922 (E.D. Ky. 2015) ............... 24
*Strathmore Web Graphics v. Sanden Mach., Ltd.*, No. 99-345, 2000 WL 33975406
(W.D. Ky. May 16, 2000) ........................................................................... 26
*Strumlauf v. Starbucks Corp.*, No. 16-1306, 2016 WL 3361842 (N.D. Cal. Jun. 17, 2016) ........ 26
*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ................................................. 28
*Suffolk Laundry Services, Inc. v. Redux Corp.*, 656 N.Y.S.2d 372
(N.Y. App. Div. 2d Dept. 1997) .................................................................. 24
*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ........................................... 57, 60
*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) .................................... 10
*Thornton v. Pinnacle Foods Grp. LLC,* No. 4:16-CV-00158, 2016 WL 4073713
(E.D. Mo. Aug. 1, 2016) ................................................................. 7, 29, 32, 72
*Those Certain Interested Underwriters, at Lloyd's, London, subscribing to Policy No.
Z101663/003 v. Farley Group*, No. 12-707, 2015 WL 5602924 (N.D.N.Y. Sep. 23, 2015) .... 26
*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ................................. 30
*Trademark Med., LLC v. Birchwood Laboratories, Inc.*, 22 F. Supp. 3d 998
(E.D. Mo. 2014) ......................................................................................... 25
*Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935 (N.D. Ill. 2008) .................................... 30
*Tyson v. Sterling Rental, Inc.*, 836 F.3d 571 (6th Cir. 2016) ............................................. 24, 25

vii

*Union Ink Co. v. AT&T Corp.*, 801 A.2d 361 (N.J. Super. Ct. App. Div.),
  *certif. denied*, 810 A.2d 66 (N.J. 2002)......................................................................... 29
*Vaughan v. Aegis Commc'ns Grp., LLC*, 49 F. Supp. 3d 613 (W.D. Mo. 2014) ......................... 70
*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994)................................................... 71
*Walshe v. Zabors*, 178 F. Supp. 3d 1071 (D. Colo. 2016)....................................................... 70
*Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) ........................................................... 6
*Webb v. Rep. Bank & Trust Co*., No. 3:11-CV-00423, 2013 WL 5447709
  (W.D. Ky. Sept. 30, 2013)........................................................................................... 29
*WeBoost Media S.R.L. v. LookSmart Ltd.*, No. 13-5304, 2014 WL 824297
  (N.D. Cal. Feb. 28, 2014).............................................................................................. 26
*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015)..................................... 25
*Weiss v. Kroger Co.*, No. 14-3780, 2014 WL 5114608 (C.D. Cal. Aug. 8, 2014) ..................... 32
*Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641 (8th Cir. 2015), *reh'g denied*
  (June 17, 2015)...................................................................................................... 59, 64
*Weller v. Accredited Home Lenders, Inc.*, No. 08-2798, 2009 WL 928522
  (D. Minn. Mar. 31, 2009)............................................................................................ 48
*Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990) ...................................................... 4
*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)............................................ 30, 31
*Workman v. Plum Inc*., No. 15-02568, 2015 WL 6664837 (N.D. Cal. Nov. 2, 2015) ................ 32
*Zlotnick v. Premier Sales Grp., Inc*., 480 F.3d 1281 (11th Cir. 2007) ...................................... 29

**Statutes**
15 U.S.C. §45(a)(1)...................................................................................................... 53
15 U.S.C. §271............................................................................................................. 39
15 U.S.C. §§272(b)(10), 272(c)(4) .................................................................................. 45
2 N.C. Admin. Code 38.0101 ......................................................................................... 42
225 Ill Comp. Stat. 470/8............................................................................................... 42
4 Tex. Admin. Code §12.21............................................................................................ 42
815 Ill. Comp. Stat. 501/1 ............................................................................................... 8
815 Ill. Comp. Stat. 505/10(b)(1)..................................................................................... 49
Cal. Bus. & Prof. Code §13482 ....................................................................................... 42
Cal. Bus. & Prof. Code §17200 ........................................................................................ 6
Cal. Bus. & Prof. Code §17500 ........................................................................................ 6
Cal. Civ. Code §1750..................................................................................................... 6
Cal. Civ. Code §1760.................................................................................................... 28
Colo. Rev. Stat. §6-1-106(1)(a) ...................................................................................... 49
Colo. Rev. Stat. §6-1-105 ............................................................................................... 7
Fla. Admin. Code Ann. 5F-7.005 .................................................................................... 42
Fla. Stat. §501.201 ........................................................................................................ 8
Fla. Stat. §501.204(2).................................................................................................... 53
Fla. Stat. §501.212(1).................................................................................................... 49
Fla. Stat. §817.41 .......................................................................................................... 8
K.R.S. §367.110............................................................................................................ 9
K.S.A. §50-623 ............................................................................................................. 9
K.S.A. §50-626(b)(1)(A) & (D)........................................................................................ 9
Kan. Admin. Regs. §99-25-9 .......................................................................................... 42
Ky. Rev. Stat. Ann.. §363.520 ........................................................................................ 42

Case 4:16-md-02709-GAF   Document 89   Filed 01/19/17   Page 9 of 85

Md. Code Ann., Bus. Reg. §10-501 ............................................................. 42

Md. Code Ann., Com. Law §13-301 ............................................................ 10

Mich. Comp. Laws §445.901 ...................................................................... 11

Mich. Comp. Laws §445.902(d) .................................................................. 65

Mich. Comp. Laws 445.904(1)(a) ............................................................... 49

Minn. Stat. §325D.43 ................................................................................. 11

Minn. Stat. §325D.44(1)(5) ........................................................................ 11

Minn. Stat. §325D.46(1) ............................................................................ 48

Minn. Stat. §325F.68 ................................................................................. 11

Minn. Stat. §325F.69(1) ............................................................................. 12

Mo. Rev. Stat. §407.010 ............................................................................ 12

Mo. Rev. Stat. §413.015 ............................................................................ 42

N.C.G.S. §75-1.1 ....................................................................................... 15

N.J.S.A. §56:8-1 ........................................................................................ 13

N.Y. Gen. Bus. Law §349 ............................................................. 14, 15, 18, 48

N.Y. Gen. Bus. Law §350 ............................................................... 14, 15, 48

Neb. Rev. Stat. §59-1601 ........................................................................... 12

Neb. Rev. Stat. §59-1617(1) ...................................................................... 50

Neb. Rev. Stat. §87-301 ............................................................................ 13

Neb. Rev. Stat. §87-302(a)(5) & (8) .......................................................... 13

Neb. Rev. Stat. §87-303 ............................................................................ 13

Neb. Rev. Stat. §87-303.01 ....................................................................... 13

Neb. Rev. Stat. §87-304(a)(1) .................................................................... 49

Neb. Rev. Stat. §89-186 ............................................................................ 42

Ohio Rev. Code Ann. §1345.01 .................................................................. 15

Ohio Rev. Code Ann. §§1345.02 & 1345.03 .............................................. 15

Ohio Rev. Code Ann. §1345.02(B)(1), (2) .................................................. 15

Ohio Rev. Code Ann. §1345.03(B)(3) ......................................................... 16

Ohio Rev. Code Ann. §1345.12(A) ............................................................. 48

Tenn. Code Ann. §47-2-314 ...................................................................... 61

Tex. Bus. & Com. Code Ann. §17.41 ......................................................... 16

Tex. Bus. & Com. Code Ann. §17.45(5) ..................................................... 17

Tex. Bus. & Com. Code Ann. §17.46(b) ..................................................... 16

Tex. Bus. & Com. Code Ann. §17.46(b)(5) ................................................. 17

Tex. Bus. & Com. Code Ann. §17.50(a)(2) ................................................. 17

UCC §2-314 ........................................................................................ passim

UCC §2-315 .............................................................................................. 55

UCC §2-316 ......................................................................................... 66, 67

UCC §2-316(2) .......................................................................................... 56

UCC §2-316(3)(b) ..................................................................................... 66

UCC §2-316(b)(3) ..................................................................................... 66

UCC §2-317 .............................................................................................. 68

UCC §2-607 .............................................................................................. 68

UCC §2-607(3)(a) ................................................................................ 67, 68

**Other Authorities**

RICHARD THALER AND CASS SUNSTEIN, NUDGE: IMPROVING DECISION ABOUT HEALTH, WEALTH, AND HAPPINESS (Yale University Press 2008) ........................................................ 34

*Seeing is Deceiving: The Tacit Deregulation of Deceptive Advertising*, 54 ARIZ. L. REV. 719, 728 (2012) .......................................................................................................... 34

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................................... 4

x

# INTRODUCTION

This case is about Defendants' deceptive, unfair, and unlawful marketing and sale of obsolete motor oil, a useless product most consumers do not even know exists. Defendants do not dispute the fact that their motor oil is obsolete and not suitable for post-1988 and post-1930 automobiles.[1] Rather, Defendants' contention is that no reasonable consumer would be misled due to the obsolete oil warning language contained on the back label of their products. However, Plaintiffs allege that reasonable consumers are not on the look-out for obsolete motor oil in the same way they might be expected to check for nuts, gluten or organics. Plaintiffs also allege, and intend to prove, that Defendants purposefully position their obsolete oil next to legitimate, non-obsolete motor oil to confuse their "grab-and-go" customers. All industry recommendations pertaining to motor oil labeling require placing the warning on the principal display panel, *i.e.*, the front of the package. Defendants complied with this until 2010 when it introduced the labels at issue in this case.

This case boils down to a handful of jury questions. First, would a reasonable consumer think the following products, placed side-by-side on a store shelf, are used for the same purpose?



---

[1] Defendants disagree with Plaintiffs' description of their motor oil products as "obsolete" but Defendants do not dispute that their products are not suitable for post-1988 or post-1930 automobiles.

1

Second, is Defendants' marketing and sale of their DG-brand motor oil—which is obsolete and harms cars built in either the last 29 or 87 years—unscrupulous or substantially injurious to consumers? Plaintiffs contend the answer to these questions is "yes" while Defendants say "no." Regardless of the ultimate answer, Defendants' arguments go to ultimate factual determinations, leaping over the initial question of whether Plaintiffs have stated plausible claims for relief. As set forth herein, Plaintiffs sufficiently allege plausible claims for relief, and Defendants' motion to dismiss should be denied in its entirety. Alternatively, Plaintiffs seek leave to amend on any perceived deficiency in the Consolidated Amended Complaint (CAC).

## RELEVANT FACTS UNDERLYING PLAINTIFFS' CLAIMS

Defendants' motor oil (DG 10W-30, DG 10W-40 and DG SAE 30) is obsolete motor oil that fails to protect and can damage modern-day vehicles. CAC ¶42. Specifically, DG 10W-30 and DG 10W-40 motor oil are not suitable for automobiles manufactured after 1988, and DG SAE 30 motor oil is not suitable for automobiles manufactured after 1930. *Id.* at ¶58. However, because of Defendants' misleading marketing and sales practices, reasonable consumers, including Plaintiffs, are not aware of this. *Id.* at ¶¶43-51, 57, 64-65, 72, 76, 78. Moreover, alternative, non-obsolete motor oil is recommended for both old and new cars, *id.* at ¶50, raising the question of whether there is any non-fraudulent rationale for selling obsolete oil at all.

Specifically, Plaintiffs allege that Defendants deceive customers by using uniform, misleading product placement tactics and product labels to obscure the critical fact that Defendants' motor oil is unfit for, and can harm, the vehicles driven by most, if not all, of their customers. CAC ¶44. A consumer looking for motor oil in the automotive section of Defendants' store is confronted with rows of similar shaped and sized motor oil bottles. Plaintiffs allege that

the front label used on Defendants' DG obsolete motor oil, which is the only visible portion of the label when the product is sitting on store shelves, fails to provide any warning that Defendants' motor oil is obsolete, something most consumers do not know exists, and is deceptively designed to look like non-obsolete motor oil. *Id.* at ¶¶53, 65, 66-68, 71. Plaintiffs allege that Defendants' motor oil uses the same or similar nomenclature as that of legitimate brands of motor oil and that Defendants' intentional placement of their obsolete motor oil alongside legitimate motor oil further deceives consumers into thinking the products are comparable. *Id.* at ¶¶45-49, 53. A consumer scanning the rows of motor oil would only notice that Defendants' motor oil is less expensive than the other brands sold. *Id.* at ¶¶47-48. The only warning provided by Defendants that their motor oil is obsolete and could damage modern engines is on the back label in small font, where reasonable consumers are unlikely to read it. *Id.* at ¶¶58-61, 64-68. And, Plaintiffs allege that even the back label is unfair, deceptive and misleading to reasonable consumers in that the obsolete oil warning is further concealed by a multitude of other statements, some of which are misleading themselves. *Id.* at ¶¶58-65.

Plaintiffs allege that Defendants' made these misrepresentations and omissions of material fact with knowledge and with the intent to deceive and mislead consumers into purchasing their obsolete oil when they otherwise would not have done so. *See, e.g.,* CAC ¶¶69, 72, 78, 124, 126. Further, Plaintiffs allege that as a result of Defendants' misleading, deceptive, and unconscionable marketing and sales practices, reasonable consumers would be misled, and are in fact misled, into believing Defendants' motor oil is comparable to legitimate motor oil and suitable for use in their vehicles.[2] *E.g., id.* at ¶¶49, 57, 72, 122-123. And, Plaintiffs allege that as

---

[2] Indeed, as discussed further below, the evidence in this case, including industry standards upon which Defendants rely, shows that there is no need for obsolete oil in the marketplace today. Thus, the only reasonable explanation for any consumer's purchase of Defendants'

a result of Defendants' deceptive, unfair, misleading, and unconscionable practices, Plaintiffs and class members purchased Defendants' obsolete oil, which they otherwise would not have purchased, thus, sustaining actual damages equal to the purchase price. *Id.* at ¶¶74, 76, 81. Additionally, Plaintiffs allege that many class members also sustained damage to their vehicles as a result of using Defendants' obsolete motor oil. *Id.* at ¶77.

## LEGAL STANDARD

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. When considering such a motion, the factual allegations of a complaint are assumed true and all reasonable inferences arising therefrom are construed in the plaintiff's favor. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this stage of the proceedings, all that is required of Plaintiffs is that the CAC "nudge[s] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As set forth herein, Plaintiffs have satisfied this standard, and Defendants' motion to dismiss should be denied.

Defendants' largely ignore this standard.[3] Rather than addressing Plaintiffs' allegations,

---

obsolete oil is that they relied on Defendants' misrepresentations and omissions. The only reasonable explanation for Defendants' conduct is that they enjoy greater profit margins and the resulting harm to vehicles is temporally separated from customers' use of their motor oil to "top off" engine oil.

[3] Defendants also ignore the 75 page limitation for this motion to which the parties agreed and the Court generously granted. Defendants attached seven exhibits to their motion containing additional case law and argument. These seven exhibits total an additional 56 pages of information beyond the 75 page limit set by the Court. Notably, Defendants did not have a page limitation issue with respect to their motion to strike, as they were able to fit their case law into footnotes, making such exhibits unnecessary. When Defendants proposed a page limit extension to 75 pages, they did not mention their intent to include this additional material beyond the agreed upon limit; otherwise, Plaintiffs would not have agreed to additional pages beyond the Court's original 30 page limit. Plaintiffs argued against the use of a CAC because of the

4

Defendants construe disputed facts in their favor and make factual assertions beyond those alleged in the CAC. Moreover, as discussed herein, many of Defendants' factual assertions are also contrary to the actual facts disclosed to date in discovery.

## ARGUMENT

## I. PLAINTIFFS' STATUTORY STATE CONSUMER PROTECTION ACT CLAIMS

### A. Plaintiffs Sufficiently State Plausible Claims for Relief for Defendants' Violations of State Consumer Protection Statutes

#### 1. Plaintiffs' allegations adequately state statutory violations

Plaintiffs bring claims under each of their respective state consumer protection statutes, and each Plaintiff adequately pleads a cause of action thereunder. Common elements among these statutory claims include: (1) Defendants' deceptive, unlawful, unconscionable, unfair, or misleading acts or practices (2) that resulted in damage to the Plaintiffs. The allegations set forth in the Relevant Facts, *supra*, sufficiently allege these elements for each Plaintiff's state consumer statutory claims. Plaintiffs' specific state statutory claims, and any additional elements of each, are discussed further below.

**California.** Plaintiff Vega alleges violations of California's Consumer Legal Remedies

---

differences among applicable state statutory laws that would make consolidated briefing difficult, and as evidenced by Defendants' 56 pages of briefing disguised as exhibits, this proved to be correct. Despite Defendants' page limit abuse, Plaintiffs have kept their opposition confined to the 75 pages to which the parties agreed and which was set by the Court. However, to address Defendants' excessive material, Plaintiffs had to include long string cites in footnotes throughout this Opposition.

  Additionally, in footnote 5 of their motion, Defendants seemingly attempt to incorporate arguments made in previously filed motions to dismiss as further abuse of the 75 page limitation for their motion. Plaintiffs object to any attempt to do so. Defendants requested consolidated briefing, including this re-briefing of many of the motions to dismiss, over Plaintiffs' objections, and the Court granted Defendants' request. Thus, all of Defendants' arguments with respect to their Rule 12 motion should have been included in their motions. Nevertheless, out of an abundance of caution, to the extent the Court considers Defendants' prior briefing on these issues, Plaintiffs also refer to and incorporate their prior briefing, as well.

Act (CLRA), Cal. Civil Code §1750, *et seq.*; California's False Advertising Law (FAL), Cal. Bus. & Prof. Code §17500, *et seq.*; and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §17200, *et seq.*[4] To state a CLRA claim, Plaintiff Vega must show that Defendants committed one of the 23 enumerated unlawful practices, including representing that goods have characteristics, uses or benefits that they do not have or representing that goods are of a particular standard, quality, or grade if they are of another, and that Plaintiff suffered damage as a result of Defendants' unlawful practices. *Webb v. Carter's Inc.*, 272 F.R.D. 489, 501 (C.D. Cal. 2011). The above allegations are sufficient to state Plaintiff's CLRA claim. *See also* CAC ¶¶205-220.

"To make out an FAL claim, a plaintiff must show that a company, with intent to dispose of property, disseminated an untrue or misleading statement about that property, which the company knew or should have known to be untrue or misleading." *Webb*, 272 F.R.D. at 503. The above allegations also sufficiently state an FAL claim. *See also* CAC ¶¶221-232.

The UCL prohibits unfair competition, which it broadly defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. Each prong of the UCL is a separate and distinct theory of liability. *Id.* "[T]o state a claim under the UCL, based on false advertising or promotional practices, 'it is necessary only to show that members of the public are likely to be deceived.'" *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) (internal quotations omitted). Actual deception, reasonable reliance and damage are not required to show members of the public are likely to be deceived. *Daugherty v. Am. Honda Motor Co*., 51 Cal. Rptr. 3d 118,129 (Cal. Ct. App. 2006). A reasonable consumer is "'the ordinary consumer acting reasonably under

---

[4] Plaintiff Vega's state law claims brought pursuant to California's Song-Beverly Consumer Warranty Act are discussed in Part II, *infra*, relative to Plaintiffs' implied warranty claims.

the circumstances.'" *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2006)). Whether a business practice is deceptive generally presents a question of fact not suited for resolution on a motion to dismiss. *Thornton v. Pinnacle Foods Grp. LLC,* No. 4:16-CV-00158, 2016 WL 4073713, *3 (E.D. Mo. Aug. 1, 2016) (collecting cases). Any violation of any other law satisfies the "unlawful" prong of the UCL. *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). *See also* CAC ¶¶233-242.

Plaintiff Vega properly states his CLRA, FAL, and UCL claims, and Defendants' motion should be denied.

**Colorado**. Plaintiff Brown alleges violations of Colorado's Consumer Protection Act (CCPA), Colo. Rev. Stat. §6-1-105, *et seq*. To state a private cause of action under the CCPA, Plaintiff Brown must establish 5 elements: (1) that Defendants engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of Defendants' business; (3) that it significantly impacts the public as actual or potential consumers of the Defendants' goods; (4) that Plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused Plaintiff's injury. *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011). Allegations establishing Defendants' unfair and deceptive practices, causation and damages are discussed above. *See also* CAC ¶¶256-263. Further, Plaintiff Brown alleges that Defendants' unlawful acts occurred in the course of their business. *Id.* at ¶¶1, 35, 38, 257-258. In addition, Plaintiff Brown alleges public impact in that Defendants' misrepresentations and omissions are made to and have deceived consumers across the country and in the State of Colorado. *Id.* at ¶¶35, 43, 44, 258. Thus, Plaintiff Brown properly states his CCPA claims, and Defendants' motion should be denied.

**Florida.** Plaintiff Barfoot alleges violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §501.201, *et seq.* To state a claim for damages under FDUTPA, a plaintiff must allege three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). Plaintiff Barfoot sufficiently states a claim through the above allegations. *See also* CAC ¶¶264-293. In addition, Plaintiff Barfoot alleges that Defendants' conduct also violates Florida's Misleading Advertising Law (MAL), Fla. Stat. §817.41, *et seq.*, which itself constitutes a FDUTPA violation. An MAL claim requires reliance on an identifiable misleading advertisement, as well as the traditional elements of fraudulent inducement. *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992). Plaintiff Barfoot has sufficiently pled his claim, specifically satisfying Rule 9(b)'s heightened pleading requirements for this fraud-based claim. *See* CAC ¶296 (setting forth the "who, what, where, when, and why" of Defendants' misleading advertising). The actions forming the basis of Plaintiff's misleading advertising claims are those discussed above. Plaintiff Barfoot's allegations in Paragraphs 294-303 of the CAC further satisfy the elements of materiality, reliance, detriment, intent, and injury. Thus, Plaintiff Barfoot properly states his FDUTPA and MAL claims, and Defendants' motion should be denied.

**Illinois.** Plaintiff Solis alleges violations of Illinois' Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 501/1, *et seq.*, which requires him to allege the following elements: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 754 (N.D. Ill. 2012). Plaintiff's allegations regarding the first, fourth and

8

fifth elements are set forth above. *See also* CAC ¶¶304-314. Plaintiff Solis also alleges that Defendants' acts were done knowingly and with the intent to mislead consumers into purchasing their obsolete oil under the mistaken belief that it was modern oil suitable for their modern-day vehicles. *Id.* at ¶¶1, 44, 311, 312. Finally, Plaintiff Solis alleges that Defendants' deception occurs in the course of their business activities. *Id.* at ¶¶35, 38, 307. Thus, Plaintiff Solis properly states his ICFA claims, and Defendants' motion should be denied.

**Kansas.** Plaintiff Meyer alleges violations of Kansas' Consumer Protection Act (KCPA), K.S.A. §50-623, *et seq.* "To properly allege an action under the KCPA, plaintiffs need only claim to have suffered actual damage as a result of some alleged KCPA violation." *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1248 (D. Kan. 2007). The KCPA prohibits suppliers from engaging in deceptive acts in connection with a consumer transaction. *Id.* at 1247. Deceptive acts include representations made knowingly or with reason to know that property has characteristics, uses, benefits that they do not have or that the property is of a particular standard, quality, or grade if it is of another which differs materially from the representation. K.S.A. §50-626(b)(1)(A) & (D). Plaintiff Meyer's allegations of Defendants' deceptive acts and his resulting damage are those set forth above. *See also* CAC ¶¶315-330. Plaintiff Meyer also alleges that these acts occur in connection with a consumer transaction. *Id.* at ¶¶35, 74, 317, 318, 320. Thus, Plaintiff Meyer properly states his KCPA claims, and Defendants' motion should be denied.

**Kentucky.** Plaintiff Foppe alleges violations of Kentucky Consumer Protection Act (KCPA), K.R.S §367.110, *et seq.* To prevail on his KCPA claim, Plaintiff Foppe must prove that: (1) he bought the product primarily for personal, household, or family purposes; (2) Defendants engaged in an unfair, false, misleading, or deceptive act; and (3) Plaintiff suffered actual damages as a result of Defendants' violation of the KCPA. *Complete Auto. Repair Servs.*

*v. Capps*, No. 2012-CA-002145-MR, 2015 WL 2445911, *2 (Ky. Ct. App. May 22, 2015), *as modified* (May 29, 2015), *review denied* (Dec. 10, 2015). Plaintiff Foppe alleges that he bought Defendants' motor oil for personal use. CAC ¶¶1, 35, 78. Allegations regarding Defendants' deceptive acts and Plaintiff Foppe's resulting damages are set forth above. *See also, id.* at ¶¶331-339. Thus, Plaintiff Foppe properly states his KCPA claims, and Defendants' motion should be denied.

**Maryland.** Plaintiff McCormick alleges violations of Maryland's Consumer Protection Act (MCPA), Md. Code Ann., Com. Law §13-301, *et seq.* To maintain a cause of action under the MCPA, Plaintiff McCormick must allege: (1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes actual injury. *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197 (D. Md. 2012). Allegations regarding Defendants' unfair and deceptive practice and misrepresentations and Plaintiff McCormick's resulting injury are set forth above. *See also* CAC ¶¶340-359. With respect to the reliance element of Plaintiff McCormick's claim, whether a statement is misleading or whether an omission is material is judged by an objective standard from the view point of a reasonable, but unsophisticated consumer, and in many cases, materiality can be presumed from the nature of the practice in question. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 483-84 (C.D. Cal. 2012); *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 534 (D. Md. 2011) ("[M]aterial omissions occur where a significant number of unsophisticated consumers likely would not have made the disputed choice had the commercial entity not omitted the information in question."). Plaintiff McCormick alleges that Defendants' misrepresentations were a producing cause of the economic injury Plaintiff McCormick sustained and that no one would have purchased Defendants' obsolete oil but for Defendants' deceptive and misleading practices. CAC ¶¶122-

123, 351, 358. Thus, Plaintiff McCormick properly states his MCPA claims, and Defendants' motion should be denied.

**Michigan.** Plaintiff Gooel alleges violations of Michigan's Consumer Protection Act (MCPA), Mich. Comp. Laws §445.901, *et seq.* Through the allegations above, Plaintiff Gooel alleges Defendants' unfair, unconscionable and deceptive acts in violation of §§445.901(1)(c), (e), (s), (bb), (cc), and (n) of the MCPA by: (1) representing that their DG-brand motor oil has characteristics and benefits that it does not have; (2) representing that their DG-brand motor oil is of a particular standard, quality, or grade when it is of another; (3) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer and which fact could not reasonably have been known by the consumer; (4) representing material facts such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; (5) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner; and (6) causing confusion or misunderstanding as to the legal rights, obligations or remedies of a party to a transaction. Likewise, through the above allegations, Plaintiff Gooel pleads causation and resulting damages. *See also* CAC ¶¶360-364. Thus, Plaintiff Gooel properly states his MCPA claims, and Defendants' motion should be denied.

**Minnesota.** Plaintiff Sheehy alleges violations of Minnesota's Uniform Deceptive Trade Practices Act (MUDTPA), Minn. Stat. §325D.43, *et seq.*, and Minnesota's Prevention of Consumer Fraud Act (MCFA), Minn. Stat. §325F.68, *et seq.* The MUDTPA prohibits, among other things, the representation "that goods or services have...characteristics, uses, [or] benefits ...that they do not have…." Minn. Stat. §325D.44(1)(5). The allegations above establish Plaintiff Sheehy's MUDTPA claim. *See also* CAC ¶¶365-371. The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation,

11

misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby….” Minn. Stat. §325F.69(1). Similarly, the above allegations satisfy these elements, along with Plaintiff Sheehy's allegations that Defendants' acts were done with intent that others rely thereon. CAC ¶¶69, 144, 379. *See also id.* at ¶¶372-380. Thus, Plaintiff Sheehy properly states his MUDTPA and MCFA claims, and Defendants' motion should be denied.

**Missouri.** Plaintiffs Oren and Taschner allege violations of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. §407.010, *et seq.* To state a claim under the MMPA, Plaintiffs must allege that: (1) they made a purchase; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property as a result of an act declared unlawful under the MMPA. *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. 2014). Allegations establishing Defendants' unlawful acts are set forth above. *See also* CAC ¶¶381-402. Plaintiffs Oren and Taschner also allege that their purchases were made for personal, family, or household purposes. *Id.* at ¶¶35, 74, 78, 392. Thus, Plaintiffs Oren and Taschner properly state their MMPA claims, and Defendants' motion should be denied.

**Nebraska.** Plaintiff Harvey alleges violations of the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. §59-1601, *et seq.,* which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" that "affect the public interest." *Reynolds v. Credit Mgmt. Servs., Inc.*, No. 8:14CV391, 2016 WL 756469, *2 (D. Neb. Feb. 25, 2016). Any person who is injured in his or her business or property by a violation of the Act may bring a claim. *Jenkins v. Pech*, 301 F.R.D. 401, 405 (D. Neb. 2014). The above allegations set forth Defendants' unlawful conduct and Plaintiff Harvey's resulting damages. *See also* CAC ¶¶403-415. Plaintiff Harvey also alleges that Defendants' actions were

12

in the course of trade or commerce and that they affect the public interest. *Id.*at ¶¶35, 43-44, 405.

Plaintiff Harvey also alleges violations of Nebraska's Uniform Deceptive Trade Practices Act (NDTPA), Neb. Rev. Stat. §87-301, *et seq.*, which makes it unlawful to represent that goods have characteristics, uses, or benefits that they do not have or to represent that goods or services are of a particular standard, quality, or grade when they are of another. *Id.* at §87-302(a)(5) & (8); *see also* §87-303.01. A person likely to be damaged by a deceptive trade practice may bring an action for injunctive relief. *Id.* at §87-303. Through the above-discussed allegations, Plaintiff Harvey alleges Defendants' violation of the NDTPA. *See also* CAC ¶¶416-419. Plaintiff Harvey further alleges that Defendants' actions were unconscionable, were committed knowingly, and were the producing cause of her damage such that she is entitled to injunctive relief in accordance with the NDTPA. *Id.* at ¶¶420-421. Thus, Plaintiff Harvey properly states her NCPA and NDTPA claims, and Defendants' motion should be denied.

**New Jersey.** Plaintiff Flinn alleges violations of the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. §56:8-1, *et seq.* To state a claim for relief under the NJCFA a plaintiff must demonstrate "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Payan v. GreenPoint Mortgage Funding,* 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.,* 964 A.2d 741, 749 (N.J. 2009)). The first and third elements are satisfied by the allegations set forth above. *See also* CAC ¶¶422-434. With respect to the ascertainable loss requirement, Plaintiff Flinn alleges that as a result of Defendants' unlawful acts, he and class members were caused to purchase obsolete and potentially harmful motor oil they otherwise would not have purchased but for Defendants' unlawful actions. *Id.* at ¶431. Plaintiff Flinn specifically pleads ascertainable losses quantifiable

13

as the "difference between the price New Jersey Sub-Class Members paid and the actual worth of the product had Dollar General disclosed the true nature of its motor oil," *id.*, which he alleges is useless in his modern-day vehicle. *Id.* at ¶¶81-119. These allegations sufficiently allege ascertainable loss as required by the NJCFA. *See Lieberson v. Johnson & Johnson Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011) (finding that an ascertainable loss is quantifiable or measurable); *Mickens v. Ford Motor Co*., 900 F. Supp. 2d 427, 446 (D.N.J. 2012) ("At the motion to dismiss stage, alleging diminution in value due to the defect is sufficient."). Plaintiff Flinn properly states his NJCFA claims, and Defendants' motion should be denied.

**New York.** Plaintiffs Barrows, Gadson, and Wood allege violations of New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law §349, and False Advertising Law in violation of N.Y. Gen. Bus. Law §350. To state a claim under §349 a plaintiff must allege that: (1) defendant's acts are consumer oriented; (2) the acts or practices are deceptive or misleading in a material way; and (3) the plaintiff has been injured as a result. *See, e.g. Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). Plaintiffs set forth Defendants' deceptive and misleading acts and their resulting injury in the allegations above. *See also* CAC ¶¶435-443. Additionally, Plaintiffs Barrows, Gadson, and Wood allege that Defendants' deceptive acts are consumer oriented in that they were designed to and did deceive consumers and consumer purchase decisions. *Id.* at ¶¶437-439. And, Plaintiffs allege that Defendants' acts were deceptive and misleading in a material way. *Id.* at ¶¶76, 122-123.

Plaintiffs Barrows', Gadson's, and Wood's §350 false advertising claims require proof of: (1) a material statement; (2) in consumer-directed advertisements; (3) upon which the buyer actually relies; (4) where this statement turns out to be false or misleading; and (5) the statement causes the buyer's injury. *Avola v. Louisiana-Pac. Corp*., 991 F. Supp. 2d 381, 391 (E.D.N.Y.

2013). In addition to the above-cited allegations, Plaintiffs allege that Defendants' motor oil labeling constitutes advertising, that the labeling was misleading in various material respects, and that each Plaintiff relied on Defendants' misleading advertising and sustained damages. CAC ¶¶444-452. Thus, Plaintiffs Barrows, Gadson and Woods properly state their §349 and §350 claims, and Defendants' motion should be denied.

**North Carolina.** Plaintiff Raab alleges violations of North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA), N.C.G.S. §75-1.1, *et seq.* To establish an NCUDTPA violation, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiff. *Christmas v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 435, 445 (E.D.N.C. 2014). The allegations previously discussed set forth Defendants' unfair and deceptive acts and Plaintiff Raab's resulting damage. *See also* CAC ¶¶453-457. Plaintiff Raab also alleges that Defendants' deceptive acts affected commerce. *Id.* at ¶¶1, 35, 38, 454. Plaintiff Raab properly states his NCUDTPA claims, and Defendants' motion should be denied.

**Ohio.** Plaintiff Fruhling alleges violations of Ohio's Consumer Sales Practices Act (OCSPA),Ohio Rev. Code Ann. §1345.01, *et seq.* The OCSPA prohibits a supplier from committing a deceptive, unfair or unconscionable act or practice in connection with a consumer transaction. Ohio Rev. Code Ann. §§1345.02 & 1345.03. Unfair and deceptive practices are generally defined as "practices that mislead consumers about the nature of the product they are receiving." *Risner v. Regal Marine Indus. Inc.*, 8 F. Supp. 3d 959, 997 (S.D. Ohio 2014) (internal quotation omitted). The above allegations regarding Defendants' marketing and sale of obsolete motor oil constitute unfair and deceptive practices in violation of at least §1345.02(B)(1), (2) of the Ohio Revised Code, and they also establish Plaintiff Fruhling's damages resulting therefrom.

15

*See also* CAC ¶¶458-477. Plaintiff Fruhling properly alleges that she is a "person" and a "consumer" and that Defendants' sale of obsolete oil to Plaintiff constitutes a "commercial transaction" for purposes of the OCSPA. *Id.* at ¶¶459-462.

Similarly, Plaintiff Fruhling alleges that Defendants' misleading marketing and sales scheme to sell obsolete oil constitutes unconscionable acts and practices in that Defendants knew at the time of the consumer transaction that Plaintiff Fruhling was unable to receive substantial benefit from her purchase of their obsolete motor oil in violation of §1345.03(B)(3) of the Ohio Revised Code. Plaintiff Fruhling alleges that the above acts and practices were done by Defendants knowingly and with conscious disregard for Plaintiff's rights and that Defendants were wanton and malicious in their concealment of the same. CAC ¶473. Further, Plaintiff Fruhling alleges that Defendants' misrepresentations were done with the intent to mislead consumers into purchasing their obsolete oil under the mistaken belief that it was modern oil suitable for their modern-day vehicles. *Id.* at ¶¶144, 467-468, 475. Plaintiff Fruhling properly states her OCSPA claims, and Defendants' motion should be denied.

**Texas.** Plaintiffs Preas and Johnson allege violations of the Texas Deceptive Trade Practices Act (TDTPA), Tex. Bus. & Com. Code Ann. §17.41, *et seq.* To maintain a cause of action under the TDTPA, Plaintiffs must establish that: (1) they are consumers under the TDTPA; (2) Defendants committed a false, misleading, or deceptive act under §17.46(b) of the TDTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) these acts were the producing cause of Plaintiffs' damages. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002). Plaintiffs Preas and Johnson allege that they are consumers, satisfying the first element. CAC ¶481. The above allegations relating to Defendants' marketing and sale of their obsolete motor oil constitute

16

deceive and misleading acts in violation of at least §17.46(b)(5), (7), & (9) of the TDTPA, and these allegations also establish Plaintiffs' resulting damages. *See also* CAC ¶¶478-491. Additionally, Plaintiffs Preas and Johnson allege TDTPA violations based on Defendants' unconscionable acts.[5] An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §17.45(5). The above allegations establish this prong of Plaintiffs' TDTPA claims as well. Plaintiffs Preas and Johnson properly state their TDTPA claims, and Defendants' motion should be denied.[6]

### 2. Plaintiffs' allegations comply with applicable pleading requirements

Regardless of whether Plaintiffs' state statutory claims are subject to Rule 9(b)'s heightened pleading standard, as Defendants' summarily suggest, Plaintiffs' allegations satisfy

---

[5] Plaintiffs Preas and Johnson also allege TDTPA claims pursuant to §17.50(a)(2) relating to Defendants' breach of implied warranties, which Plaintiffs discuss *infra.*

[6] Defendants contend that the Court lacks subject matter jurisdiction over Plaintiffs Preas' and Johnson's claims because they were filed for the first time in the CAC. Def. Mem. at 65-66. This is not true. Plaintiffs Preas and Johnson were class members in the original Texas class action which was transferred to this Court by the JPML. When Plaintiffs filed the CAC, Plaintiffs Preas and Johnson were named as the class representatives for the Texas case in lieu of Mr. Cooke, who dismissed his claims. Notably, Plaintiffs' CAC was filed on August 29, 2016 [Doc. No. 44] as a superseding complaint, per Defendants' request, while the original Texas class action was still pending, so there was no "resurrection" of the Texas class claims. Rather, Plaintiffs Preas and Johnson became the class representatives for the Texas class instead of Mr. Cooke, who dismissed his claims on August 30, 2016 [Doc. No. 49]. Defendants refer to the Court's Order denying Plaintiffs' request for permission to file new cases directly into the MDL. 10/19/16 Order [Doc. No. 76]; however, Plaintiffs raised the direct file issue with the Court during the parties October 14, 2016 Status Conference, which was after the CAC was filed. Requiring Plaintiffs Preas and Johnson to file a new case in district court in Texas and then petitioning the JPML for transfer into the MDL, where the parties end up back in this precise position, wastes resources of three courts and is the epitome of inefficiency. Nevertheless, should the Court determine that Plaintiffs did not properly substitute Plaintiffs Preas and Johnson as class representatives for the Texas class, Plaintiffs Preas and Johnson are prepared to re-file their Texas class action claims in the Southern District of Texas and then proceed to have it transferred to this Court.

17

Rule 9(b).[7] Plaintiffs have set forth the "who" throughout the CAC - Dollar General. Plaintiffs have pled the "what" and "how" as discussed above with respect to Defendants' deceptive and misleading labeling and product placement. Plaintiffs have pled the "when" with allegations that Defendants' activities took place throughout the class period. CAC ¶¶101, 137, 154, 172. Plaintiffs have pled the "where" by alleging that Defendants market and sell their obsolete motor oil in their stores throughout the United States. *Id.* at ¶¶35, 101. Thus, Plaintiffs' well-pled complaint satisfies the heightened pleading requirements of Rule 9(b). *See McGregor v. Uponor, Inc.*, No. 09-1136 ADM/JJK, 2010 WL 55985, *3 (D. Minn. Jan. 4, 2010) ("Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the "core" factual basis for the fraud claims."). Moreover, the Eighth Circuit has held that Rule 9(b) does not require a complaint to include highly specific allegations with respect to facts that would be known to the defendants, but not to the plaintiffs, before the plaintiffs have had some opportunity to conduct discovery. *Drobnak v.*

---

[7] Defendants' general statement that all of Plaintiffs' state statutory consumer protection claims are subject to Rule 9(b)'s heightened pleading requirements is wrong. Def. Mem. at 25-26. Plaintiff McCormick's MCPA claims do not require proof of scienter and do not sound in fraud, *see McCormick v. Medtronic, Inc.*, 101 A.3d 467, 493-94 (Md. 2014), and Rule 9(b) applies only to those MCPA claims that sound in fraud, not all MCPA claims, *see Howes v. Wells Fargo Bank, N.A.*, No. 14-2814, 2015 WL 5836924, *22 (D. Md. Sept. 30, 2015). Plaintiffs Barrows', Gadson's, and Wood's claims brought under New York's GBL §349 are not subject to the heightened pleading requirements set forth in Rule 9(b). *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Plaintiffs' counsel has not located any case indicating that Rule 9(b)'s heightened pleading requirements apply to Plaintiff Foppe's KCPA claims or to Plaintiff Harvey's NCPA claims. And, with respect to Plaintiff Barfoot's FDUTPA and Plaintiff Fruhling's OCSPA claims, there is a disagreement among the respective district courts as to whether Rule 9(b) applies. FDUTPA: *See Galstaldi v. Sunvest Communities USA, LLC,* 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (holding that Rule 8, not Rule 9, is the governing pleading standard for an FDUTPA claim); *but see Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011). OCSPA: There is no definitive ruling from the Sixth Circuit as to whether Rule 9(b) applies to OCSPA claims, and there is a recognized split among the district courts in Ohio. *See Polinsky v. Cmty. Health Partners Reg'l Health Sys.*, 858 F. Supp. 2d 891, 901 (N.D. Ohio 2012).

18

*Andersen Corp.,* 561 F.3d 778, 784 (8th Cir.2009). Defendants' argument should be rejected.

3.      **Plaintiffs allege they purchased a worthless product and adequately plead their damages**

Defendants' argument that Plaintiffs have not properly alleged damages ignores Plaintiffs' factual allegations and is based on a mischaracterization of the standard for pleading damages. Plaintiffs allege that they suffered damage as a result of Defendants' conduct by purchasing a worthless product they would not have purchased but for Defendants' deceptive and unlawful conduct. CAC ¶¶76, 119, 143, 160, 169, 181, 187.[8] This is sufficient. As Defendants note, when a product is valueless, the purchase price is the appropriate measure of actual damages. Def. Mem. at 38.

Defendants incorrectly assert that Plaintiffs failed to allege facts to support their damage allegations and that it would be reasonable to infer, contrary to Plaintiffs' allegations, that Plaintiffs received some benefit from their purchases of Defendants' obsolete motor oil. Def. Mem. at 38-39. Plaintiffs allege that Defendants' motor oil is obsolete, is not suitable for use in post-1930 and/or post-1988 automobiles, and is not suitable for their vehicles. CAC ¶¶42-44, 63-64, 66. Defendants' own statements, which they conceal on the back label of their products, state

_____

[8]*See also, e.g.,* CAC ¶216 (Plaintiff Vega alleges that he and California sub-class members "suffered injury in fact and have lost money as result of Defendants' deceptive conduct… Plaintiff…would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicles engine, and could harm his vehicle."); ¶276 (Plaintiff Barfoot alleges that he and the Florida sub-class members "have been injured in their property" and such "injury consists of purchasing a worthless product that they would not have paid for in the absence of these deceptive acts"); ¶¶392 & 399 (Plaintiffs Oren and Taschner allege that they and the Missouri sub-class members "have suffered and continue to suffer ascertainable loss by paying for worthless motor oil" and "have been damaged by paying for motor oil that had no value"); ¶431 (Plaintiff Flinn alleges that he and the New Jersey sub-class members suffered an "ascertainable loss including but not limited to the monies spent on the purchase price of DG-branded motor oils, monies which would have been spent on legitimate oils…and/or the difference between the price they paid and the actual worth of the product had Dollar General disclosed the true nature of its motor oil.").

19

that their DG 10W-30 and DG 10W-40 motor oil products "may not provide adequate protection against the build-up of engine sludge" and that their DG SAE 30 motor oil product when used "in modern engines may cause unsatisfactory engine performance or equipment harm." *Id.* at ¶¶58, 66-68. Thus, it is not reasonable to infer that Plaintiffs received some benefit from their purchase of Defendants' obsolete motor oil. As discussed herein, Plaintiffs paid money for Defendants' useless and harmful motor oil that they otherwise would not have purchased, sustaining monetary damages and injury in fact as a result of Defendants' misconduct. Plaintiffs sufficiently allege ascertainable loss, economic loss and/or actual damages.[9]

Defendants cite to two cases for the proposition that a specific price comparison must be alleged in the complaint to sufficiently plead damages under Florida and New Jersey law: *In re Riddell Concussion Reduction Litig.,* 77 F. Supp. 3d 422, 438-39 (D.N.J. 2015) and *In re Caterpillar Inc., C13 & C15 Engine Prods. Liab. Litig.,* No. 14-cv-3722, 2015 WL 4591236, *37 (D.N.J. Jul. 29, 2015). This is not so. *Riddell* and *Caterpillar* were both decided by the same judge and have been found by subsequent courts to have incorrectly interpreted the pleading requirements for actual damages. *Hasemann v. Gerber Prods. Co.,* No. 15-CV-2995, 2016 WL 5477595, *22, n.26 (E.D.N.Y. Sep. 28, 2016) (*Caterpillar* "was decided by the same judge who decided *Riddell* and relied on *Riddell* to reach the same conclusion regarding damages."). In pointing out the flaws in the *Riddell* and *Caterpillar* decisions, the Eastern District of New York, interpreting the same law, held:

> In *Riddell*, the plaintiffs alleged that they each paid a premium price for the defendants' products but failed to "identify the specific price paid" for the defendants' products or the price of comparable products. *Riddell*, 77 F. Supp. 3d at 438. The court held that the plaintiffs failed to state a FDUTPA claim because

---

[9] Defendants' suggestion that "the motor oil…functioned exactly as intended" (Def. Mem. at 40) is a disputed factual issue, and Plaintiffs' factual allegations are taken as true for purposes of Defendants' motion.

the plaintiffs did not plead facts to show the difference in the market value between the product promised and the product received. *Id.* at 439 (citing *Rollins, Inc. v. Butland*, 951 *So. 2d* 860, 869 (Fla. Dist. Ct. App. 2006)).

In deciding *Riddell*, the court relied on *Butland* for support in dismissing the plaintiffs' FDUTPA claim for failure to allege the price of comparable products. *Id*. at 439 (citing *Butland*, 951 So. 2d at 869). However, *Butland* does not support the holding in *Riddell*. In *Butland*, the lower court granted a class certification motion based on the plaintiffs' FDUTPA claim. *Butland*, 951 So. 2d at 867. In reversing the lower court's class certification order, the appellate court found that the plaintiffs failed to establish "class-wide proof of damages" because each consumer's damages for the defendant's unfair or deceptive acts would "vary widely" as the claims arose "in the context of a complex contractual relationship." *Id*. at 875-76. The Florida appeals court's holding in *Butland* does not support the conclusion that a FDUTPA claim requires a plaintiff to plead the price of comparable products in order seek damages under the FDUTPA. Rather, the court in *Butland* noted that it was "well-defined in the case law" that the measure of damages under FDUTPA "is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties" but did not state that a plaintiff must plead the price of comparable products. *See id*. at 869….

*Id.* at *22. The two cases relied upon by Defendants clearly miss the mark and are not controlling

law. Plaintiffs need not plead a specific price point to sufficiently allege damages.

Furthermore, it is equally well established under New Jersey law that a plaintiff's loss

need not be pled with "pinpoint specificity." *Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427,

446 (D.N.J. 2012); *see also Perkins v. DaimlerChrysler Corp.,* 890 A.2d 997, 1003-04 (N.J.

Super. Ct. App. Div. 2006) ("plaintiff alleged in her complaint that she suffered an ascertainable

loss. She did not allege the nature of that loss, *nor was she so required at that stage*.") (emphasis

added); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015)

(noting that sufficient facts supporting an out-of-pocket loss would be that the product purchased

was worthless); *Annecharico v. Raymour & Flanigan*, No. CV 16-1652, 2016 WL 7015615, *7

(D.N.J. Nov. 30, 2016) (acknowledging an "out-of-pocket" theory of ascertainable loss sufficient

for a NJCFA claim, which "may include the purchase price of a misrepresented product if the

purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless"). Similarly, the damages element of a FDUTPA claim is ordinarily satisfied by allegations that had the plaintiff known of the true facts, he would not have purchased the product. *Jovine v. Abbott Labs., Inc*., 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011). In addition to the allegations cited above, Plaintiffs Flinn and Barfoot further allege facts supporting their damage and/or ascertainable loss in accordance with these standards. *See, e.g.,* CAC ¶¶276, 288, 431.

Defendants' efforts to hold Plaintiffs to a higher pleading standard with respect to damages lack support. Where a plaintiff in a price fixing/consumer fraud action could not recall the exact purchase price of a laptop he claimed was fraudulently offered to him, the court, interpreting the MMPA, held:

> Contrary to defendants' representations, Missouri does not require an exacting proof of loss in order for a loss to be considered ascertainable. Rather, a plaintiff must only establish that the product he purchased "was worth less than the product as represented." *Plubell v. Merck & Co., Inc.,* 289 *S.W. 3d* 707, 715 (Mo. App. 2009). *Numerous courts have found the ascertainable loss requirement satisfied despite uncertain or difficult to quantify damages...[t]here is simply no requirement that a plaintiff be able to identify his damages with absolute certainty.*"

*In re TFT-LCD Antitrust Litig.,* No. M-07-1827-SI, 2011 WL 4345446, *2 (N.D. Cal. Sep. 15, 2011) (emphasis added). Here, although Defendants seek to have Plaintiffs allege more specific damages than they do, nothing under the law requires them to do so and requiring same would produce a chilling effect on consumer class actions. *Id.* at *3 ("Defendants' construction of the MMPA's 'ascertainable loss' requirement would also frustrate the goals of the MMPA. 'The acts fundamental purpose is the protection of consumers...' Requiring a plaintiff to specify his losses with the precision defendants advocate would undoubtedly prevent numerous otherwise-deserving plaintiffs from recovering for a defendant's unlawful acts.") (internal citation omitted).

Plaintiffs sufficiently allege damages and Defendants' arguments should be rejected.

### 4. The economic loss doctrine does not bar Plaintiffs' claims

Plaintiffs' statutory consumer protection claims are not barred by the economic loss doctrine (ELD). Def. Mem. at 41-42. First, Defendants' insistence that Plaintiffs' pleading of implied warranty claims converts this case to a breach of contract case is meritless and should be rejected. "Unlike express warranties, which are imposed by agreement of the parties to a contract, implied warranties are created by operation of law and are grounded more in tort than in contract." *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 855-56 (E.D. Tex. 2004), *aff'd sub nom.*, 133 Fed. App'x. 944 (5th Cir. 2005). Here, there is no written contract, and Plaintiffs do not assert express warranty claims. Thus, Defendants' attempts to analogize this case to a commercial breach of contract dispute is unwarranted.

Second, the ELD does not apply to Plaintiffs' statutory claims because they involve statutorily-created duties beyond those found in contact and common law. The ELD, a judicially-created doctrine aimed at distinguishing breach of contract from common law tort claims,[10] does not apply to *statutorily* created causes of action because a "consumer protection statute…gives rise to a duty independent of the contract and therefore should not be barred by the economic loss rule." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 967 (N.D. Cal. 2014) (applying North Carolina law). As explained by one Illinois court:

> In this case, plaintiff advanced a statutory consumer fraud claim pursuant to section 2 of the Consumer Fraud Act. It follows that the obligations which plaintiff alleges defendants failed to fulfill in misrepresenting the material facts of the policy were created by the statute. Put another way, the duties that plaintiff alleges were violated arose outside of any contract between the parties. Because these duties were extracontractual…we find that plaintiff's cause of action is not barred by the economic-loss doctrine.

---

[10] In *Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 627-630 (Kan. 2013), the Kansas Supreme Court gives a detailed account of the doctrine's development and application nationwide.

*Golf v. Henderson*, 876 N.E.2d 105, 113 (Ill. App. 1st Dist. 2007). Thus, the doctrine does not apply with respect to the state consumer protection statutes, where duties are established independent of a contract between two parties.[11] Here, Defendants challenge claims brought under states statutes. These statutes create duties which exist independently of those imposed by any contract.

Alternatively, even if the Court finds that the doctrine applies, an exception applies: "the

---

[11] *See, e.g., Aas v. Super. Ct.*, 12 P.3d 1125, 1136 (Cal. 2000) (in California, "conduct amounting to a breach of contract becomes tortious when it also violates a duty independent of the contract"); *Golf*, 876 N.E.2d at 113 (ELD does not bar claims brought under Illinois Consumer Fraud Act); *Rinehart*, 305 P.3d at 632 (Under Kansas law, "negligent misrepresentation claims are not subject to the economic loss doctrine because the duty at issue arises by operation of law [rather than contract]"); *Coker v. Siler*, 304 P.3d 689, 694 (Kan. App. 2013) (Kansas ELD does not apply to legal duties imposed by law, independent of contract); *Pasternak & Fidis, P.C. v. Recall Total Info. Mgt., Inc.*, 95 F. Supp. 3d 886, 900 (D. Md. 2015) (Maryland ELD applies in "absen[ce of] a duty or obligation imposed by law independent of that arising out of the contract itself"); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016) (in Michigan, "tort claims are barred under the doctrine only where the duty alleged to have been violated by the defendant is implicated by the relevant contract…Michigan courts must inquire whether the legal duty allegedly violated by a defendant arises separately and distinctly from a defendant's contractual obligations"); *Lesiak v. C. Valley Ag Co-op., Inc.*, 808 N.W.2d 67, 82 (Neb. 2012) (Nebraska ELD "applies where the alleged breach is only of a contractual duty, and no independent tort duty exists"); *Suffolk Laundry Services, Inc. v. Redux Corp.*, 656 N.Y.S.2d 372, 374 (N.Y. App. Div. 2d Dept. 1997) (New York "economic loss rule is based on the principle that damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort, unless a legal duty independent of the contract itself has been violated"); *Ellis v. La.–Pac. Corp.*, 699 F.3d 778, 787 n.5 (4th Cir. 2012) ("North Carolina courts have never addressed whether [North Carolina UDTPA] claims are subject to the [economic loss rule], and in the absence of such direction, we are well-advised to rely on other grounds" for dismissal); *Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, No. 07-111, 2009 WL 150942, *19 (S.D. Tex. Jan. 21, 2009) (Texas ELD "doctrine will preclude a tort cause of action if the claim is for breach of duty created *solely* by contract rather than a duty imposed by law") (emphasis in original). Other courts have declined to extend the doctrine to consumer transactions. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 89 F. Supp. 3d 922, 927 (E.D. Ky. 2015) ("This Court does not believe, however, that the Kentucky Supreme Court would apply to economic-loss doctrine to consumer transactions"); *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905-6 (8th Cir. 2013) ("The [Missouri] economic loss doctrine prohibits a commercial buyer of goods "'from seeking to recover in tort for economic losses that are contractual in nature'") (quoting *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. App. S. Dist. 2010)).

24

economic loss rule does not bar [a plaintiff's] fraud and intentional misrepresentation claims because they [are] independent of [the defendant's] breach of contract." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004). The reason for this distinction is grounded in public policy:

> 'In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future…Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for 'predictability about the cost of contractual relationships'…, fraud plaintiffs may recover 'out-of-pocket' damages in addition to benefit-of-the bargain damages.'

*Robinson*, 102 P.3d at 275 (quoting *Lazar v. Super. Ct.*, 909 P.2d 981 (Cal. 1996)). This distinction is not unique to California, and applies to the other states where Defendants seek to apply the doctrine.[12] Here, Plaintiffs are not bringing a simple breach of contract case; rather, Plaintiffs are asserting allegations that Defendants engaged in unfair and/or deceptive pre-sale conduct aimed at increasing sales. Accordingly, even if the Court finds that the ELD applies, this exception applies and Plaintiffs' statutory consumer claims are not barred.

Defendants' Exhibit J purports to list relevant cases in which the ELD has been found to bar consumer protection claims. However, of the thirteen listed cases (nine of which involved

---

[12] *See, e.g., Olson v. Hunter's Point Homes, LLC*, 964 N.E.2d 60, 64 (Ill. App. 5th Dist. 2012) (Illinois ELD does not bar claims based on intentional misrepresentations); *Louisburg Bldg. & Dev. Co., L.L.C. v. Albright*, 281 P.3d 1146 (Kan. App. 2012) (Kansas ELD does not bar fraud-in-the-inducement claims); *Caudill Seed and Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 161 F. Supp. 3d 513, 530 (W.D. Ky. 2015) (Kentucky ELD has not been extended to fraud claims); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012) (in Maryland, "economic loss rule does not bar claims of fraudulent inducement to contract."); *Tyson v. Sterling Rental, Inc.*, 836 F.3d at 582 ("Michigan courts have declined to apply the [ELD] to bar claims for fraud in the inducement because such fraud cannot reasonably be anticipated and accounted for in the bargaining process"); *Trademark Med., LLC v. Birchwood Laboratories, Inc.*, 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014) (in Missouri, "fraud in the inducement, necessarily prior to the contract, is independent of the contract and therefore not barred by the economic loss doctrine"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) ("Courts applying both New York and California law have allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule").

commercial disputes and not consumers), six did not even involve statutory consumer protection act violations but instead involved common law tort theories that did not involve the 'independent duty' analysis key to the Court's analysis here.[13] As for the remaining cases, the statutory claims were either: not dismissed or dismissed on non-ELD grounds;[14] dismissed in commercial disputes where the wrongful alleged conduct was based solely on a breach of a written contract;[15] or dismissed in cases that are no longer good law.[16]

---

[13] *See In re StarLink Corn Products Liab. Litig.*, 212 F. Supp. 2d 828, 839 (N.D. Ill. 2002) (product defect case brought by commercial purchaser based on common law claims); *N.W. Arkansas Masonry, Inc. v. Summit Specialty Products, Inc.*, 31 P.3d 982, 987 (Kan. App. 2001) (product defect case brought by commercial purchaser based on common law claims); *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971 (Md. Spec. App. 2007), *aff'd*, 942 A.2d 722, 733 (Md. 2008) (commercial dispute based on common law warranty claims); *Clayton Ctr. Associates v. W.R. Grace & Co.*, 861 S.W.2d 686, 692 (Mo. App. E. Dist. 1993) (in commercial construction dispute brought under common law theories, ELD is *not* applicable); *Lesiak v. C. Valley Ag Co-op., Inc.*, 808 N.W.2d 67 (Neb. 2012) (commercial dispute based on common law warranty claims); *Those Certain Interested Underwriters, at Lloyd's, London, subscribing to Policy No. Z101663/003 v. Farley Group*, No. 12-707, 2015 WL 5602924, *1 (N.D.N.Y. Sep. 23, 2015) (in commercial insurance coverage dispute, common law tort theories barred by ELD).

[14] *See Strumlauf v. Starbucks Corp.*, No. 16-1306, 2016 WL 3361842 (N.D. Cal. Jun. 17, 2016) (in consumer claim, UCL, CLRA, and FAL claims survive but ELD barred common law negligent misrepresentation claim); *Strathmore Web Graphics v. Sanden Mach., Ltd.*, No. 99-345, 2000 WL 33975406, *3 (W.D. Ky. May 16, 2000) (in commercial dispute, fraud-in-inducement claim barred by Kentucky ELD since no fraudulent representations alleged independent of warranty claims; Kentucky Consumer Protection Act claim dismissed because transaction was not a 'consumer' transaction); *Murphy v. The Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010) (ELD bars claims for common law fraud but not those brought under state consumer protection statutes); *Coker v. DaimlerChrysler Corp.*, No. 01-1264, 2004 WL 32676, *2 (N.C. Super. Jan. 5, 2004), *aff'd*, 617 S.E.2d 306 (N.C. App. 2005), *aff'd*, 627 S.E.2d 461 (N.C. 2006) (DTPS claims dismissed due to lack of *standing* while ELD bars only common law theories).

[15] *See WeBoost Media S.R.L. v. LookSmart Ltd.*, No. 13-5304, 2014 WL 824297, *5 (N.D. Cal. Feb. 28, 2014) (in commercial dispute, ELD barred UCL fraud claim "since Defendant's obligation [to Plaintiff, which gave rise to suit] arose exclusively from the [written] contract [between the parties]"); *BCC Merchant Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015) (in commercial dispute, ELD barred DTPA claim because DTPA claims was based on breach of contract theory).

[16] *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006)(consumer DTPS claim dismissed due to ELD). Importantly, *Bussian* was were "decided well before the Fourth Circuit clarified in *Ellis* that federal courts should decline to extend North Carolina's

26

The ELD does not apply to Plaintiffs' consumer protection claims, which arise from statutes that create obligations independent of any contract. Alternatively, even if it were to apply, an exception applies with respect to these claims as they are analogous to intentional misrepresentation and/or fraud in the inducement claims. Accordingly, the ELD does not bar Plaintiffs' statutory consumer protection claims.

### B. Defendants' Arguments Regarding Their Marketing and Labeling Highlight Factual Disputes and are Improper for Determination as a Matter of Law

Defendants contend that because they include a statement disclosing the true nature of their obsolete motor oil somewhere on their product label, they are immune from all liability under state consumer protection statutes as a matter of law. The notion that Defendants are automatically immune from liability simply by placing a true statement somewhere on the product label regardless of all other facts and circumstances is belied by the consumer fraud statutes, relevant case law, and the facts, including those set forth in the CAC, as well as those learned in discovery to date.

### 1. Defendants' arguments are contrary to the purpose of consumer protection statutes

The purpose of state consumer protection statutes is to protect consumers from deceptive and misleading practices, and these statutes are construed broadly to achieve that purpose. *See, e.g., Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 724 (Mo. 2009) ("The act's fundamental purpose is the 'protection of consumers.'"); *Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427, 436 (D.N.J. 2012) ("Enacted to combat the increasing and widespread practice of defrauding the consumer, the NJCFA is constantly expanding to root out consumer fraud in the marketplace.")

---

economic loss rule if North Carolina courts have not first done so." *Johnson v. Ford Motor Co.*, No. 13-6529, 2015 WL 7571841, *12 (S.D. W.Va. Nov. 24, 2015) (citing *Ellis*, 699 F.3d at 787 n. 5).

(internal citation and quotations omitted); *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (finding that the Act is to be liberally construed in light of its broad purposes which include protecting consumers in a position of relative weakness); Cal. Civ. Code. §1760 (stating that the CLRA serves to "protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Ct. App. 2006) (FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.") (quoting Fla. Stat. §501.202(2)). The "buyer beware" standard advanced by Defendants is what these consumer fraud laws sought to extinguish.

Further, state consumer protection statutes do not require a representation or statement to be false to be actionable. To the contrary, a true statement likely to mislead consumers will result in liability under these statutes. *See, e.g., LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1488 (D. Minn. 1996) (finding that a statement that is literally true may still be likely to mislead consumers); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761-62 (7th Cir. 2014) ("proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true" satisfies the ICFA); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (holding that the fact that there is a true statement on a product "does not mean [it] cannot be misleading to the average consumer."); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014) (finding that a reasonable consumer could find a true statement to be misleading).

### 2. Defendants' arguments are contrary to relevant case law

The case law also rejects Defendants' position. The question of whether conduct is

28

misleading or deceptive is generally a question of fact that cannot be resolved on a motion to dismiss. For example, in *Thornton v. Pinnacle Foods Group LLC*, No. 4:16-CV-00158, 2016 WL 4073713, *3 (E.D. Mo. Aug. 1, 2016), the court found that whether a reasonable consumer would be deceived by a product label for purposes of the plaintiff's MMPA claim "is generally a question of fact that cannot be resolved on a motion to dismiss." The court also noted that only in "rare" situations have courts found lack of deception as a matter of law. *Id.* at *3, n.3.[17]

The cases cited by Defendants constitute those "rare" situations where courts were able to determine under the facts and circumstances of the particular case, that a reasonable consumer would not have been deceived, and thus, a finding of no deception as a matter of law was appropriate. However, as discussed herein, the facts and circumstances of Plaintiffs' claims are factually distinguishable and such a finding cannot be made here.[18]

---

[17] *See also Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, *2 (C.D. Cal. Oct. 25, 2012) (same); *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 900 (Mo. App. 2003) ("[T]he determination of whether fair dealing has been violated turns on the facts and circumstances of each case."); *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div.), *cert. denied*, 810 A.2d 66 (N.J. 2002) (finding that in most instances, the question of whether a defendant's conduct is misleading, or has the capacity to mislead, must be decided by a jury); *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 534 (D. Md. 2011) (whether an act or practice is deceptive or unfair is generally a question of fact); *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) ("Whether particular conduct constitutes an unfair or deceptive trade practice is a question of fact").

[18] *Hassler v. Sovereign Bank*, 664 F. Supp. 2d 509 (D.N.J. 2009), is a banking case brought by checking account holders alleging that the bank's batching of transactions and reordering of charges to maximize overdraft fees was misleading and unfair. There, plaintiffs' complaint was dismissed because the contract between the bank and its customers adequately disclosed the bank's practice of batch-processing. *Id.* at 515. Similarly, *Ciser v. Nestle Waters N.Am., Inc.*, No. 2:11-05031, 2013 WL 5774121 (D. N.J. Oct. 24, 2013); *Webb v. Rep. Bank & Trust Co.*, No. 3:11-CV-00423, 2013 WL 5447709 (W.D. Ky. Sept. 30, 2013); *Margolis v. Sandy Spring Bank*, 110 A.3d 784 (Md. Ct. App. 2015); *Robinson v. Match.com*, LLC, No. 3:10-CV-2651-L, 2012 WL 500777 (N.D. Tex. Oct. 17, 2012); *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281 (11th Cir. 2007); and *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007) all involve contractual agreements or the like as opposed to consumers encountering misrepresentations and omissions on product labels and in the product placement when purchasing a product from a store shelf. *Lingo v. Hartford Fire Ins. Co.*, No. 4:10-cv-84, 2011

29

There is no "rule," as Defendants suggest, to support a finding that they cannot be liable under state consumer protection statutes because they included a true statement regarding their obsolete oil's actual use somewhere on the label. Rather, courts generally reject this notion. *See, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).[19]

In *Williams*, the plaintiffs brought consumer claims against the manufacturer of fruit juice snacks alleging that the packaging contained misleading and deceptive statements regarding various features of the packaging that made it appear healthier than it was, including that: (1) the product is called "fruit juice snacks" and the packaging depicts a number of different fruits suggesting that those fruits or their juices are contained in the product when they are not; (2) the statement that the product was made with "fruit juice and other natural ingredients" could be interpreted as a claim that all ingredients in the product were natural when they are not; and (3)

_____

WL 1642223 (E.D. Mo. May 2, 2011) and *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938-39 (N.D. Ill. 2008) were decided on motions for summary judgment, considering the parties' testimony and other evidence. *Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241 (3d Cir. 2011) was decided by the court after a three day bench trial, not on the basis of the plaintiff's complaint at the beginning stages of the litigation.

[19] *See also Standard Oil Co. of California v. FTC*, 577 F.2d 653, 659 (9th Cir. 1978) (affirming the FTC's finding that the predominant visual message of an advertisement was misleading, and that it was not corrected by the accompanying verbal message in the advertisements); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 95 F. Supp. 3d 284, 290 (D. Conn. 2015) (finding that a defendant cannot automatically immunize itself by relying on the ingredient list on the back of its packaging to correct any false or misleading statements on the front of its packaging); *Am. Home Prods. Corp. v. FTC*, 695 F.2d 681, 687 (3d Cir. 1982) ("'[T]he tendency of the advertising to deceive must be judged by viewing it as a whole'.... The impression created by the advertising, not its literal truth or falsity, is the desideratum.") (quoting *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976)); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014) (finding that a reasonable consumer could find a true statement to be misleading); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (holding that a statement can be literally true and still be misleading and deceptive); *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) ("A solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures."); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, *16 (E.D.N.Y. July 21, 2010) (finding that the presence of a nutritional label does not, as a matter of law, extinguish the possibility that a reasonable consumer could be misled by the product's labeling and marketing).

the claim that this product is "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy" adds to the potential deception. *Williams,* 552 F.3d at 939. The trial court granted the defendant's motion to dismiss. The appellate court reversed, disagreeing with the district court's conclusion "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* The court continued:

> The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 939-40.[20] Here, Plaintiffs allege misrepresentations and omissions on the front and back of Defendants' obsolete motor oil, accompanied by further deception in Defendants' product placement. Thus, the fact that Defendants include a truth about their obsolete motor oil on the back does not mean a reasonable consumer would not be misled as a matter of law.[21] Indeed, as

---

[20] Defendants ignore *Williams* and its progeny, and instead rely on other California cases that were either decided prior to *Williams* (*e.g.*, *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-0234, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007); *Lavie v. Proctor & Gamble Co.,* 105 Cal. App. 4th 496 (2003)) or distinguish *Williams* factually but recognize the principles set forth in *Williams* (*e.g.*, *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, *2 (C.D. Cal. Oct. 25, 2012); *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW, 2013 WL 6729802 (C.D. Cal. Dec. 16, 2003); *Hairston v. S. Beach Beverage Co, Inc.*, No. 12-1419, 2012 WL 1893919 (C.D. Cal. May 18, 2013)). Def. Mem. at 8-11, 33-36.

[21]The other cases cited by Defendants are likewise factually distinguishable and do not support Defendants' argument that a reasonable consumer would not be deceived under the facts of this case. *E.g.*, *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-838, 2011 WL 4031141, *9 (M.D. Fla. Sept. 12, 2011) (finding that the federal food labeling regulations preempted plaintiff's claims and that plaintiff's allegations that a label was misleading were disingenuous in the face of labeling requirements and the 17 years that consumers had experienced that type of labeling); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (finding sweepstakes promotional materials were not

Plaintiffs allege, this is Defendants' intent; otherwise, there is no market for their obsolete oil.

Courts in this district reject Defendants' position, as well. *See, e.g., Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 4:15-CV-384-RWS, 2015 WL 3645262, *5 (E.D. Mo. June 10, 2015) (finding that the mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled and that the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry); *Thornton*, 2016 WL 4073713 at *3 (finding that "the inclusion of an ingredient list does not warrant dismissal of any claims"). Defendants rely on *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015); however, this reliance is misplaced. The Missouri Court of Appeals, noting the split between the Missouri federal district courts, rejected the *Kelly* line of cases, and expressly rejected the assertion that the presence of an ingredient list on a product could defeat an MMPA claim as a matter of law. *Murphy v. Stonewall Kitchen, LLC*, No. ED 104072, 2016 WL 6596083, *3 (Mo. Ct. App. Nov. 8, 2016).

---

fraudulent or deceptive under California law because the qualifying language appeared immediately next to the representations it qualified and was not hidden or unreadably small such that no reasonable reader could ignore it); *Depositors Ins. Co. v. Estate of Ryan*, Nos. 15-5507/15-5516, 2016 WL 66545 (6th Cir. Jan. 6, 2016) (concerning whether an exclusion in an insurance policy was ambiguous under Tennessee law); *Weiss v. Kroger Co.*, No. 14-3780, 2014 WL 5114608, *2 (C.D. Cal. Aug. 8, 2014) (dismissing plaintiff's claims that the nutrition label on defendant's sunflower seeds misrepresented the sodium content by not including the salt on the shell, finding that the label clearly referred to the sodium content of the "edible portion" of the product and a reasonable consumer would know that the seed is edible and the shell is not and would thus understand that the sodium content referred to the seed only); *Simpson v. Kroger Corp.*, 162 Cal. Rptr. 3d 652 (Cal. Ct. App. 2013) (labels describing products as "butter" and "spreadable butter" not misleading where top of product packaging clearly stated "WITH CANOLA OIL"); *Workman v. Plum Inc.*, No. 15-02568, 2015 WL 6664837 (N.D. Cal. Nov. 2, 2015) (rejecting plaintiff's consumer claims that the pictures on the front packaging of fruit puree pouches conveyed that the pictured items were the most prominent ingredients in the product, finding no affirmative misrepresentations on the front label of the product, and concluding that no reasonable consumer would expect the size of the flavors pictured on the label to directly correlate with their predominance in the blend).

32

A reasonable consumer would expect that the ingredient list comports with the representations on the packaging. Furthermore, the manufacturer, not the consumer, is in the superior position to know and understand the ingredients in its product and whether the ingredients comport with its packaging. While the presence of an ingredient list may be relevant to Stonewall Kitchen's defense at trial, the "ingredient list" defense cannot, as a matter of law, defeat an MMPA claim.

*Id.*

*Fermin v. Pfizer Inc.*, No. 15-CV-2133, 2016 WL 6208291 (E.D.N.Y. Oct. 18, 2016), on which Defendants heavily rely, is distinguishable on its facts and not similar to this case as Defendants contend. Def. Mem. at 35. There, the court rejected the plaintiffs' claims that they were tricked into purchasing defendant's Advil because the plaintiffs' ignored the clear spill-count on the label. *Id.* The court found that the plaintiffs' expectation that the bottle was filled to capacity was not reasonable under those circumstances. *Id.* As another New York district court found when discussing *Fermin*, there is no "single controlling decision of law standing for the proposition that food packaging is incapable of being materially misleading if it displays the net weight and lists the number of pieces inside of the package. This Court is unwilling to manufacture such a precedent here." *Izqauierdo v. Mondelez Intern'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832, *6 (S.D. N.Y. Oct. 26, 2016). Moreover, as that court found, "[w]hether a reasonable consumer would think to shake, squeeze, manipulate the Candy box, and whether that reasonable consumer would actually be able to feel the existence of slack-fill, are questions of fact that are inappropriate for resolution at the motion to dismiss stage." *Id.* at *7.

### 3. Defendants' arguments are contrary to the facts as alleged by Plaintiffs

Finally, Defendants' argument is replete with factual assertions that are beyond Plaintiffs' CAC, contrary to Plaintiffs' allegations, and inappropriate for purposes of this motion. For example, Defendants make numerous unsubstantiated assumptions regarding the clarity and

33

effectiveness of their product labeling, referring to their obsolete oil warning as: "conspicuous" (Def. Mem. at 1, 7, 30-31); "plain language" (*id.* at 2); "clearly" listing the intended uses (*id.* at 5); "plain as day" (*id.* at 7); "conspicuously" containing the information (*id.* at 8); "clearly informing" (*id.* at 29); "clearly stated" (*id.* at 35); and "clearly displayed" (*id.* at 35). Additionally, Defendants make unfounded assumptions concerning the behavior of a reasonable consumer under the circumstances presented in this case, stating that a reasonable consumer: "does not confront the product without physical interaction" (Def. Mem. at 27); "would turn [the product] around and read the informative labeling on the back" (*id.* at 27); "will read the labels, including the back label" (*id.* at 28); and "would look to that back label" (*id.* at 33).

These assertions directly contradict Plaintiffs' allegations that Defendants' "grab and go" business assumes that customers make split second decisions based on appearance and pricing of seemingly comparable products.[22] Defendants do not expect their customers to read all the small print on the back label of their products, and, despite their summary assertions otherwise, Defendants have no evidence that reasonable consumers actually read this information. Plaintiffs assert that Defendants' product labeling obscures the critical fact that their motor oil is not fit for modern vehicles. CAC ¶44. Plaintiffs allege that none of the information on the front

---

[22] Many of today's marketing techniques rely heavily on widely accepted behavioral economic theories including the "nudge," which imperceptibly influences consumer choice through product placement selected based on knowledge of typical human psychology and behavior. *See* RICHARD THALER AND CASS SUNSTEIN, NUDGE: IMPROVING DECISION ABOUT HEALTH, WEALTH, AND HAPPINESS (Yale University Press 2008). For example, research shows that consumers only examine product ads for approximately nine seconds and spend less than one second reading the warning. Linda J. Demaine, *Seeing is Deceiving: The Tacit Deregulation of Deceptive Advertising*, 54 ARIZ. L. REV. 719, 728 (2012). Further, consumers are influenced by anchors, such as price, and will use such anchors to make quick decisions. THALER AND SUNSTEIN at 23-26. Here, Defendants hold their products out to consumers as being of equal quality but lower price. There are a multitude of ways in which human behavior can be used for or against a consumer, many of which are commonly used by corporations in their marketing and advertising campaigns and the design and layout of their stores. These decisions are heavily influenced by the very important fact that humans are predictably irrational. THALER AND SUNSTEIN at 6-8.

label of Defendants' products provides any indication that they are obsolete or that they have extremely limited use such that consumers should look for further information on the back label; rather, they look like the other motor oil products Defendants sell, only cheaper. *Id.* at ¶¶46-47, 53-58, 65. Indeed, as Plaintiffs allege, the front label tells consumers that the products are "motor oil" for automobiles that "lubricates and protects your engine."[23] *Id.* at ¶¶54-57. Further, Plaintiffs also allege that consumers are not likely to read the back label of motor oil products, and even if they did, the cautionary statements are in smaller print along with numerous other statements that serve to conceal the warning. *Id.* at ¶¶58-65. At most, Defendants' arguments demonstrate factual disputes as to what a reasonable consumer would do and understand under the circumstances of this case and do not support a finding as a matter of law.

Moreover, Defendants' argument regarding Plaintiffs' misleading product placement allegations also requires improper factual assumptions and improperly views these allegations in isolation. Def. Mem. at 26-29. Plaintiffs allege that the placement of these products side-by-side on Defendants' shelves misleads consumers into believing that Defendants' DG-brand motor oil is similar to the non-obsolete motor oil Defendants sell, with the only difference being the price, and conceals the fact that Defendants' DG-brand motor oil is obsolete oil. CAC ¶¶5, 44-49. Defendants dispute this contention, claiming that a reasonable consumer would understand that

---

[23] Defendants' discussion of their separate statements and representations individually is neither helpful nor appropriate here. *See* Def. Mem. at 26-30, 36-38 & n.25. As Defendants note, the determination of whether Defendants' acts were deceptive or misleading must be made by viewing the representations in their full context. Def. Mem. at 10; *see also FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006). By isolating individual, specific components of the advertising and marketing scheme discussed in Plaintiffs' CAC, Defendants ignore the overall effect of the totality of the advertising and marketing components when viewed together as part of a comprehensive marketing and sales scheme. Plaintiffs complain of a practice of using misleading labeling and product placement to deceive consumers into purchasing Defendants' obsolete oil, not just a single misleading statement on the product's label. The question is not whether each specific statement is misleading in and of itself, but whether, the overall impression left by Defendants was deceptive and misleading to consumers.

the motor oils on Defendants' shelves are different. Def. Mem. at 28. As Defendants note, there are different varieties of motor oil offered for sale; however, the differences Defendants note, *e.g.*, viscosity, quantity, price, are apparent to a consumer looking at the front label of the products sitting on the store shelf.[24] Defendants' argument necessarily assumes that consumers would expect that the variety of motor oils offered includes some options that are obsolete and worthless, which ignores the fact that most consumers have never heard of obsolete motor oil. *See* CAC ¶71. Reasonable consumers do not read each and every label to see if what seems obvious is really something else. At best, Defendants present a factual dispute, and product placement is certainly a fact about Defendants' marketing that a jury may consider in determining whether Defendants' acts are unfair and deceptive.[25]

Additionally, Defendants' contention that their warning statements are permitted to be on the back label is disputed. Def. Mem. at 32-34. The NIST Handbook 130 Uniform Packaging and Labeling Regulation, on which Defendants' rely, requires that important information about the product must be on the "principal display panel," which is defined as the part of the label designed "to most likely be displayed, presented, shown, or examined under normal and customary conditions of display and purchase." *See* NIST Handbook Uniform Packaging and

---

[24] This fact also undermines Defendants' repeated conclusion that a consumer would read the back label because all of the relevant information is found there. Def. Mem. at 9, 33. Consumers shopping for motor oil are looking for a particular viscosity of motor oil, *e.g.,* 10W-30, and then select a product based on price. All of this information is contained on the front label. A consumer who does not know that motor oil can be obsolete would not check the back label for that information.

[25] Defendants liken this case to *Kuenzig*, *supra*, 2011 WL 4031141, to refute Plaintiffs' product placement claims. Def. Mem. at 27. However, unlike in *Kuenzig*, Plaintiffs do not base their allegations of Defendants' deception on the deception of other products by association. Rather, Plaintiffs claim that Defendants' placement of their obsolete motor oil next to brand name, non-obsolete motor oil, helps conceal the obsolete nature of their own product and is part of a deceptive course of conduct aimed at misleading purchasers as to the true nature of their products.

36

Labeling Regulation, Exh. C to Def. Mem. at 58. The parties dispute whether the back label is considered the principal display panel.[26]

Furthermore, all of Defendants' arguments in which they seek to blame consumers for not reading all of the information on the product labels ignore the basic fact, pled by Plaintiffs, that Defendants' counted on their customers' failure to read the warning label on the back label of their obsolete motor oil to sell their worthless products. Indeed, discovery has shown that prior to the class period, Defendants sold their obsolete motor oil products under a different label— one that disclosed the fact that the motor oil was for use in vehicles manufactured prior to 1988 on the front label. Only when Defendants changed to their DG Auto brand did Defendants move the warning language to the back label. And, in designing their DG Auto brand labels, Defendants chose simple and readable fonts for the front label, which they refer to as the "principal display panel" in their documents, and reserved secondary fonts for warnings on the back label.

Defendants' claims that the obsolete oil warning language is conspicuous, in appropriately sized font, easily readable, easily understandable, and in a location where a reasonable customer will look to find such information are refuted by their own documents and are disputed facts. Def. Mem. at 30-32. Further, as discussed below, Defendants' alleged compliance with industry standards is not determinative of whether Defendants' obsolete oil marketing and sales practices are deceptive and unfair. Defendants could have used the proper size font, type, background, etc., but if a reasonable consumer would not look at the back label, would only read portions of the back label's content, would be confused by the various

---

[26]For this same reason, Defendants' contention that the NIST Handbook 130 specifically assumes consumers will read the back label must be rejected. Def. Mem. at 28.

statements on the back label, or would not understand the obsolete oil warning language, Defendants' compliance with these standards is immaterial. *See, e.g.*, CAC ¶¶58-65.

Thus, Defendants' argument that a reasonable consumer would not be misled because he would read all of the language on the front and back of Defendants' motor oil products and understand that their motor oil is obsolete and has little if any purpose must be rejected at this point in the litigation. This conclusion that cannot be drawn from Plaintiffs' allegations and is not supported by the consumer protection statutes or case law.

### C. There is No Comprehensive Regulatory Scheme Governing the Labeling of Motor Oil to Preempt Plaintiffs' Claims or to Provide a Safe Harbor for Defendants' Conduct

Defendants' regulatory scheme preemption-like argument fails for several reasons. Def. Mem. at 11-25. First, there is no comprehensive regulatory scheme governing motor oil labeling. Second, the voluntary industry standards on which Defendants rely do not address the deceptive and unfair acts challenged by Plaintiffs. Third, these voluntary industry standards or regulations are not entitled to deference in a consumer fraud case. And, finally, Defendants do not even fully comply with these voluntary industry standards they contend validate their conduct, including, *inter alia*, notifying consumers that non-obsolete oil is only suitable for antique vehicles.

### 1. NIST and SAE are non-binding voluntary industry standards and recommendations that do not relate to or regulate the deceptive and unfair acts and practices of which Plaintiffs complain

The "regulatory scheme" cited by Defendants consists of recommendations from the National Institute of Standards and Technology (NIST) and voluntary standards from the Society of Automotive Engineers (SAE) relating to weights and measures, viscosity, and other quality standards having nothing to do with Defendants' deceptive and unfair practices of selling

obsolete motor oil to consumers.[27] Further, these regulations, at best, establish minimal guidelines relating to the labeling of motor oil products, and are far from constituting the comprehensive regulatory scheme suggested by Defendants.

Defendants rely on three suggested regulations from the NIST Handbook: the Uniform Packaging and Labeling Regulation (Packaging and Labeling Regulation), the Uniform Regulation for the Method of Sale and Commodities (Sale of Commodities Regulation), and the Uniform Engine Fuels and Automotive Lubricants Regulation (Engine Fuels Regulation). Def. Mem. at 12, n.12. The stated purpose of the Packaging and Labeling Regulation is to "provide accurate and adequate information on packages as to the identity and quantity of contents so that purchasers can make price and quantity comparisons." Exh. C to Def. Mem. at 57. In addition to mandating that certain identifying information appear on the "principal display panel," as discussed above, this regulation contains only a general requirement that information on a consumer package appear "in English language and shall be prominent, definite, plain, and conspicuous as to size and style of letters and numbers and as to color of letters and numbers in contrast to color of background." Packaging and Labeling Regulation §8.1, *id.* at 71.

Similarly, the Sale of Commodities Regulation has as its stated purpose "to require accurate and adequate information about commodities so that purchasers can make price and quantity comparisons." Exh. C to Def. Mem. at 105. With respect to motor oil, in addition to requiring the product be labeled with the appropriate viscosity, this regulation requires the label

---

[27] According to its website, NIST is "a non-regulatory federal agency within the U.S. Department of Commerce" with a mission to "promote U.S. innovation and industrial competitiveness by advancing measurement science, standards, and technology in ways that enhance economic security and improve our quality of life." http://www.nist.gov/public_affairs/general_information.cfm. *See also,* 15 U.S.C. §§271 and 272. NIST is not a consumer protection agency. SAE is an organization comprised of engineers and related technical experts in the aerospace, automotive and commercial-vehicle industries whose "core competencies are life-long learning and voluntary consensus standards development." http://www.sae.org/about/.

to display the applicable engine service category as defined by SAE J183.[28] Sale of Commodities Regulation §2.33.1, *id.* at 130. Further, for obsolete categories of motor oil, the regulation requires the label to "bear a plainly visible cautionary statement" in compliance with SAE J183. *Id.* at §2.33.1.3.2, Exh. C to Def. Mem. at 131.

The Engine Fuels Regulation contains the same labeling requirements as the Sale of Commodities Regulation regarding viscosity and engine service category. Engine Fuels Regulation §3.13.1, Exh. C to Def. Mem. at 185. In addition, this regulation states that no motor oil product should be sold unless it conforms to the labeled viscosity grade specification per SAE J300,[29] and conforms to the labeled performance claims evaluated against SAE J183. *Id.* at §2.12, Exh. C to Def. Mem. at 179.

Finally, SAE J183 contains pertinent information concerning specific engine service categories, including the recommended caution statements referenced by the Sale of Commodities Regulation and the Engine Fuels Regulation, which SAE J183 says should be displayed in legible and conspicuous type. SAE J183 §§ A.2.3.3 & A.2.8.3, Exh. D to Def. Mem. at 46, 55. In addition, SAE J183 discusses the limitations and risk of harm resulting from the use of obsolete motor oil when used in modern automotive engines and it recommends that the limitations of obsolete categories of motor oil should be clearly provided to consumers. *Id.* at §§A.2.8.2 & A.2.8.3, Exh. D to Def. Mem. at 55.

---

[28] SAE J183 is an SAE standard which "outlines the engine oil performance categories and classifications developed through the efforts of [various industry associations] and SAE" relative to active and obsolete categories. Exh. D to Def. Mem. at 1. SAE J183 is not a labeling regulation and does not displace state law.

[29] SAE J300 is a standard for "Engine Oil Viscosity Classification" and discusses SAE viscosity grades and their correlation with the ability of an engine to start at low and normal temperatures. Exh. E to Def. Mem. Plaintiff does not complain that Defendants' motor oil is labeled SAE 10W-30 when the viscosity classification should be something different; thus, the labeling for proper viscosity and SAE grades are not relevant to the issue of Defendants' deceptive and unfair marketing and sale of obsolete oil.

40

These regulations are the extent of the relevant recommendations contained in the NIST Handbook 130 and the SAE J183 standard. They in no way constitute comprehensive labeling regulations for motor oil. They do not constitute a comprehensive regulatory scheme governing the labeling of motor oil such that Defendants' alleged compliance with the same would preempt Plaintiffs' claims. They do not seek to supplant state consumer protection laws, the purpose of which is to protect consumers from unfair or deceptive acts in the marketplace.[30] Rather, as the NIST Handbook 130 makes clear, they seek to govern weights and measures laws in an effort to achieve uniformity and clarity across various jurisdictions.[31]

Given that the NIST Handbook does not constitute comprehensive labeling regulations, the fact that some states have adopted some portion of a NIST Handbook for some purpose does not equate to the adoption of comprehensive regulation of the conduct at issue here.[32] In most

_____

[30] Indeed, the minimal provisions of these weights and measures laws and standards that relate to motor oil labels can be construed in harmony with the statutory consumer protection laws whose broad purpose is to protect consumers in the marketplace and provide redress for unlawful conduct therein. *See Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 51-55 (Colo. 2002) (concluding that Colorado's Consumer Protection Act applies to insurance companies and is not preempted by Colorado's Unfair Claims–Deceptive Practices Act which regulates the insurance industry, finding that the two statutes can work in harmony, achieving different but complementary results).

[31] Defendants' non-justiciable political question argument fails (Def. Mem. at 68-70), as Plaintiffs' claims do not implicate, much less challenge, the weights and measure standards contained in the NIST Handbook. Plaintiffs' allegations concern Defendants' deceptive and misleading labeling and product placement scheme, the aim of which is to conceal from consumers the limited and obscure nature of their obsolete motor oil products. Plaintiffs do not challenge the NIST recommendations. In fact, Plaintiffs contend that Defendants fail to comply with them. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 438 F. Supp. 2d 291, 295 (S.D.N.Y. 2006) ("[F]or a motion to dismiss on nonjusticiability [political question] to succeed, it must be clear from the Complaint that the case involves or requires determination of an inextricably linked political question.").

[32] Defendants acknowledge that Minnesota, New York, and Ohio have not adopted the NIST or SAE standards. Def. Mem. at 13. Defendants further acknowledge that California and Maryland have only adopted the NIST Uniform Packaging and Labeling Regulation, which merely requires information on the package to be prominent, plain and conspicuous. *Id.* This hardly can be construed as a comprehensive labeling scheme. The only Maryland regulation Defendants

instances, the NIST recommendations were adopted by states in a limited weights and measures capacity.[33] And, in some instances, the portion(s) of the NIST Handbook adopted have no relation to motor oil products.[34] Regardless, in no instance does the adoption of these minimal NIST and SAE standards and recommendations seek to supplant state consumer protection statutes designed to protect consumers from unfair and deceptive business practices. Rather, they provide only minimal recommendations regarding labeling with respect to weights and measures issues. As the Sixth Circuit has found, "NIST standards govern weights and measures and

---

located is Md. Code Ann., Bus. Reg. §10-501, and as Defendants acknowledge, this regulation simply requires the appropriate API/SAE Classification and SAE viscosity number to be on each container of crankcase oil. Similarly, prior to its amendment banning the sale of obsolete motor oil, Cal. Bus. & Prof. Code §13482 required that the appropriate SAE/API service classification be conspicuously marked on each container and that a statement indicating generally the suitable automobile model years or condition of service, per SAE J183, be plainly visible.

[33] *See* Fla. Admin. Code Ann. 5F-7.005 (regulations adopted by the Florida Department of Agriculture and Consumer Services); 225 Ill Comp. Stat. 470/8 ("The Director shall from time to time issue reasonable regulations for enforcement of this Act [Weights and Measures Act] that shall have the force and effect of law."); Kan. Admin. Regs. §99-25-9 (adopting NIST regulations which "shall apply to weighing and measuring devices in the state"); Ky. Rev. Stat. Ann.. §363.520 ("The definitions of basic units of weight and measure, the tables of weight and measure, and weights and measures equivalents as published by the National Institute of Standards and Technology are recognized and shall govern weighing and measuring equipment and transactions in the state."); MCL 363.520 ("The definitions of basic units of weight and measure, the tables of weight and measure, and weights and measures equivalents, as published by the NIST, are recognized and shall govern weighing and measuring equipment and transactions in this state."); Mo. Rev. Stat. §413.015 (discussing the purpose of the Division of Weights and Measures); Neb. Rev. Stat. §89-186 (stating that the adopted portions of the NIST Handbook are to be used "to determine the proper units of measurement to be used" in the sale of commodities); N.J.A.C. 13:47H-1.2 (noting that the provisions of this subchapter are enforceable by the State Superintendent of Weights and Measures); 2 N.C. Admin. Code 38.0101 ("The Standards Division protects buyers and sellers against misrepresentation of quantities by providing uniform standards for weights and measures…"); 4 Tex. Admin. Code §12.21 (regulations adopted by the Texas Department of Agriculture as part of its Weights and Measures regulations). As Defendants note, the purpose of the NIST regulations is to help purchasers make "price and quantity comparisons." Def. Mem. at 28. As discussed, Plaintiffs' claims do not relate to price and quantity issues.

[34] With respect to Colorado, Defendant's cited regulations refer to the adoption of portions of the NIST Handbook unrelated to the labeling provisions, *e.g.*, "legal metrology and engine fuel quality" and/or products other than motor oil, *e.g.*, underground storage tanks, fuel products. Def. Mem. at 12-13.

42

weighing and measuring devices, not products or their labels." *In re Anheuser-Busch Beer Labeling Mktg. and Sales Practices Litig.,* No. 14-3653, 2016 WL 1104916, *7 (6th Cir. Mar. 22, 2016) (internal quotation omitted).

### 2. Defendants do not comply with the NIST and SAE standards

Further, Defendants do not even comply with some of these industry recommendations they claim absolve them of liability. First, as discussed, *supra,* the NIST Handbook 130 requires important information regarding the product to be on the principal display panel, but Defendants place all information concerning the limitations of their obsolete motor oil on the back label.

Second, the regulations cited by Defendants require the cautionary language to be "plainly visible." *See, e.g.,* Sale of Commodities Regulation §2.33.1.3.2, Exh. C to Def. Mem. at 130-31; Engine Fuels Regulation §3.13.1.3.2, Exh. C to Def. Mem. at 186. Similarly, SAE J183 specifically cautions that if obsolete oil is sold, "clear information indicating the product's limitations" should be provided to the consumer. SAE J183 §§A.2.3.3 & A.2.8.3, Exh. D to Def. Mem. Plaintiffs allege that the Defendants' cautionary language is not plainly visible and that the limitations of Defendants' obsolete motor oil are not clearly conveyed. CAC ¶¶52-65.

Additionally, although the Engine Fuels Regulation requires motor oil product to conform the labeled performance claims evaluated against SAE J183 (*id.* at §2.12, Exh. C to Def. Mem. at 179), SAE J183 states that "any performance claims to this category [SF] cannot be verified by independent engine testing" (SAE J183 § A.2.8.2., Exh. D to Def. Mem.), meaning there is no way to verify that Defendants' products actually meet the SF category as claimed.

Next, the photos of Defendants' product labels in Plaintiffs' CAC are the then-current version of Defendants' product labels. However, prior labels produced during discovery demonstrate that for a number of years, Defendants failed to include the recommended obsolete

43

oil warning language from SAE J183 on their product labels.

Finally, with respect to the current product labels depicted in the CAC, according to SAE J183, the recommended obsolete oil warning language applicable to Defendants' 10W-30 and 10W-40 motor oil is as follows:

> CAUTION: THIS OIL IS RATED API SERVICE CATEGORY SF. IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988. IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE. *LATER "S" CATEGORIES ARE SUITABLE OR PREFERRED FOR AUTOMOTIVE ENGINES FOR WHICH "SF" OILS WERE SPECIFIED.*

SAE J183 §A.2.8.3, Exh. D to Def. Mem. (emphasis added). The actual language on Defendants' DG 10W-30 and DG 10W-40 motor oil omits the last sentence, which informs consumers that there is no need for Defendants' obsolete oil product at all.[35] *See* CAC ¶¶50, 66-67. Indeed, as SAE J183 explicitly notes:

> There is no need for [the type of oil sold by Defendants] in the marketplace and such products are considered TECHNICALLY OBSOLETE.

SAE J183, §A.2.8.2, Ex. D to Def. Mem at 55.[36]

### 3.    Plaintiffs' claims are not preempted

Defendants' preemption arguments are similarly misplaced, relying on a non-existent federal weights and measures legal regime to preempt Plaintiffs' state consumer protection claims. Def. Mem. at 70-73. The lack of an applicable federal law, discussed above, is a fatal flaw in Defendants' preemption argument. And, there are more.

"When determining whether federal law preempts state-law causes of action, [courts]

---

[35] Defendants contend that their labels substantially comply with SAE J183 in this regard, which is another disputed issue. Def. Mem. at 15 & n.16.

[36] SAE J183 confirms that Defendants' motor oil is obsolete and contains strong statements regarding the lack of need for obsolete oil in the market place, as modern motor oil is preferred for use even in much older cars. *See* SAE J183 §§ A.2.3, A.2.3.2, A.2.8, A.2.8.2, Exh. D to Def. Mem.

'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Soo Line R.R. Co. v. Werner Enterprises*, 825 F.3d 413, 420 (8th Cir. 2016) (quoting *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 792 (8th Cir. 2010)); *see also Bond v. U.S.*, 134 S. Ct. 2077, 2088 (2014) ("we presume federal statutes do not abrogate state sovereign immunity"). Even assuming the weights and measures regulations Defendants cite are relevant, Defendants cannot show any such Congressional intent.

"Field preemption occurs where 'Congress …intended to foreclose any state regulation in the area, irrespective of whether state law is consistent or inconsistent with federal standards.'" *Soo Line R.R. Co.*, 825 F.3d at 420 (quoting *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (2015)). "The intention of Congress to exclude States from exerting their police power must be clearly manifested." *Campbell v. Hussey*, 368 U.S. 297, 312 (1961) (quotations omitted). Defendants cannot show that Congress intended that the National Institutes of Standards and Technology Act, 15 C.F.R. §200.100, *et seq.* (NISTA), would operate to foreclose state regulations. Indeed, NIST's function is "to *cooperate…with State and local governments…* in establishing standard practices, codes, specifications, and voluntary consensus standards;" as well as to "*cooperate* with the States in *securing uniformity* in weights and measures laws[.]" 15 U.S.C. §§272(b)(10), 272(c)(4) (emphasis added). Far from foreclosing state regulation, Congress acknowledges the states' ultimate discretion in passing laws and regulations which may or may not incorporate the NIST Handbook recommendations.

In addition to Congress, NIST itself notes that Handbook 130 (on which Defendants heavily rely) is not intended to foreclose state laws or regulations. *See* NIST Handbook 130, Exh. C to Def. Mem. at 14 ("Regulations given herein are *recommended* by [the National Conference

45

on Weights and Measures] for adoption by states when reviewing or amending *their official laws and regulations* in the areas covered") (emphasis added). It is axiomatic that a 'recommendation' that a state enact its own 'official' law is not an intent to foreclose a state from doing just that. Defendants' field preemption argument fails.

The lack of a relevant federal law likewise precludes Defendants' conflict preemption argument. "Conflict preemption occurs where either 'compliance with both state and federal law is impossible' or 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Soo Line R.R. Co.*, 825 F.3d at 420 (quoting *Oneok Inc.*, 135 S. Ct. at 1595). "'What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" *Id.* (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).

As noted above, Congress' purpose and intended effect in creating NIST was for the organization to "cooperate" with the states in the hopes of convincing them to strive for uniform standards, but not to force states to do that. Plaintiffs' consumer claims do not frustrate Congress' purpose in creating NIST. Congress' deference toward states is a tacit acknowledgement that states have additional considerations in the form of traditional state police powers, such as the protection of consumers.

Moreover, even assuming that the NIST and SAE standards are binding regulations, which they are not, Defendants' argument necessarily assumes that Defendants' product labeling complies therewith. As discussed above, this is a factual dispute among the parties. As a result of Defendants' faulty assumption, Defendants incorrectly argue that compliance with both the NIST recommendations and state consumer protection statutes is impossible. However, as discussed above, the NIST recommendations and the statutory consumer protection laws actually

46

complement each other, in that they both seek to protect consumers from misleading and deceptive product labeling.

Finally, Defendants' assertion of "significant case law" supporting their conflict preemption argument, Def. Mem. at 73, is followed by citation to two cases involving laws with express preemption provisions: the Petroleum Marketing Practices Act (PMPA) and the Food, Drug, and Cosmetic Act (FDCA).[37] *See Johnson v. MFA Petroleum Co.*, 10 F. Supp. 3d 982, 988 (W.D. Mo. 2014) (quoting 15 U.S.C. §2824(a)); *Bell v. Campbell Soup Co.*, 65 F. Supp. 3d 1328, 1329 (N.D. Fla. 2014) (quoting 15 U.S.C. §2824(a)). Each of these laws contains a broadly worded express preemption provision,[38] which is a far cry from the recommendations published by NIST. These cases are easily distinguishable and simply highlight the weakness of Defendants' argument. There is no conflict preemption in this case.

### 4.     The safe harbor provisions do not protect Defendants

Defendants challenge certain Plaintiffs' state statutory claims based on safe harbor provisions of those state statutes. As an initial matter, although Plaintiffs dispute their application to any of their claims, the regulations on which Defendants rely, if applicable at all, only apply to the labeling aspect of Plaintiffs' claims, such that Defendants' safe harbor argument has no

---

[37] Defendants' reliance on *Duke*, discussed *infra*, is unpersuasive. In *Duke*, the court granted summary judgement dismissing the plaintiffs' consumer claims in the face of specific state laws and administrative regulations that adopted the NIST regulations and required motor fuel to be sold on a volumetric basis (without reference to temperature), contrary to the plaintiffs' claims. *Duke*, 178 F. Supp. 3d at 926. Following its safe harbor analysis, the court in one sentence simply stated that "while not necessary to the decision, the court finds that summary judgment [for defendant] is appropriate for the additional reason[]...that the claims...are barred under the doctrine of field preemption." *Id.* at 927. The court did not further explain its conclusion.

[38] *See* PMPA, 15 U.S.C. § 2824(a) ("no State...may adopt or continue in effect...any provision of law or regulation with respect to [any] act or omission [addressed by PMPA], unless such provision of such law or regulation is the same as the [PMPA]; *see also* FDCA, 21 U.S.C. § 343-1(a)(2) ("no State...may directly or indirectly establish...or continue [any law or regulation]...for the labeling of food [as provided by FDCA]").

47

application to Plaintiffs' deceptive product placement allegations.[39] Defendants bear the burden of establishing the applicability of the safe harbor provision, and they have not done so here. *Marty*, 43 F. Supp. 3d at 1343.

Since there is no safe harbor provision in the Florida MAL or in the Minnesota MCFA, Plaintiff Barfoot's MAL claim (Count 12) and Plaintiff Sheehy's MCFA claim (Count 19) cannot be dismissed on this ground.

As discussed above, Minnesota, New York, and Ohio did not incorporate any of the NIST Handbook recommendations into state law. Accordingly, for the safe harbor provisions of the MUDTPA and New York's §349 and §350 laws to apply, Defendants' conduct must be in compliance with statutes or regulations administered by a federal agency.[40] And for the OCSPA's safe harbor provision to apply, Defendants' conduct must be required or specifically permitted by federal law.[41] There are no federal statutes or regulations on which Defendants can base their safe harbor arguments. The only thing Defendants can point to is the NIST Handbook,

---

[39] This was the finding of the district court in the similar action filed in the Northern District of Oklahoma. Exh. A, *Sisemore v. Dolgencorp, LLC*, No. 15-cv-724-GKF-TLW, Order at *2-3 (N.D. Okla. May 11, 2016) [Doc. No. 22].

[40] Minn. Stat. §325D.46(1) (exempting from the MUDTUPA "conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency."); N.Y. Gen. Bus. Law § 349(d) (exempting from §349 any act or practice that is "subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States"); N.Y. Gen. Bus. Law §350-d (exempting from §350 any conduct in compliance with rules, regulations and statutes administered by federal or state administrative bodies). *See also Weller v. Accredited Home Lenders, Inc.*, No. 08-2798, 2009 WL 928522, *3 (D. Minn. Mar. 31, 2009) ("[T]he mere fact that conduct falls within the regulatory province of a state agency is not enough for a defendant to invoke section 325D.46."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, *22 (E.D.N.Y. Aug. 29, 2013) ("Compliance with regulations does not immunize misconduct outside the regulatory scope.") (internal quotation and citations omitted).

[41] Ohio Rev. Code Ann. §1345.12(A) (exempting from the OCSPA "an act or practice required or specifically permitted by or under federal law, or by or under other sections of the Revised Code.").

48

which contains voluntary recommendations, and NIST itself is a non-regulatory federal agency. *See*, n.27, *supra.* Thus, Plaintiff Sheehy's MUDTPA claim (Count 18), Plaintiffs Barrows', Gadson's, and Woods' New York Gen. Bus. Law §§349 and 350 claims (Counts 24 and 25), and Plaintiff Fruhling's OCSPA claim (Count 27) cannot be dismissed.

The safe harbor provisions of Colorado's and Nebraska's statutory consumer protection law only excludes conduct that is in compliance with other laws or regulations.[42] The safe harbor provisions of Florida's, Illinois', and Michigan's statutory consumer protection laws only exclude conduct specifically authorized by other laws.[43] The safe harbor provision of Nebraska's

---

[42] C.R.S. §6-1-106(1)(a) (exempting from the CCPA only that "conduct in compliance" with other laws); Neb. Rev. Stat. §87-304(a)(1) (exempting from the NDTPA "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency"). *See also Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56-57 (Colo. 2001) (answering certified questions and finding that conduct regulated by the Insurance Commissioner pursuant to the CUCDPA is not exempt from the CCPA because "the mere existence of a regulatory body to oversee certain standards of an industry does not remove all acts and practices of that industry from the provisions of the CCPA").

[43] Fla. Stat. §501.212(1) (excluding from the FDUPTA acts "required or specifically permitted by federal or state law."); 815 Ill. Comp. Stat. 505/10(b)(1) (exempting from the ICFA "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."); Mich. Comp. Laws 445.904(1)(a) (exempting from the MCPA a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."). *See also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *20 (E.D.N.Y. Aug. 29, 2013) ("Courts have construed § 501.212(1) [FUDTPA's safe harbor provision] narrowly. A party seeking its protection must demonstrate "that a specific federal or state law affirmatively authorized it to engage in the conduct" of which plaintiffs complain."); *Fed. Ins. Co. v. Binney & Smith, Inc.,* 913 N.E.2d 43, 51-52 (Ill. App. Ct. 2009) ("The court explained mere compliance with the rules applicable to labeling and advertising is not sufficient to trigger the exemption created by section 10b(1). Instead, the conduct at issue must be specifically authorized by laws administered by the regulatory body in order for section 10b(1) to apply.") (internal quotation omitted); *In re Anheuser-Busch Beer Labeling Mktg. and Sales Practices Litig.,* 644 Fed. App'x. 515, 522 (6th Cir. 2016)("NIST standards govern weights and measures and weighing and measuring devices, not products or their labels.") (internal quotation omitted).

Consumer Protection Act excludes regulated conduct.[44] As discussed above, the state statutes and regulations dealing with weights and measures issues on which Defendants rely do not regulate, require, authorize, or permit Defendants' marketing and labeling of obsolete motor oil at issue here. And, in any event, as also discussed above, Defendants fail to comply with the NIST recommendations and SAE standards on which they rely. According, there is no safe harbor for Defendants' conduct under any of these state statutes and Plaintiff Brown's CCPA claims (Count 10), Plaintiff Harvey's NCPA and NDTPA claims (Counts 21 and 22), Plaintiff Barfoot's FDUTPA claims (Count 11), Plaintiff Solis' ICFA claims (Count 13), and Plaintiff Gooel's MCPA claims (Count 17) cannot be dismissed.

Noting that a number of states do not have safe harbor provisions in their respective consumer protection statutes, Defendants argue that a common law safe harbor doctrine precludes the remainder of the Plaintiffs' state statutory claims. Def. Mem. at 20-23. The lack of a relevant regulatory scheme governing the conduct at issue dooms Defendants arguments here, as well. *See Lopez v. Nissan N. Am., Inc.,* 135 Cal. Rptr. 3d 116, 132 (Cal. Ct. App. 2011) (holding that under California law, the safe harbor doctrine is only applicable when a statute actually bars or clearly permits the conduct);[45] *Johnson v. MFA Petroleum Co.*, 10 F. Supp. 3d 982, 997 (W.D. Mo. 2014) ("Plaintiff may not use the MMPA to impose liability for conduct that

---

[44] Neb. Rev. Stat. §59-1617(1) (exempting from the NCPA "actions or transactions otherwise permitted, prohibited, or regulated under laws" administered by regulatory bodies or officers of Nebraska or the United States). *See also Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883, 890 (D. Neb. 2003) ("particular conduct is not immunized from the operation of the [Nebraska] Consumer Protection Act merely because the actor comes within the jurisdiction of some regulatory body, the immunity arises if the conduct itself is also regulated").

[45] *See also In re Motor Fuel Temperature Sales Practices Litig.,* No. 06–CV–7621, 2013 WL 3795206, *11 (D. Kan. July 19, 2013) ("[a]cts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law, but acts may, if otherwise unfair, be challenged under the unfair competition law even if the Legislature failed to proscribe them in some other provision.") (quoting *Cel–Tech Commcn's, Inc. v. Los Angeles Cellular Tel. Co.,* 973 P.2d 527, 540 (Cal. 1999).

50

is permitted and highly regulated under Missouri law."); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 554 (N.J. 1997) ("In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied…that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that the conflict must be patent and sharp, and must not simply constitute a mere possibility of incompatibility."); *Duke v. Flying J, Inc.*, 178 F. Supp. 3d 916, 926 (N.D. Cal. 2016) (finding that both North Carolina and Texas recognize common law exemptions virtually identical to that under California law). Thus, Plaintiff Vega's UCL, CLRA, and FAL claims (Counts 6, 7 and 8), Plaintiffs Oren and Taschner's MMPA claims (Count 20), Plaintiff Flinn's NJCFA claims (Count 23), Plaintiff Raab's NCUDTPA claims (Count 26), and Plaintiffs Preas' and Johnson's TDTPA claims (Count 28) should not be dismissed.[46]

   With respect to their safe harbor argument, as well as their preemption and political question arguments, Defendants rely heavily on *Duke*, 178 F. Supp. 3d 918, a case they characterize as having "strikingly similar facts" and "similar circumstances" to Plaintiffs' case. Def. Mem. at 3, 22. Defendants mischaracterize *Duke*, which involved weights and measures claims in the face of contrary and specific weights and measures regulations.[47]

   In *Duke*, the plaintiffs alleged that because the volume of motor fuel expands as its

---

[46]Although Defendants also seek dismissal of Plaintiff Meyer's KCPA claims (Count 14), Plaintiff Foppe's KCPA claims (Count 15), and Plaintiff McCormick's MCPA claims (Count 16) under their safe harbor argument, Defendants fail to cite any case law or statute specific to these Plaintiffs' claims to support this argument. *See* Def. Mem. at 20-23.

[47] A more basic distinction is that *Duke* was decided on a motion for summary judgment, not a Rule 12 motion. That alone makes *Duke* inapplicable here.

51

temperature rises, gasoline retailers violated state consumer protection laws by selling a gallon of motor fuel at a temperature exceeding 60 degrees without disclosing this fact to consumers or adjusting the price to compensate. *Duke*, 178 F. Supp. 3d at 920. The plaintiffs' claims revolved around the proper definition of "gallon," as the plaintiffs asserted that "gallon" should not be defined solely by volume and without reference to temperature, as they had agreed to pay a specified price per gallon and if the temperature was over 60 degrees, they received less fuel. *Id.* at 922. With respect to the plaintiffs' statutory claims, the defendants argued, and the court agreed, that the law of the relevant states protected them from liability with respect to claims regarding the manner in which they dispensed motor fuel, relying on the respective safe harbor provisions of the relevant consumer protection statutes. *Id.* at 923, 926. According to the court:

> the states at issue define "gallon" as exactly 231 cubic inches, have each adopted into their respective state's laws NIST Handbook 44, and have each defined "gallon" to exclude temperature considerations… Thus, any attempt by plaintiff to construe the term "gallon" to mean "temperature-adjusted gallon" is contrary to law and facially unreasonable.
>
> * * *
>
> Each of these state's laws and administrative regulations/procedures require that motor fuel be sold on a volumetric basis (without reference to temperature), and provide specific penalties if motor fuel is sold on another basis. They have all adopted the NIST definitions of basic units of weights and measures, including Handbook 44, which provides that one gallon of retail motor fuel is defined as exactly 231–cubic-inches, irrespective of temperature.

*Id.* at 925-26. In all of those states, there was a "specific statutory consumer protection scheme that authorizes the challenged business practices at issue." *Id.* at 927. Further, as the defendants noted, because of the weights and measures regime adopted by the relevant states, they could not lawfully sell motor fuel in the manner suggested by the plaintiffs. *Id.* at 923. As discussed herein, that is not the case with respect to Defendants' motor oil labeling and product placement. There is no relevant, specific, comprehensive regulatory scheme governing the labeling and/or product placement of motor oil.

52

## 5. NIST Handbook's recommendations and SAE voluntary standards, if applicable at all, are considerations for the trier of fact

Defendants incorrectly argue that the industry recommendations and standards are entitled to deference from the Court. As even the cases cited by Defendants hold, the industry guidance relied on by Defendants is simply a consideration for the courts or finders of fact when determining whether specific conduct is deceptive.[48] Disputed facts regarding Defendants' compliance with these regulations or lack thereof should also be considered at that time.

Additionally, as Defendants note, some statutory consumer protection laws like the FDUTPA direct courts to consider the FTC's interpretation of the Federal Trade Commission Act (FTCA) in determining whether particular conduct violates a state's statutory consumer protection laws. Fla. Stat. §501.204(2). However, the industry guidance materials and voluntary standards on which Defendants rely are plainly not the FTC's interpretation of the FTCA, and Defendants have not cited any FTC or federal court cases interpreting 15 U.S.C. § 45(a)(1) in such a way as to support a finding as a matter of law that Plaintiffs' allegations fail to state a

---

[48] Moreover, those cases are distinguishable from Plaintiffs' claims as, unlike the regulations relied on by Defendants here, the regulations in those cases specifically related to the complained of conduct. *See, e.g.*, *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973-75 (7th Cir. 1999) (finding that the district court's failure to consider federal and state regulations that "essentially define the circumstances under which the advertising of a discount price is deceptive" prior to determining that the defendant's advertisements were not deceptive was found to be in error. The court's failure to consider those regulations ignored "provisions [that spoke] directly to the type of promotions at issue here" and that reflected "the considered judgment of the Illinois Attorney General and the Federal Trade Commission as to what is likely to deceive consumers."); *Ivie v. Kraft Foods Global, Inc.*, No. 12-02554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) (denying a motion to dismiss, finding that the FDA's industry guidance statement is relevant to the issue of whether the labels at issue could be deceptive or misleading to a reasonable consumer); *Manning Intern. Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) (denying a motion to dismiss the plaintiff's claims of false advertising with respect to defendants' gemstones where defendants' stated descriptions of the stones did not meet FTC guidelines for such terms). *See also In re Nissan N.A., Inc. Odometer Litig.*, 664 F. Supp. 2d 873, 887-88 (M.D. Tenn. 2009).

53

plausible claim entitling them to relief.[49] As discussed throughout this Opposition, whether or not Defendants' actions were deceptive or unfair in violation of state statutory law is a factual issue not appropriate for resolution at this stage of the proceedings. For purposes of this motion to dismiss, Defendants' cited recommendations and industry standards do not amount to a comprehensive regulatory scheme governing Defendants' deceptive conduct that would preclude Plaintiffs' statutory consumer protection claims as a matter of law. Defendants' motion to dismiss should be denied.

## II.  PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS

### A.  Plaintiffs Sufficiently State Plausible Claims for Breach of Implied Warranty

Plaintiffs adequately allege plausible claims for breach of implied warranty. Plaintiffs' implied warranty claims are based on the Uniform Commercial Code (UCC), regardless of which state law applies, as each state has adopted the UCC. *See* n. 50 & 51, *infra*.

With respect to claims for breach of implied warranty of merchantability, UCC §2-314 provides in part as follows:

(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind….

(2) Goods to be merchantable must be at least such as:
  (a) pass without objection in the trade under the contract description; and
  (b) in the case of fungible goods, are of fair average quality within the description; and
  (c) are fit for the ordinary purposes for which such goods are used; and
  (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
  (e) *are adequately contained, packaged, and labeled* as the agreement may require; and
  (f) conform to the promises or affirmations of fact made on the container or

---

[49] Defendants' reliance on the Fair Packaging and Labeling Act is also misplaced, as the FTC determined that motor oil is not a consumer commodity for purposes of that Act. 16 C.F.R. §503.2(a).

label if any.

*Id.* (emphasis added).[50] Thus, among other things, the implied warranty of merchantability requires that a product be adequately labeled. In addition to alleging that Defendants are "merchants" and that there is an implied warranty of merchantability included in the sale of Defendants' obsolete motor oil that is sold in their stores, CAC ¶¶138-139, 155-156, Plaintiffs sufficiently allege that Defendants' obsolete motor oil is not adequately labeled, *see* Relevant Facts & Part I(B)(3), *supra*. Contrary to Defendants' argument, what is adequate or not is contested and as such is a question for a jury.

As to the implied warranty of fitness, Plaintiffs likewise state plausible claims. UCC §2-315 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."[51]

Plaintiffs maintain that the Defendants had reason to know that the consumers relied on the representations for the particular purpose for which the goods were being sold (*i.e.,* selling the DG-brand motor oil as suitable for the consumers' automobiles). *See* CAC ¶¶176-178. Indeed, as Plaintiffs allege, the purpose of Defendants' marketing and sales scheme was to deceive consumers into believing that their obsolete oil was suitable for modern-day vehicles. *Id.* at ¶¶35, 69, 161. As discussed, Defendants' obsolete oil has no legitimate purpose in the marketplace, since modern oil is backwards compatible and is actually recommended for use in pre-1988 and pre-1930 automobiles. Plaintiffs allege that Defendants intentionally used misleading advertising and marketing techniques to sell their obsolete oil to consumers for use in

---

[50] UCC §2-314 has been adopted by each Plaintiff's state. *See* CAC ¶153 and n.1.
[51] UCC §2-315 has been adopted by each Plaintiff's state. *See* CAC ¶171 and n.2.

their modern day vehicles, and that Defendants knew their strategy was successful based on the quantity of their obsolete oil sold. *Id.* at ¶¶69, 161. Plaintiffs maintain that Defendants' obsolete motor oil is not as represented on the label and that the Defendants have deceptively omitted material facts from the label.

With respect to both types of implied warranties, a merchant may modify, exclude or limit the implied warranties. UCC §2-316(2). However, to exclude or modify the implied warranty of merchantability, the merchant must mention the word "merchantability" and in case of a writing must be "conspicuous," and to exclude or modify an implied warranty of fitness, the merchant must do so by a writing and "conspicuous." *Id.* "Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" *Id.*

Plaintiffs adequately allege claims of breach of the implied warranty of merchantability and of fitness.[52]

## B.     Plaintiffs' Nationwide Breach of Implied Warranty Claim is Proper

Defendants urge this Court to dismiss Plaintiffs' breach of implied warranty of merchantability claim brought on behalf of a nationwide class (Count 2) citing choice of law issues. The Court should deny Defendants' request because it is premature, there are no material differences in the substantive laws to be applied with regard to the codified UCC provision, and application of Tennessee law as pled survives a motion to dismiss. Even in the event the Court

---

[52] Defendants argue that some Plaintiffs failed to plead facts establishing breach of implied warranty because they did not identify the automobile for which they purchased the obsolete motor oil. Def. Mem. at 55-56. Defendants make this same argument in their Motion to Strike Class Allegations with respect to Plaintiffs' unjust enrichment class claims. Rather than repeat their same arguments in response here, Plaintiffs reference and incorporate their response to this argument as set forth in Plaintiffs' Suggestions in Opposition to Defendants' Motion to Strike Class Allegations, Part II, filed contemporaneously herewith.

found another law or laws to be more appropriate, amendment of the claims versus dismissal would be the more just remedy.

### 1. A choice of law analysis is premature

Choice of law issues need not be undertaken at the motion to dismiss stage, and in this case such an analysis would be premature, as well as a burdensome, unnecessary judicial undertaking at this juncture. Federal courts across the nation, including those within the Eighth Circuit, have found making a choice of law determination at the motion to dismiss stage of litigation can be premature because discovery is needed to fully evaluate the issues or simply because such an analysis is unnecessary at the time. *See e.g.*, *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 309 (3d Cir. 2011) ("The Seventh Circuit rightly noted that 'choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation'…It is well-established that consideration of choice of law issues at the class certification stage is generally premature.") (internal citations omitted).[53] Denying a motion to dismiss based on a choice of law theory is seemingly more

---

[53] *See also Leisman v. Archway Med., Inc.*, 53 F. Supp. 3d 1144, 1146, 48 (E.D. Mo. 2014) (denying motion to dismiss and holding "a choice of law analysis is not appropriate at this stage of the litigation" but "better suited for a motion for summary judgment" given "Plaintiff's public policy argument and the fact-intensive nature of a choice of law analysis"); *Nestlé Purina Petcare Co. v. The Blue Buffalo Co. Ltd.*, No. 4:14-CV-859-RWS, 2016 WL 5390945, *3 (E.D. Mo. Sept. 27, 2016) (stating the court is unable to determine, "based on the existing factual record, [which] law should apply to [a particular] claim. As a result, a choice of law determination would be premature and" the court refuses to dismiss the claim now); *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007) (finding motion to dismiss and strike nationwide claim "premature as class discovery has not yet been completed, and the Court, at this stage, cannot conduct a rigorous conflicts of law or Rule 23 analysis when Plaintiffs themselves do not even know which states are at issue because class discovery has not yet revealed it....")(internal quotation omitted); *Mojica v. Securus Techs., Inc.*, No. 5:14-CV-5258, 2015 WL 429997, *5 (W.D. Ark. Jan. 29, 2015) ("In many cases, a motion to strike or dismiss a plaintiff's class allegations prior to discovery on class-related issues and prior to the submission of a motion for class certification would be premature.") (internal quotation and citation omitted); *In re Nat. Hockey League Players' Concussion Injury Litig.*, No. MDL 14-

appropriate in the MDL and class action litigation contexts where courts are reluctant to strike claims based on conflicts of law at such an early stage of litigation and to conduct a conflicts of law analysis, a court would likely need to analyze several state laws and several different conflicts of law theories given the numerosity of cases, jurisdictions of origin, parties, and injuries. *See In re OnStar Contract Litig.,* 600 F. Supp. 2d 861, 864-65 (E.D. Mich. 2009) (explaining that "in order to engage in a choice-of-law analysis in this case, this Court would need to consider and apply the choice of law rules of numerous states."); *Forcellati v. Hyland's, Inc.,* 876 F. Supp. 2d 1155, 1159 (C.D. Cal.2012) ("Courts rarely undertake choice-of-law analysis to strike class claims at this early [pleading] stage in litigation."); *Andriesian v. Cosmetic Dermatology, Inc.,* No. 3:14-CV-01600-ST, 2015 WL 1638729, *10–11 (D. Or. Mar. 3, 2015) (stating that "most [courts] hold that a case should not be dismissed based on a conflict of law analysis prior to class certification."), *report and recommendation adopted,* 2015 WL 1925944 (D. Or. Apr. 28, 2015); *In re Sony Grand Wega KDF–E A10/A20 Series Rear*

---

2551-SRN, 2015 WL 1334027, *15-16 (D. Minn. Mar. 25, 2015); *In re Samsung DLP Television Class Action Litig.,* No. 07–2141, 2009 WL 3584352, *3 (D.N.J. Oct. 27, 2009) ("it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place."); *In re OnStar Contract Litig.,* 600 F. Supp. 2d 861, 862 (E.D. Mich. 2009) ("declin[ing] to rule on those challenges that require a conflicts of law determination because a conflicts of law determination would be premature at this stage of the litigation"); *Arlandson v. Hartz Mountain Corp.,* 792 F. Supp. 2d 691, 699–700 (D.N.J. 2011) (holding that where "the choice of law determination for [a particular] issue require[s] a fuller factual record, the Court will defer its decision until such factual record is available."); *In re Shop-Vac Mktg. & Sales Practices Litig.,*No. 4:12-MD-2380, 2014 WL 3557189, *4 (M.D. Pa. July 17, 2014) (declining "to engage in a detailed choice-of-law analysis in ruling on [this] motion to dismiss" because such an analysis is "not require[d]" and instead the court "focuse[d] on the pleading requirement set forth in Rule 8 and 9 to the Federal Rules of Civil Procedure, which apply irrespective of the choice-of-law analysis."); *In re 5–hour ENERGY Mktg. & Sales Practices Litig.,* No. MDL 13–2438, 2014 WL 5311272, *18–19 (C.D. Cal. Sept. 4, 2014); *Andriesian v. Cosmetic Dermatology, Inc.,* No. 3:14-CV-01600-ST, 2015 WL 1638729, *10–11 (D. Or. Mar. 3, 2015) (stating that defendant "contend[s] that a conflict of law has already arisen…Even if true, it is premature to undertake that analysis on a motion to dismiss."), *report and recommendation adopted,* No. 3:14-CV-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015).

*Projection HDTV Television Litig.,* 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage."); *Gitson v. Trader Joe's Co.,* No. 13–CV–01333–VC, 2014 WL 3933921, *1 (N.D. Cal. Aug. 8, 2014) ("Under Ninth Circuit law, then, at least in certain circumstances, a consumer protection class action can proceed under the laws of multiple states, ... the Court will not strike the nationwide class claims at the pleading stage.").

Here, a choice of law analysis on Plaintiffs' nationwide breach of implied warranty claims would be premature. Such analysis, as Defendants suggest, would require analyzing three different choice of law theories and the substantive law of sixteen states. This is an unnecessary undertaking at this time.

Defendants claim that the only connection to Tennessee is their Tennessee incorporation and, therefore, Defendants' corporate residence in that state. Contrary to Defendants' contention, the fact that Defendants' deceptive marketing scheme was designed and implemented in Tennessee suggests that Tennessee law may be appropriate. *See Weitz Co., LLC v. Lexington Ins. Co.,* 786 F.3d 641, 645 (8th Cir. 2015) (explaining "[t]he laws of three jurisdictions—Iowa (Weitz's headquarters), Illinois (the insurance companies' headquarters and where the numerous insurance contracts between Hyatt and the defendant insurers were executed), and Florida (the situs of the construction project)—could be in play here" for a conflicts analysis), *reh'g denied* (June 17, 2015); *In re Payless Cashways,* 203 F.3d 1081, 1084 (8th Cir. 2000); *Bias v. Wells Fargo & Co.,* 942 F. Supp. 2d 915, 928–29 (N.D. Cal. 2013) (accepting plaintiffs' allegations as true "that the scheme was designed by executives at Wells Fargo. Defendants take issue with the fact that the SAC does not explicitly state that the decisions or conduct occurred within California; however, drawing all reasonable inferences in favor of Plaintiffs, the totality of

59

Plaintiffs' allegations sufficiently state that the scheme was initiated and perpetrated by executives in California. The allegations made by Plaintiffs here are plausible, and whether Plaintiffs' UCL claim is ultimately tied to California solely by a California headquarters cannot be discerned without the benefit of discovery. For that reason, a determination is better suited for the class certification stage.") (internal citations omitted). But in order for Plaintiffs to fully argue the conflicts issue with factual specificity, discovery would be necessary. "Unlike the more straight forward choice of law analysis required for a products liability claim, applying the factors necessary to determine choice of law for a contract or quasi-contract claim is a very fact-intensive inquiry. *Arlandson*, 792 F. Supp. 2d at 705 (finding "a choice of law inquiry as to contract-based claims is premature at the motion to dismiss stage.") This fact-intensive inquiry "is more difficult, and premature, when dealing with a potential nationwide class action." *Bias*, 942 F. Supp. 2d at 928–29 ("the Court finds that the choice of law determination in this case is better suited for the class certification stage because the record with respect to balancing the competing states' interests is not sufficiently developed.") (internal citations omitted); *Sullivan*, 667 F.3d at 309 (explaining that "choice-of-law analysis would be particularly difficult in a nationwide class action where an array of factors beyond the residence of the class members must be considered, including, *inter alia,* the location of the parties and the purchased items, and the place of contracting and performance") (internal citation omitted); *Rios*, 469 F. Supp. 2d at 741–42 (At the motion to dismiss stage "it is unclear what state laws will be involved, or what claims will ultimately remain after the completion of class discovery."). The "full scope on where Defendants' conduct occurred (and the actual extent of their conduct has yet to be fully determined. [And s]uch determination should be made based on a more complete record than currently exists." *Bias*, 942 F. Supp. 2d at 929. Plaintiffs believe that there are substantial

connections to Tennessee, despite Defendants' attempt to minimize any relationship Tennessee has to Plaintiffs' claims and this case. To prove these connections, Plaintiffs' request time to conduct discovery, including discovery into issues such as where the marketing scheme for Defendants' obsolete motor oil was developed, where the decision to sell obsolete motor oil over an oil appropriate for modern-day vehicles was made, where the decisions concerning Defendants' obsolete motor oil label were made, where the majority of Defendants' employees carrying out the scheme were located, how many bottles of Defendants' obsolete motor oil were distributed and sold in Tennessee, what class members suffered injuries in Tennessee, the extent of the injuries suffered, etc. Until such discovery is conducted, Defendants' request to dismiss the nationwide class claim for breach of implied warranty is premature.

> **2.      A choice of law analysis is not necessary here since there are no material conflicts**

The Court need not engage in a lengthy choice of law analysis because here there is no real conflict that would impact the outcome of the application of the law, nor do Defendants argue any. The threshold issue to be determined before conducting any choice of law analysis is whether any material conflict in the laws actually exists. *See Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) ("We agree with the statement of Judge Richard A. Posner that 'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.'") (internal citation omitted); *Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 864 (8th Cir. 2006)(citing *Leonards v. S. Farm Bureau Cas. Ins. Co.,* 279 F.3d 611, 612 (8th Cir.2002)).

Here, the law in question is a UCC provision codified by Tennessee law, Tenn. Code Ann. §47-2-314. And, as Defendants acknowledge, each state has adopted the UCC, just like

Tennessee did. Thus, the laws themselves are substantially similar. Any conflicts analysis Defendants desire now is simply to create a false conflict in this circumstance.[54]

Defendants claim that there are differences among the states' implied warranty laws regarding issues of privity, notice, the availability of class actions, and the definition of merchantability. Def. Mem. at 47. These are not material differences in the case. For example, privity is not an issue, as all Plaintiffs and class members purchased the products directly from Defendants. Notice is likewise not an issue, as discussed in Part II(C) *infra*, the notice that was given was given on behalf of all class members. Defendants must provide the Court with some real, material conflict before insisting the Court undertake a choice of law analysis – but Defendants failed to do so. *See Phillips*, 80 F.3d at 276 ("[W]e conclude that the legal principles involved in this case, rooted as they are in the common law of contracts, are the same in both jurisdictions. We thus do not need to engage in a choice-of-law analysis."); *In re Shop-Vac Mktg. & Sales Practices Litig.,* No. 4:12-MD-2380, 2014 WL 3557189, *5 (M.D. Pa. July 17, 2014) ("Defendants encourage the Court to conduct this analysis in conjunction with the motion to dismiss, but do not highlight for the Court the conflicts in potentially applicable state laws, nor do they address how any differences are material to the Court's disposition of the pending motion. Thus, because it does not appear that a choice of law analysis is dispositive of any of the issues currently before the Court, the Court will defer ruling on the choice of law issue until the parties present a factual record and more substantive briefing on the issue."); *see also Nestlé Purina Petcare Co.,* 2016 WL 5390945 at *2-3 (explaining "there is a difference between" the

---

[54]Throughout their motion, Defendants make general arguments concerning UCC provisions applicable to all Plaintiffs, thus, seeking nationwide application themselves. *See* Def. Mem. at 30-31, 51-55, 57-61.

competing laws, but "there is no conflict or choice of law issue" material to the contribution

claim). As one court found:

> Until the [p]arties have explored the facts in this case, it would be premature to
> speculate about whether differences in various states' consumer protections laws
> are material in this case....[O]nce the relevant facts of the case have been explored
> during discovery, it is possible that Plaintiff could narrow or define the class in
> such a way at the class certification stage to make any differences between
> applicable laws immaterial. Moreover, should choice of law analysis appear to
> pose problems at the class certification stage, [p]laintiff could seek to certify
> subclasses of putative class members from individual states or subclasses of class
> members from groups of states with consumer protections laws that are not
> materially different.

*Andriesian*, 2015 WL 1638729 at *10–11 (internal citation omitted); *see also Rios*, 469 F. Supp.

2d at 741–42 ("Plaintiffs could possibly limit the multi-state class action to only include those

states without conflicts of law, or possibly create a manageable number of sub-classes."). Given

the substantial similarity of the substantive laws, the lack of any explanation from Defendants on

how application of the substantive laws may be outcome determinative, and the future actions

Plaintiffs could take to prevent potential conflicts of law, no material conflict exists at this time

that would warrant a choice of law analysis by this Court or dismissal of Plaintiffs' claims.

### 3. Application of Tennessee law does not warranty dismissal of Plaintiffs' claims

Plaintiffs adequately pled a claim for breach of implied warranty under Tennessee law.

Where a court declines to make a choice of law analysis, as the Court should do here, a ruling as

to whether a claim has been stated in order to survive a motion to dismiss may remain necessary.

In that case, the court should analyze the claim under the law as pled in the complaint. *See*

*Arlandson*, 792 F. Supp. 2d at 705 (declining to make a choice of law determination on breach of

warranty claim because "the factual record here is not yet full enough"; "[h]owever, the Court

must still determine whether Plaintiffs have succeeded in stating a claim in order for that claim to

63

survive the pending motions to dismiss. Since Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard.").

Defendants take issue with the fact that "absent from Plaintiffs' complaint are any allegations of purchases or sales of the Motor Oil Products that occurred in Tennessee." Def. Mem. at 47. Without citing any law requiring such a specific allegation, Defendants call for dismissal. Defendants also do not cite any law establishing that Defendants cannot be found to have violated UCC §2-314 adopted by Tennessee under Tennessee law, the state of Defendants' incorporation. Instead, Defendants merely state that Tennessee law should not apply under any choice of law analysis.

While Defendants' choice of law analysis is flawed,[55] the real issue is that Defendants present no legal basis to dismiss Plaintiffs' claim if Tennessee law is applied as pled. *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1107 (S.D. Ind. 2001) ("Similar reasoning disposes of Ford's argument that the elements of an MCPA claim are not

---

[55] First, for example, the Eighth Circuit has held that "[w]hatever the ultimate resolution of the choice-of-law issue" where "there is no dispute that [plaintiff] pleaded a cause of action predicated on a violation of" a particular state's law, "at a minimum, the district court must apply [that] law to evaluate the claim." *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010). Moreover, the law where the relevant parties are located, and, indeed, headquartered should be considered in a choice of law analysis. *See Weitz Co., LLC*, 786 F.3d at 645. Here, Defendants fail to apply Tennessee law at all – despite that Defendants' headquarters is in Tennessee – and instead, merely advocate against its application. Second, the Seventh Circuit case that Defendants primarily rely on to support their request to dismiss Plaintiffs' nationwide claim for breach of implied warranty, is a case that a district court within the Eighth Circuit has explicitly rejected in the motion to dismiss context. *See Rios*, 469 F. Supp. 2d at 741–42 ("State Farm cites to *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir.2002), for the proposition that class action is not proper unless all litigants are governed by the same legal rules." But this decision was during certification – after class discovery, a time more appropriate for a conflicts of law analysis. "However, at this time, on State Farm's *motion to strike and dismiss,* it does not appear beyond doubt that Plaintiffs cannot establish an actionable class action lawsuit. *See Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997).").

pled because Plaintiffs failed to allege purchase or lease of the vehicles 'primarily for personal, family, or household purposes' as required by Mich. Comp. Laws §445.902(d). The typical allegation about the named Plaintiffs is as follows: 'Plaintiff Cheryl Stuart resides in Charleston, West Virginia, and is a citizen of the State of West Virginia. Plaintiff Stuart owns a 1998 Ford Explorer that was equipped with Wilderness AT Tires.' None of the named Plaintiffs alleges that he or she is a business or uses the vehicles or tires for business purposes. While some Plaintiffs may use their vehicles primarily for non-household purposes, a 'set of facts could be proved consistent with the allegations' that would state a claim under the MCPA by establishing personal use of the Explorers. Under the system of notice pleading established by Federal Rule of Civil Procedure 8, such specificity is not required at this stage of the proceedings. Because we are addressing a motion to dismiss, Defendant's objection to the complaint on this ground is premature."), *on reconsideration in part*, 205 F.R.D. 503 (S.D. Ind. 2001), *rev'd in part*, 288 F.3d 1012 (7th Cir. 2002). Unquestionably, Plaintiffs could prove a set of facts consistent with the allegations made in their CAC such that a claim under the codified UCC §2-314 pursuant to Tennessee law is proper. At the motion to dismiss phase, Plaintiffs need not present evidence to support their claims before they have had the opportunity to conduct any discovery. Instead, they must merely allege the necessary facts to provide notice as to the claim they are alleging. Plaintiffs' allegations are sufficient to state a claim, especially in conjunction with the concept that all reasonable inferences must be made in the light most favorable to Plaintiffs and allegations as pled should be assumed true. *See* Part II(A), *supra; see also* CAC ¶¶135-151. Therefore, Defendants' motion to dismiss should be denied.

### C.     Defendants' Remaining Arguments Turn on Disputed Factual Issues

Defendants' remaining arguments regarding Plaintiffs' implied warranty claims turn on

disputed issues of fact and are inappropriate for purposes of this motion.

Defendants' argument that the implied warranties are excluded because Plaintiffs had an opportunity to examine the labels raises disputed factual issues. Def. Mem. at 51-55. The exclusion of UCC §2-316(b)(3) based on a buyer's examination considers whether the buyer's examination would have reasonably revealed the complained of defect. *See* UCC §2-316, Comment 8. As discussed, Plaintiffs allege that examinations were ineffective because of Defendants' misleading product labeling and product placement. Section 2-314 provides that the packaging, container and labeling must be adequate. Defendants' contentions that Plaintiffs would have discovered the true nature of their products if they had inspected them is a question of fact not apparent from the CAC. Further, Defendants' contentions that a reasonable consumer would look at the cautionary statement on the back label and that their representations on the label were "conspicuous" are disputed factual issues not appropriate for purposes of a motion to dismiss.[56]

Moreover, contrary to Defendants' argument, it is not sufficient for purposes of UCC §2-316(3)(b) that their obsolete oil was available for inspection by Plaintiffs. Rather, as set forth in Comment 8 to the UCC,

> [i]n order to bring the transaction within the scope of "refused to examine" in paragraph (b), it is not sufficient that the goods are available for inspection. There must in addition be a demand by the seller that the buyer examine the goods fully. The seller by the demand puts the buyer on notice that he is assuming the risk of defects which the examination ought to reveal. The language "refused to examine" in this paragraph is intended to make clear the necessity for such demand.

---

[56]Similarly, Defendants' argument that Plaintiffs misused the product because they used Defendants' obsolete motor oil in their modern vehicles is based on Defendants' assumed fact that their product labels clearly and conspicuously warned Plaintiffs of the products' limited and obscure use, contrary to Plaintiffs' allegations. Def. Mem. at 56-57. This argument should be rejected.

66

UCC §2-316, Comment 8. There was no such demand made by Defendants, and Defendants do not claim to have made such demand.[57] Thus, Defendants' inspection argument should be rejected.[58]

Plaintiffs dispute Defendants' contention that they did not receive sufficient notice of their breach in accordance with UCC §2-607(3)(a).[59] In conjunction with the filing of the first class action complaint against Defendants on December 17, 2015, plaintiff's counsel sent notice to Defendants of his claims, including nationwide claims for breach of warranty. Exh. B, Gillian Wade letter to Defendants (12/17/15) and accompanying complaint, *Sanchez v. Dolgencorp, LLC*, No. 2:15-cv-9730 (C.D. Cal. Dec. 17, 2015) [Doc. No. 1]. Although the *Sanchez* case was subsequently dismissed, the letter and complaint served to provide Defendants with notice of Plaintiffs' and other consumers' claims relative to Defendants' sale of obsolete motor oil. Additionally, in January 2016, Plaintiffs' counsel sent a letter to Defendants' counsel providing further notice of their claims. Exh. C, Allan Kanner letter to Trent Taylor (1/27/16). Plaintiffs' subsequent individual class action complaints, which were superseded by the CAC, provided additional notice of Defendants' breach. And, finally, at the very least, Plaintiffs' CAC provided the required notice to Defendants.

---

[57]The cases cited by Defendants concerning "self-service" stores are generally negligence cases brought by a plaintiff injured by falling merchandise. Def. Mem. at 52-53. These cases have nothing to do with warranty claims and are thus irrelevant.

[58]This was the finding of the district court in the similar action filed in the Northern District of Oklahoma, in rejecting Defendants' challenges to that plaintiff's breach of implied warranty claims. Exh. A, *Sisemore v. Dolgencorp, LLC*, No. 15-cv-724-GKF-TLW, Order at *5 (N.D. Okla. May 11, 2016) [Doc. No. 22].

[59] Some courts recognize an exception to the requirement that a buyer provide direct notice to the seller, finding that direct notice is not required when the seller had actual knowledge of the defect of the particular product. *See In re Rust-Oleum Restore Mktg, Sales Practices, and Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. 2016). Plaintiffs sufficiently allege Defendants' knowledge to support this exception to the direct notice requirement. CAC ¶¶1, 5, 43, 124, 144, 161.

67

As the comments to UCC §2-607 make clear, "'[a] reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." UCC §2-607, Comment 4. *See also Buzadzhi v. Bexco Enterprises, Inc.*, No. 10-CV-247-GKF-PJC, 2011 WL 43086, *1 (N.D. Okla. Jan. 4, 2011)("[A] significant body of case law from around the country holds that the reasonable notice requirement of UCC §2-607(3)(a) should be judged under a relaxed standard when the suit is brought by a retail consumer of the product.") (citing cases).[60] Moreover, the sufficiency of the notice and what is a reasonable time within which to give notice are generally factual issues for the jury based upon the circumstances. *Rowe Int'l, Inc. v. J-B Enterprises, Inc.*, 647 F.2d 830, 833 (8th Cir. 1981). Plaintiffs' CAC includes allegations that they took reasonable steps to notify Defendants of their breach of implied warranties and are sufficient at this point. CAC ¶¶146, 151, 163, 168, 182, 186.[61]

Next, Defendants' argument that their express warranty displaces the implied warranty pursuant to UCC §2-317 should be rejected. Def. Mem. at 59-61. Defendants' argument ignores the fact that Plaintiffs' breach of implied warranty claims are based on Defendants' failure to adequately label their obsolete motor oil. Defendants' argument raises factual issues, including whether their obsolete oil is adequately labeled, as discussed above.

---

[60] This was likewise the finding by the court in *Sisemore*, discussed *supra* at n.57.

[61] Plaintiffs Barfoot, McCormick, Raab, and Preas also included allegations regarding additional specific notice they provided to Defendants. CAC ¶¶147-150, 164-167, 183-185. Defendants challenge the timing of the notice provided by Plaintiff Barfoot and Plaintiff Preas. As discussed above, this is a factual question for the jury. Defendants' arguments that such notice was not timely are based on facts beyond Plaintiffs' CAC. Defendants also misconstrue the notice provided by Plaintiff Barfoot. Plaintiff Barfoot provided notice of Defendants' breach of implied warranties in his complaint, noting his intent to later amend that complaint to assert claims based on that breach of warranty. *Barfoot v. Dolgencorp, LLC,* No. 4:16-cv-00520-GAF (W.D. Mo.) [Doc. 1 ¶¶97-100].

68

Finally, Defendants' argument that Plaintiffs may not maintain claims for both breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose should be rejected. Def. Mem. at 61-63. These warranties are not mutually exclusive. *Cartillar v. Turbine Conversions, Ltd.*, 187 F.3d 858, 861 n.5 (8th Cir. 1999) ("If the particular purpose for which goods are to be used coincides with their general functional use, the implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability.") (citation omitted); *APS Tech., Inc. v. Brant Oilfield Mgmt. & Sales, Inc.*, No. 13CV6500, 2015 WL 5707161, *7 (S.D.N.Y. Sept. 29, 2015) (same); *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, No. ML 12-2317, 2012 WL 6062047, *9 (C.D. Cal. Dec. 3, 2012) (same); *Gregory Wood Prod., Inc. v. Advanced Sawmill Mach. Equip., Inc.*, No. 5:06-CV-00087, 2007 WL 1825179, *5 (W.D.N.C. June 25, 2007) (finding that the two implied warranties are not mutually exclusive); *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 208–09 (Colo. 1984) ("Colorado case law recognizes that these warranties may coexist when there is sufficient evidence to support the creation of each warranty."); *Great Am. Ins. Co. v. Honeywell Int'l Inc.*, No. CIV.A. 05-857, 2007 WL 2905898, *18 (W.D. Pa. Sept. 28, 2007) ("The implied warranty of merchantability and the implied warranty for fitness of purpose may coexist as the two warranties are not mutually exclusive.").  Courts frequently permit plaintiffs to proceed with both claims if the plaintiffs have pled the elements of both claims, as Plaintiffs have done here. *See, e.g., Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599, 612–13 (D.N.J. 2013). *See also* UCC §2-317 (stating that warranties are to be construed as consistent with each other and as cumulative).

Accordingly, Plaintiffs state plausible claims for breach of the implied warranties, such that this Court should deny the Defendants' motion to dismiss.

## III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS

### A.    Plaintiffs' Sufficiently State Plausible Claims for Unjust Enrichment

The elements of Plaintiffs' unjust enrichment claims are generally the same: the unjust

retention of a benefit received at the expense of another.[62] Plaintiffs allege facts to support each

---

[62] *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012) ("Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another."); *Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1087 (D. Colo. 2016) (in Colorado, "[t]he elements of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it"); *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) ("Under Florida law, a claim for Unjust Enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof.") (internal quotations omitted); *Cleary v. Philip Morris Inc*., 656 F.3d 511, 516 (7th Cir. 2011) ("In Illinois, [t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.") (quotation omitted); *Spires v. Hosp. Corp. of Am.*, 289 Fed. App'x. 269, 272–73 (10th Cir. 2008) ("Under Kansas law, the elements of an unjust enrichment claim are (1) plaintiff conferred a benefit on defendant; (2) defendant knew and received a benefit; and (3) defendant retained the benefit under circumstances that make it unjust."); *Jones v. Sparks,* 297 S.W.3d 73, 78 (Ky. App. 2009) (stating the three elements for unjust enrichment in Kentucky as: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value); *Dolan v. McQuaide*, 79 A.3d 394, 401 (Md. Ct. Spec. App. 2013) (stating the three elements of unjust enrichment in Maryland as: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value); *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 692 (E.D. Mich. 2012) ("Under Michigan law, the elements of an unjust enrichment claim are (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant.") (internal quotation omitted); *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007) ("The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it."); *Vaughan v. Aegis Commc'ns Grp., LLC*, 49 F. Supp. 3d 613, 620–21 (W.D. Mo. 2014) ("A claim for unjust enrichment has three elements: (1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable.");

70

element. CAC ¶¶76, 78, 80-100, 121-134, 189-204.

Defendants' choice of law arguments concerning Plaintiffs' unjust enrichment claims are premature. *See* Part II(B)(1), *supra,* and Plaintiffs' Suggestions in Opposition to Defendants' Motion to Strike Class Allegations at Part IV(A), filed contemporaneously herewith, incorporated herein by reference.

### B.    Plaintiffs' Unjust Enrichment Claims Are Not Barred

Defendants argue that all Plaintiffs' unjust enrichment claims other than those of Plaintiff Solis are barred by the existence of a contract. Def. Mem. at 46. Defendants make this argument

---

*Stark v. Soteria Imaging Servs., Inc.*, 276 F. Supp. 2d 989, 993–94 (D. Neb. 2003) ("To recover on a claim for unjust enrichment, a plaintiff must prove that the defendant received and retained benefits under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor.") (internal quotation omitted); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) ("To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."); *GFRE, Inc. v. U.S. Bank, N.A.*, 130 A.D.3d 569, 570 (N.Y. App. Div. 2015) ("The elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered") (internal quotation omitted); *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 712 S.E.2d 670, 677 (N.C. Ct. App. 2011) ("Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously."); *Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827, 836 (S.D. Ohio 2003) (stating that in Ohio, unjust enrichment has three elements: (1) a benefit conferred upon the defendants by the plaintiff; (2) knowledge by the defendants of the benefit; and (3) the retention of the benefit by the defendants under such circumstances where it would be unjust to do so without payment); *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."). As these cases make clear, Defendants' assertion that California, Illinois, New Jersey and Texas do not recognize unjust enrichment is wrong. Def. Mem. at 46. *See also In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (finding that unjust enrichment is a theory that permits recovery on other recognized causes of action, including plaintiffs' UCL and CLRA claims); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (reviewing cases and finding that the Illinois Supreme Court recognizes unjust enrichment as an independent cause of action); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d at 1115 (reviewing Texas law and concluding that unjust enrichment is recognized as an independent cause of action).

71

knowing that it only applies with respect to express, written contracts and no such contract exists here.[63]  Defendants' argument should be rejected.

Defendants also claim that because Plaintiffs have an adequate legal remedy, their unjust enrichment claims must be dismissed. Def. Mem. at 46. However, Rule 8(d) expressly permits pleading in the alternative, and there is nothing impermissible in pursuing inconsistent or alternative theories in the same case. *Thornton*, 2016 WL 4073713 at *4; *Solo v. United Parcel Serv. Co.*, No. 15-1426, 2016 WL 1077163, *6 (6th Cir. Mar. 18, 2016); *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827, 841-42 (S.D. Ohio 2003). Accordingly, the Court should reject this argument.

Finally, as set forth above, Plaintiffs sufficiently state claims under their respective state statutory consumer protection laws. Thus, Defendants' argument that Plaintiffs' unjust enrichment claims fail because they are based on the same underlying conduct as Plaintiffs' statutory claims should also be rejected.

## IV.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

Defendants' challenges to Plaintiffs' standing are the same arguments Defendants made in their Motion to Strike Class Allegations [Doc. No. 87]. Rather than repeat the same arguments in response here, Plaintiffs reference and incorporate their response to Defendants' standing arguments as set forth in Plaintiffs' Suggestions in Opposition to Defendants' Motion to Strike

---

[63] Indeed, Defendants explicitly note this in their Exhibit K, purporting to list variations in unjust enrichment law among the states. *See also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) (collecting cases concluding that unjust enrichment is not available in the face of "a valid, express contract" or "written contracts"); *Dubinsky v. Mermart, LLC,* 595 F.3d 812, 819 (8th Cir. 2010) (affirming dismissal of unjust enrichment claim in the face of written contract explicitly covering the recovery sought); *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.,* 747 A.2d 600, 607-09 (Md. 2000) (collecting cases concluding that unjust enrichment is not available in the face of an express contract).

72

Class Allegations at Parts II & III(A), filed contemporaneously herewith.

## V.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss. Alternatively, Plaintiffs request leave to amend to address any deficiencies the Court may find in Plaintiffs' CAC.

Dated:  January 19, 2017                         Respectfully submitted,

                                         */s/ Cynthia St. Amant*
                                         Allan Kanner
                                         Cynthia St. Amant
                                         KANNER & WHITELEY, LLC
                                         701 Camp Street
                                         New Orleans, LA 70130
                                         Tel: (504) 524-5777
                                         Fax: (504) 524-5763
                                         a.kanner@kanner-law.com
                                         c.stamant@kanner-law.com
                                         *Lead Counsel for Plaintiffs*

                                             *and*

                                         Kenneth B. McClain
                                         Kevin D. Stanley
                                         Colin W. McClain
                                         J'Nan C. Kimak
                                         Andrew K. Smith
                                         HUMPHREY FARRINGTON & MCCLAIN, P.C.
                                         221 West Lexington, Suite 400
                                         Independence, Missouri 64050
                                         Telephone: (816) 836-5050
                                         Facsimile:  (816) 836-8966
                                         kbm@hfmlegal.com
                                         kds@hfmlegal.com
                                         cwm@hfmlegal.com
                                         jck@hfmlegal.com
                                         aks@hfmlegal.com
                                         *Liaison Counsel for Plaintiffs*

73

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send e-mail notification of such filing to all attorneys of record in this action.

*/s/ Cynthia St. Amant*