# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: DOLLAR GENERAL CORP. | ) | MDL NO. 2709 |
| MOTOR OIL MARKETING AND | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | Master Case No. 16-02709-MD-W-GAF |
| | ) | |
| ALL ACTIONS | ) | |

## ORDER

Presently before the Court is Plaintiffs Robert Oren, Roberto Vega, Allen Brown, Bradford Barfoot, Gerardo Solis, Nicholas Meyer, John Foppe, John McCormick, III, Bruce Gooel, Scott Sheehy, Janine Harvey, William Flinn, Kevin Gadson, Miriam Fruhling, Robin Preas, James Taschner, Jason Wood, Brandon Raab, and Seit Alla, and Robert Barrow's (collectively, "Plaintiffs")[1] Motion for Class Certification. (Doc. # 161). Defendants Dollar General Corporation; Dolgencorp, LLC; DG Retail LLC; and Dollar General (collectively "Dollar General" or "Defendants") oppose. (Doc. # 184).[2]

---

[1] Two member cases originating in the State of New Mexico, Dollar General Corp. v. Balderas, 17-00831-CV-W-GAF; and Balderas v. Dolgencorp LLC, 17-00832-CV-W-GAF, are not parties to the pending Motions.

[2] Also before the Court is Defendants' Motion to Strike Declaration of Rodrigo R. De Llano. (Doc. # 185). Plaintiffs oppose that motion. (Doc. # 190). For the reasons stated in Defendants' briefing, (Docs. ## 186, 198), Defendants' Motion to Strike is GRANTED and Exhibit 86 (Doc. # 174-36) is STRICKEN. Also before the Court is Plaintiffs' Motion to Strike Exhibits 57, 58, and 96 to Defendants' Class Certification Opposition. (Doc. # 196). Defendants oppose that motion. (Doc. # 200). For the reasons provided in Plaintiffs' briefing (Docs. ## 197, 201), Plaintiffs' Motion to Strike is GRANTED in part, DENIED in part. Exhibit 57 (Doc. # 184-43) and Exhibit 58 (Doc. # 184-44) are STRICKEN.

1

<u>**DISCUSSION**</u>

## I.   BACKGROUND

The Court previously provided pertinent discussion in a prior order.  *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, MDL No. 2709, Master Case No. 16-02709-MD-W-GAF, 2017 WL 3863866, at *1-2 (W.D. Mo. Aug. 3, 2017).  The Court incorporates that discussion and will repeat certain information previously provided to the extent it is relevant to the current motion.

In late 2010, Dollar General transitioned Unilab 10W-40 and Unilab SAE 30 to its DG Auto brand.  (Doc. # 174-12, pp. 8-10).  At least as far back as 1998, Defendants sold these motor oils under the Unilab brand.  (Doc. # 216-22, 70:4-72:16).  For the Unilab 10W-40 motor oil, which was SF grade, the recommended use "for model years 1988 and earlier" was displayed on the front label.  (Doc. # 174-6).  The Unilab SAE 30 motor oil label, which was SA grade, provided: "For older model automobiles requiring 'SA' specifications."  (Doc. # 174-7).  The motor oil itself, the vendors who sold the product, and the price remained the same after the transition.  (Docs. ## 174-11, p. 9; 217-9, 141:1-19).  The labels of these motor oils changed to conform with internal brand guidelines to have uniformity across Dollar General DG brand products.  (*Id*.).

Plaintiffs assert that the decision to rebrand the Unilab motor oil to DG Auto motor oil was to maximize its profit margins by offering a cheaper alternative to name-brand motor oils.  (Doc. # 217, pp. 2-3).  Defendants counter that assertion by stating DG Auto motor oils were not intended to be comparable to name brands, but rather to "keep a healthy assortment of conventional oils." (Docs. ## 216, pp. 5-6; 184-49, p. 25; 216-25, p. 1).  In 2015, Defendants expanded its DG Auto brand to include a 10W-30 motor oil, which was also SF grade.  (Docs. ## 174-12, pp. 8-10; 174-15.  From September 2010 until December 31, 2015, DG Auto 10W-40 and SAE 30 were sold in

2

all Dollar General stores. (Doc. # 174-12, pp. 9-10). From March 2015 until December 31, 2015, DG 10W-30 was sold along with the 10W-40 and SAE 30. (*Id.*). DG Auto motor oil was always priced lower than the name-brand products sold by Defendant. (Docs. ## 174-4, 163:18-164:3, 231:17-22; 174-20175-14, 38:3-4; 175-15). Defendants assert that its DG Auto motor oil was considered to be "opening price point products" when compared to name-brand motor oils offered at higher price points. (Doc # 216-22, 163:2-164:3).

Defendants' "Brand & Packaging Guidelines" governed labeling of its DG store-brand products. (*See* Docs. ## 175-2; 175-12). These guidelines provide that DG Auto Brand packaging "should communicate reliability and performance in the context of the auto category. (Doc. # 175-2, p. 5). Throughout the relevant time period, the front label of all three motor oils contained the words "DG Auto," a checkered auto racing flag, the specified viscosity, and the words "Motor Oil." (Docs. ## 174-13; 174-14; 175-16; 175-17). Additionally, the 10W-40 and 10W-30 labels displayed the phrase "lubricates and protects your engine." (Docs. ## 174-14, p. 2; 174-21). Defendants' branding and packaging guidelines provided that the font on the front of DG Auto products to be "simple and readable" to enable "ease of reading at great distances." (Doc. # 175-2, p. 14). A smaller secondary font was used on the back of the labels to display the "net weight, warnings and other legal copy." (*Id.* at p. 15). Defendants also provided suitability language indicating the limited use of the obsolete oil. (Docs. ## 174-13, pp. 3, 5; 174-14, p. 5; 174-21; 175-16, p. 3; 175-17). While the suitability language changed at least 14 times throughout the relevant period (*See* Doc. # 216-39), Plaintiffs assert that no iterations of the language appropriately disclosed the quality and risks of the obsolete motor oil. (Doc. # 217, p. 6 n. 6). Defendants do not dispute the factual description of their labeling practices but emphasize that these actions conformed to regulatory guidelines and industry practice. (Doc. # 216, pp. 8-9).

3

The parties advance divergent narratives regarding the in-store display of these three motor oils. Plaintiffs identify interrogatories in which Defendants stated they sold all three motor oils in its stores during the same general time frame. (Doc. # 174-12, pp. 8-10). Defendants also stated that motor oil offered in each store was the same. (*Id*. at pp. 16-17). Plaintiffs identify planograms, which Defendants used to plot their motor-oil displays, to show that Defendants placed its obsolete motor oil on shelves beside name-brand, non-obsolete motor oil products. (Docs. ## 174-16; 175-9; 175-10, 88:23-89:4). Defendants cite to other planograms to show that the motor oils had different displays throughout the relevant time period. (Docs. ## 184-54; 184-55; 184:56). Defendants also state that the introduction of their 10W-30 motor oil altered the configuration of its motor oil displays. (Docs. ## 174-16; 184-53).

Dr. Carol Scott prepared an expert report in support of Plaintiffs' motion that conducted a consumer survey to determine if reasonable customers would be misled by the labeling and display of the at-issue motor oils. (Doc. # 174-23, pp. 3-5). In her report, Dr. Scott concluded that reasonable consumers were likely to be misled as to the suitability of obsolete DG Auto motor oils for use in modern automobiles. (*Id*. at 21). Specifically, Dr. Scott stated that consumers who only read the front of the label would have a high likelihood of being misled. (*Id*. at 3). Additionally, Dr. Scott opined that most consumers only evaluate suitability of motor oils based on viscosity of the motor oil. (*Id*. at 3-4). Lastly, Dr. Scott concluded that very few consumers are likely to read the back of a label, and that even if a consumer were to read the back of the label, he or she would likely be misled due to the insufficiency of the cautionary language. (*Id*. at 15-18).

Dollar General's business model is to provide its customers with basic everyday needs at everyday low prices in conveniently located, small stores. (Docs. ## 174-19, pp. 77-78; 174-4, 289:11-14). Dollar General's target customers are "consumers who seek everyday products at low

4

prices in convenient neighborhood locations" and "do not differ substantially among stores." (Doc. # 174-12, p. 27). As such, Plaintiffs claim that Defendants' decision to sell the at-issue motor oil was motivated to provide products that would appeal to their target consumer, without regard for the fact that the oil was obsolete. (Docs. ## 217, pp. 8-9; 174-4, 163:2-164:16; 175-19, 35:3-17). Defendants assert that they knew that there were a substantial number of target consumers that drove an older vehicle, thus creating the market for SF grade motor oils on vehicles manufactured before 1988. (Docs. ## 216-26; 216-38).

During the relevant timeframe, vendors of Dollar General informed them about the obsolete nature of the motor oils they were selling. (Docs. ## 174-8; 175-26; 175-27; 175-28; 175-29). At least three communications cited by Plaintiffs show that vendors informed Defendants that no other major retailer used SF grade motor oil. (Docs. ## 175-29; 175-30; 175-31). Defendants do not dispute that they were aware that they were selling obsolete motor oil, but rather emphasize that they knew that legitimate markets existed for these motor oils.[3] (Doc. # 216, pp. 10-14). Throughout the relevant period, marketing research provided to Defendants showed a trend that consumers tended to keep their cars longer, up to 11 or 12 years. (Docs. ## 175-22; 175-23, p. 19; 175-24, p. 27; 175-25, p. 17)

In mid-September 2015, Defendants' buying team noted that updating DG Auto motor oil from API SF to API SN had been discussed in previous strategy meetings. (Doc. # 184-49, pp. 11-12). As part of the business review, Defendants decided to update their API SF motor oil to API

---

[3] These legitimate uses included use on post-1988 vehicles that recommended SF oil; use on pre-1988 vehicles; using the oil for "top-offs"; and use on non-vehicles, such as lawn maintenance equipment and marine vehicles. (Doc. # 216, pp. 10-14). The Court notes that the Defendants must support their defenses to certification, which are "subject[] to the same rigorous inquiry as [P]laintiff's claims." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011). As such, the Court will evaluate the adequacy of support for these defenses when analyzing Defendants' arguments against certification.

SN between approximately October 2015 and late February 2016. (*Id.*). API SN grade motor oils are recommended for use in post-1988 car engines. (Doc. # 184-32, p. 25). The new API SN DG Auto motor oil began to be distributed to Dollar General stores in April and May 2016. (Doc. # 184-49, pp. 11-12). Subsequently, the API SN motor oil took the place of the previous API SF and API SA grade motor oils in automotive sections. (*Id.*). The SF and SA motor oils were reduced in price and moved to a separate location in the lawn and garden section. (Docs. ## 175-46; 175-47). The SF and SA motor oils were sold in stores along with SN motor oils until the inventory was emptied, which varied store-by-store. (*See* Doc. # 175-40).

Before the switch to the SN motor oil, Defendants sold millions of quarts of obsolete motor oil worth approximately $156 million. (Docs. ## 175-40; 175-41). DG Auto motor oil consistently outsold name-brand motor oils and was typically among Defendant's top 200 selling products. (Docs. ## 175-9, pp. 18-20; 175-42; 175-43; 175-44; 175-47; 175-48, p. 3). Even after updating the DG Auto motor oils, Defendants anticipated the same volume of sales for its new SN motor oils as it did for the obsolete motor oil. (Doc. # 175-33).

Plaintiffs bring this action as individuals of two nationwide classes and seventeen state-specific subclasses. (Doc. # 44, ¶ 4). Plaintiffs' basic contention that underlies all of their claims is that consumers were deceived by the labeling and placement of 10W-40, 10W-30, and SAE 30 DG Auto Oil. Stated differently, but for the Defendants' deceptive labeling and product placement practices, consumers would not have knowingly purchased obsolete motor oil. As such, Plaintiffs seek to recover damages under the following theories: 1) unjust enrichment; 2) breach of the implied

Case 4:16-md-02709-GAF   Document 228   Filed 03/21/19   Page 6 of 62

warranties of merchantability and fitness for a particular purpose; and 3) state consumer protection statues.  (Doc. # 44, ¶ 6).[4]

## II.    CHOICE OF LAW

Plaintiffs seek to certify two nationwide classes: 1) unjust enrichment; and 2) breach of implied warranties.  (Doc. # 174, p. 1).  "Rule 23 'makes no reference to choice-of-law issues, but, in nationwide class actions, choice-of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case."  *True v. ConAgra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 WL 176037, at*6 (W.D. Mo. Jan. 4, 2011) (quoting *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005)).  As such, "an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." *In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*, 425 F.3d 1116, 1120 (8th Cir. 2005).

When considering issues of state law in an MDL context "the transferee court must apply the state law that would have been applied had the cases not been transferred for consolidation.  *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004).[5]  There are many

---

[4] The Court has previously listed the two nationwide classes and state-specific subclasses.  *See In re: Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at * 2-3.  Since the Court's previous Order, Plaintiffs no longer seek certification of state-specific classes for the Arkansas Class (Wait Class–16-00517-CV-W-GAF) and the Vermont Class (Hill Class – 16-00534-CV-W-GAF; Horgan Class – 17-00584-CV-W-GAF).

[5] The following cases, denoted by the named Plaintiff associated with the transferor case, were transferred to this proceeding and are pending at the time of this Motion: Robert Oren, 16-00105-CV-W-GAF (Missouri); Nicholas Meyer, 16-00522-CV-W-GAF (Kansas); Janine Harvey, 16-00528-CV-W-GAF (Nebraska); John Foppe, 16-00523-CV-W-GAF (Kentucky); William Flinn, 16-00529-CV-W-GAF (New Jersey); Bradford Barfoot, 16-00520-CV-W-GAF (Florida); Bruce Gooel, 16-00525-CV-W-GAF (Michigan); Miriam Fruhling, 16-00531-CV-W-GAF (Ohio); Scott Sheehy, 16-00526-CV-W-GAF (Minnesota); Kevin Gadson, 16-00530-CV-W-GAF (New York); Roberto Vega, 16-00105-CV-W-GAF (California); Allen Brown, 16-00519-CV-W-GAF (Colorado); John J. McCormick, III, 16-00524-CV-W-GAF (Maryland); Gerardo Solis, 16-00521-

choice-of-law issues present in this case. First, there are different choice-of-law principles applied by the transferor forums. These approaches are: The Restatement (Second) of the Law–Conflict of Laws ("Restatement") approach; the "governmental interest" approach; the *lex loci contractus* approach; the Leflar's factors approach; and the "significant contacts" test. Further, the nature of the claims Plaintiffs seek to bring on a nationwide basis, unjust enrichment and breach of implied warranties, are not *per se* subject to the same choice-of-law approach. Therefore, before the Court can analyze Plaintiffs' Motion for Class Certification, it must analyze the potential choice-of-law issues as they relate to the two proposed nationwide classes.

## A.    Potential Unjust Enrichment Class

1.        Do the Potentially Applicable Laws Conflict?

Preliminarily, to determine if a thorough choice-of-law analysis is necessary, the Court shall examine the potentially applicable unjust enrichment laws to determine if they conflict with one another. *See Phillips v. Marist Soc. of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996) ("'[B]efore

---

CV-W-GAF (Illinois); James Taschner, 16-00606-CV-W-GAF (Missouri); Jason Wood, 16-00607-CV-W-GAF (New York); Roger Barrows, 16-00607-CV-W-GAF (New York); Brandon Raab, 16-00868-CV-W-GAF (North Carolina); Seit Alla, 17-00413-CV-W-GAF (Wisconsin).

Additionally, the following cases, denoted by the named Plaintiff associated with the transferor case, were transferred to the Court, but have since been dismissed: Matthew Wait, 16-00517-CV-W-GAF (Arkansas) (Docs. ## 51, 226); Will Sisemore, 16-00532-CV-W-GAF (Oklahoma) (Docs. ## 57, 79); Howard Horgan, 17-00584-CV-W-GAF (Vermont) (Docs. ## 109, 110); Chuck Hill, 16-00534-CV-W-GAF (Vermont) (Docs. ## 50, 225). Leonard Karpeichick, a named plaintiff in 16-00520-CV-W-GAF (Florida), voluntarily dismissed his claims. (Docs. ## 52, 227).

In Texas, Milton M. Cooke Jr.'s (16-0533-CV-W-GAF (Texas)) case was voluntarily dismissed. (Docs. ## 49, 224). Michael Deck, another Texas plaintiff, was terminated from the case on March 3, 2016. (*See* Docket Sheet). Plaintiffs now name Robin Preas as representative of the Texas case. (Doc. # 174-32, p. 7). However, there has been no action taken by Plaintiffs to substitute Preas as a Plaintiff in the Texas member case. (*See* Docket Sheet). As such, there is currently no pending member case that could be remanded to Texas. Because there is no member case that can be remanded to Texas, no statewide class can be certified for that state and Texas' choice of law approach need not be considered by the Court.

entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there is a difference between the relevant laws of the different states.'") (quoting *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 196 (7th Cir. 1992)).  If no conflict exists between the potentially applicable laws, a single set of laws from one state may be applied to the entire class's claims so long as that state has "'a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *In re St. Jude*, 425 F.3d at 1120 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)).

First, there are material differences in the various applicable states' unjust enrichment laws. *See In re Digitek Prods. Liab. Litig.*, No. 2:08-md-01968, 2010 WL 2102330, at *8-9 (S.D.W.V. May 25, 2010) (concluding that conflict exists between states' unjust enrichment laws); *In re Sears, Roebuck & Co. Tools Mktg & Sales Practices Litig.*, Nos. 05-C-4742, 05-C-2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006) ("[U]njust enrichment is a tricky type of claim that can have varying interpretations even by courts within the state, let alone amongst the fifty states."). The differences include "whether a wrongful act is required on the part of the party unjustly enriched, whether the enrichment must have come directly from the plaintiff to the defendant, and whether an unjust enrichment claim can survive if the plaintiff has an adequate remedy at law." *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 422 (E.D. Ark. 2010); *see Thompson v. Bayer Corp.*, No. 4:07-CV-00017-JMM, 2009 WL 362982, at *6 (E.D. Ark. Feb. 12, 2009) (collecting cases of states that do not allow unjust enrichment claims to survive if there is an adequate remedy at law).  Further, "[t]he actual definition of 'unjust enrichment' varies from state to state." *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003) (quoting *Clay v. The Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999)).  "Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty of fraud." *Id*.  Variances also exist between the

statutes of limitation of the states' unjust enrichment laws and when the statutes of limitation begin to accrue. *See In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 164-65 (E.D. Pa. 2015) (collecting cases to illustrate the differences in statutes of limitations to unjust enrichment claims). Because of these variances, there are material differences in the unjust enrichment laws of the states. As such, the Court must engage in a choice-of-law analysis to determine what unjust enrichment law, or laws, apply to the Plaintiffs' unjust enrichment claims.

2.      What Law or Laws Should Apply?

As previously noted, several different choice-of-law approaches are applicable in this case. Each of these different approaches is discussed in turn.

a.      *Restatement Approach*

"The most significant relationship" test laid out in the Restatement (Second) of Conflict of Laws ("Restatement") is followed by Colorado, Illinois, Kansas, Kentucky, Missouri, Nebraska, New Jersey, Ohio, and Wisconsin.[6]

For claims of unjust enrichment, the Restatement provides that the laws of the state that "has the most significant relationship to the occurrence and the parties" apply. Restatement (Second) of Conflict of Laws § 221(1) (Am. Law Inst. 1971). Contacts to be considered by a court when making this determination include:

> (a) the place where the relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,

---

[6] *See, e.g.*, *Galena St Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2013 WL 2114372, at *6 (D. Colo. May 15, 2013); *Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002 WL 22014, at *3 (N.D. Ill. Jan. 7, 2002); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, No. 89-2181-V, 1992 WL 193661, at *7 (D. Kan. July 15, 1992); *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977); *Flynn v. CTB, Inc.*, No. 1:12-CV-68 SNLJ, 2013 WL 28244, at *6 (E.D. Mo. Jan. 2, 2013); *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006) (Nebraska law); *P.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008); *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288-89 (Ohio 1984); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1077 (E.D. Wisc. 2008).

(b) the place where the benefit or enrichment was received,
(c) the place where the act conferring the benefit or enrichment was done,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(e) the place where the physical thing . . . which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) of Conflict of Laws § 222(2).  Additionally, the Restatement provides the following factors that are relevant to the choice of law:

(a) the needs of interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).

In this case, the place where the relationship between the parties was centered was the location of the purchases of the at-issue motor oil.  The place where the enrichment was received was also the location of the purchases.  Additionally, the place where the act conferring the benefit, which was the payment of the motor oil, was the location of the purchases.  Further, the physical thing substantially related to the enrichment, the motor oil, was situated at the location of the purchases at the time of the enrichment.  The only factor that does not support the selection of the law of the states where the purchases occurred is that Defendants are incorporated under the laws of either Tennessee or Kentucky and headquartered in Tennessee.  (Doc. # 216, p. 72).  The Restatement emphasizes "[t]he place where a relationship between the parties was centered . . . is the contact that, as to most issues, is given the greatest weight in determining the state of applicable law."  Restatement (Second) of Conflict of Laws § 221 cmt. d.  As such, four of the five factors

11

from § 221(2), including the factor often given the most weight, weigh in favor of selecting the law of the state where the transactions occurred.

The § 6 factors also support the conclusion that the laws of the state of the purchases should apply to the unjust enrichment claims. Applying the state-of-purchase law would protect a consumer's justified expectations that the law where the item was purchased would govern and not the law of a different state. *See Tyler*, 265 F.R.D. at 426 ("A person who enters into a consumer transaction in his home state may reasonably expect any issues arising from the transaction to be governed by the laws of his home state."). Further, states have an interest in ensuring that entities do not receive an unjust benefit from a contract entered and executed within its borders. Additionally, general principals of contract and quasi-contract provide the law of the place where the contract was formed should apply to issues regarding formation of the contract, *i.e.*, one party was unjustly enriched from a transaction. Applying these principles, taking into consideration the specific factors from § 221(2), the Court concludes the laws of the states where the transactions occurred would apply to the Plaintiffs' unjust enrichment claims pursuant to the Restatement approach. Thus, in a proposed nationwide unjust enrichment class, the unjust enrichment claims arising in Colorado, Illinois, Kansas, Kentucky, Missouri, Nebraska, New Jersey, Ohio, and Wisconsin are subject to the laws of state where the transactions occurred.

> b.   Lex loci Contractus *Approach*

Florida, Maryland, and Michigan apply the *lex loci contractus* approach to claims of unjust enrichment. *See, e.g.*, *In re NationsRent Rental Fee Litig.*, No. 06-60924-CIV, 2009 WL 636188, at *10 (S.D. Fla. Feb. 24, 2009); *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 790 A.2d 720, 728-29 (Md. Ct. Spec. App. 2002); *Chrysler Corp. v. Skyline Indus. Servs.*, 528 N.W.2d 698, 703 n.28 (Mich. 1995). The *lex loci contractus* approach typically leads to the law of the place of

contracting governing a legal dispute. *Id.* "Under the *lex loci* principle, a contract is considered to be made where the last act necessary for formation of a binding contract is performed." *Baker v. Sun Co., Inc. (R & M)*, 985 F. Supp. 609, 611 (D. Md. 1997) (internal quotations omitted).

In this instance, the place of contracting, as stated above, was the location of the purchases of the motor oil. The last act necessary for the formation of a binding contract was the tendering of the purchase price. These acts occurred in the locations where the motor oil was purchased. Therefore, under the *lex loci contractus* approach, the laws of the states where the purchases occurred will apply to the claims of unjust enrichment from Florida, Maryland, and Michigan forums.

### c.    *Governmental Interest Test*

California adheres to the "governmental interest" test when engaging in choice-of-law analysis. *Keilholtz v. Lennox Health Products*, 268 F.R.D. 330, 340 (N.D. Cal 2010). The California Supreme Court explains the test as follows:

> The governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006).

First, the Court found above that the laws of the potentially affected jurisdictions are different. Second, examining the interests that underlie these laws, "[i]t is a principle of federalism that 'each State may make its own reasoned judgment about what conduct is permitted or proscribed

13

within its borders." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). Further "every state has an interest in having its law applied to its residents." *Zisner v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). Conversely, "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory." *Mazza*, 666 F.3d at 592 (citing *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 530-31 (Cal. 2010)). Contrasting aspects of states' unjust enrichment laws, such as the differing lengths of statutes of limitation, the level of misconduct a plaintiff must show, and preclusion of the cause of action if an adequate remedy at law exists, are all examples of states making choices to reflect their respective interests in protecting its consumers or, conversely, the businesses that operate within its borders. As such, a true conflict exists between states' unjust enrichment laws. Lastly, these interests illustrate that each state would be impaired if its own unjust enrichment law were not applied to claims from consumers for actions that occurred with each respective state. *See Mazza*, 666 .3d at 593. Therefore, the Court concludes that, under the "governmental interest" test, the law of the states where the purchases occurred will govern the Plaintiffs' unjust enrichment claims.

    d.    *Minnesota Approach*

Minnesota follows Leflar's choice-influencing analysis. *See, e.g.*, *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123-24 (8th Cir. 2012). The first step in this analysis is to determine if the potentially applicable laws conflict. *Id.* at 1123. Step two of the analysis "requires determination of whether the different states' laws constitutionally may be applied to the case at hand." *Id.* A law may be constitutionally applied to a dispute if that state has a "significant aggregation of contacts, creating state interests . . . such that choice of its law is neither arbitrary nor fundamentally unfair." *Hague*, 449 U.S. at 312-13. "The third step requires application of a multifactored test,

14

considering the: '(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.'" *Whitney*, 700 F.3d at 1124 (quoting *Jepson v. Gen. Casualty Co. of Wisc.*, 513 N.W.2d 467, 470 (Minn. 1994)).

Applying the multi-step approach, the Court has decided above that the potentially applicable unjust enrichment laws do conflict. The second factor of the analysis supports a conclusion that the laws of the various states could be applied to Defendants. The Defendants conducted business in each state by placing stores there and selling their products to consumers of each state. Further, there is nothing unfair about a state enforcing its laws on a commercial seller conducting business within its borders. *See Hague*, 449 U.S. at 317 (explaining that a corporate defendant that was licensed to operate within a state, meaning it must have known that it could be sued in that state under the laws of that state). However, there is likely not a significant aggregation of contacts between states and consumers of other states in this instance. While it is natural for a state to have a significant interest in applying its laws to its own citizen consumers, its interests become attenuated when applying its laws to out-of-state consumers. Further, it would be unfair to Plaintiffs to have one state's unjust enrichment laws apply to their claims, especially given the material differences in unjust enrichment laws throughout the country. As such, no one state law could be applied to every plaintiff. Conversely, each individual state law can be applied to Defendants for the reasons discussed above. Because the Court is unable to select an individual law to govern the Plaintiffs' claims, there is no need to conduct the third step in the analysis. Therefore, the unjust enrichment laws of states where the transactions occurred will govern Plaintiffs' unjust enrichment claims pursuant to Minnesota's choice-of-law analysis. As such, the claims arising in Minnesota are governed by the laws of the states where the transactions occurred.

e.      *Significant Contacts Approach*

New York applies the "significant contacts" test to choice-of-law issues related to contractual and quasi-contractual disputes, such as unjust enrichment. *See Innovative BioDefense, Inc. v. VSP Tech., Inc.*, No. 12 Civ. 3710(ER), 2013 WL 3389008, at *5-6 (S.D.N.Y. July 3, 2013). North Carolina also applies a "significant contacts" analysis. *Boudreau v. Baughman*, 368 S.E.2d 849, 855 (N.C. 1988). "The significant contracts test focuses on the following five factors: '(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile or place of business of the contracting parties.'" *Innovative BioDefense*, 2013 WL 3389008, at *6 (quoting *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008)). These factors are similar to § 221 of the Restatement and identical to § 188(2), the section of the restatement that applies to choice-of-law questions involving contracts. *Compare id. with* §§ 188(2), 221.

The first four factors of this approach all point to the application of the laws of the state where the motor oil was purchased. The fifth factor, similarly to the Restatement approach, does partially point to the laws of Kentucky and Tennessee applying, as that is the domicile and principle place of business of Defendants. However, the first and third factors weigh heavily in the choice-of-law determination. *See Innovative BioDefense, Inc.* 2013 WL 3389008, at *6. These factors illustrate that the states where the motor oil was purchased possess much more significant contacts to the claims of unjust enrichment that do Tennessee or Kentucky. Similar to the considerations already discussed, states certainly have significant contacts with consumer claims that arise pursuant to transactions conducted within their borders. Therefore, the laws of the states where the motor oil was purchased will govern the Plaintiffs' unjust enrichment claims pursuant to New York and North Carolina's "significant contacts" analysis.

16

3.      Summary

While there are differing approaches to the choice-of-law issue of what law should apply to Plaintiffs' unjust enrichment claims, all analyses lead to the conclusion that the law of the state where the motor oil was purchased applying to the unjust enrichment class. The states where the purchase occurred have the most significant contacts and interests to applying its laws to these claims. Further, these states are locations of the at-issue transactions where the alleged unjust enrichment occurred. The Court will consider the application of the various state unjust enrichment laws when applying the Rule 23(a) and Rule 23(b)(3) factors to Plaintiffs' motion for class certification.

**B.      Implied Warranties Class**

Choice-of-law issues must be conducted on an issue-by-issue basis. *In re St. Jude Med.*, 425 F.3d at 1120. As such, the Court must also conduct choice-of-law analyses of the Plaintiffs' proposed multistate class containing claims of breach of the implied warranties of merchantability and fitness for a particular purpose.

Plaintiffs propose a nationwide class for the breach of implied warranties with Tennessee law applying to all claims. (Doc. # 217, pp. 35-39). Plaintiffs assert that all applicable choice-of-law frameworks lead to Tennessee law governing this nationwide class. (*Id*.). Plaintiffs assert that "the law of the state where the defendant is located and conducts business, where the defendant drafts its contracts, and where the relevant bad acts occurred, carries significant weight. (*Id*. at p. 37). Plaintiffs state that the principal place of business of Defendants is where the decisions were made to sell the disputed motor oil, where it controlled the specifications of the motor oil, contracted with vendors, and implemented the branding and packaging guidelines for the motor oil labels. (*Id*. at 38). Plaintiffs advance a "hub-and-spokes" theory, which claims that the headquarters of

17

Defendants were the center-point linking the class' claims together. (*Id*.). This central link, Plaintiffs assert, provides the strongest interest to Tennessee in applying its law to the entire class' claims. (*Id*.).

Defendants counter that no Plaintiff sued in Tennessee and that no Tennessee court could serve as a transferor court to remand this case for trial. (Doc. # 216, p. 88). Defendants also assert arguments specific to each choice-of-law analysis that applies to the claims for breaches of implied warranties. (*Id*. at p. 88-91). Defendants also urge the Court to reject the "hub-and-spokes" theory because the motor oil was not manufactured in Tennessee; the cases relied on by Plaintiffs originate from choice-of-law theories inapplicable to the current case; and other cases used by Plaintiffs to support their claim were suits against manufacturers rather than retailers. (*Id*. at 91-93).

1.     Do the Laws Conflict?

As with the analysis for the unjust enrichment claims, the first step is to analyze the potentially applicable laws to determine if there is an actual conflict between them. In a previous order in this case, the Court expressed concern over Plaintiffs' assertion that no conflict exists between the implied warranties laws of the states. *In re Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at *6. The Court further directed the Plaintiffs to provide "a clear analysis of why Tennessee law controls the adjudication for claims for a nationwide class of persons at the class certification state." *Id*. In their brief in support of class certification, Plaintiffs assert that under every potentially applicable choice-of-law standard, Tennessee's laws should govern the breach-of-implied-warranties class. (Doc. # 217, pp. 35-39). Plaintiffs do not address the first requirement of a conflicts analysis; whether the potentially applicable implied warranties laws conflict. (*Id*.). As was analyzed with the unjust enrichment class, the Court must first determine if the potentially applicable breach of warranty laws actually conflict. *See Phillips*, 80 F.3d at 276.

18

Plaintiffs' briefing in support of a nationwide breach-of-implied-warranties class does not address the Court's directive to show, in the choice-of-law context, that there are not material differences between the different implied warranty laws of each state. (*See* Doc. # 217, pp. 35-39). Rather, Plaintiffs focus their choice-of-law analysis on the subsequent application of the various choice-of-law approaches. As such, the Court assumes that the parties agree that the implied warranty laws of each state actually conflict. Therefore, the Court must engage in choice of law analyses to determine what law, or laws, apply to the claims within the proposed nationwide breach-of-implied-warranty class.

2.     Which Law or Laws Should Apply?

As previously noted, several different choice-of-law approaches are applicable in this case. Each of these different approaches is discussed in turn.

a.     *Restatement (Second) Approach*

The following states have adopted the Restatement § 188 with respect to conflicts of law arising in contract: Colorado, Illinois, Kentucky, Missouri, Nebraska, New Jersey, Ohio, and Wisconsin.[7] Restatement § 188(1) provides that the laws of the state that "has the most significant relationship to the transaction and the parties" apply. Restatement (Second) of Conflict of Laws § 188(1). Contracts to be considered by a court when making this determination include:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and

---

[7] *See, e.g.*, *Woods Bros. Homes, Inc. v. Walker Adjustment Bur.*, 601 P.2d 1369, 1372 (Colo. 1979); *Champagnie v. W.E. O'Neil Constr. Co.*, 395 N.E.2d 990, 996-97 (Ill. App. Ct. 1979); *Lewis*, 555 S.W.2d at 581-82; *Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo. Ct. App. 1978); *Powell v. Am. Charter Fed. Sav. & Loan Ass'n*, 514 N.W.2d 326, 331-32 (Neb. 1994); *Camp Jaycee*, 962 A.2d at 459-60; *Gries Sports Enter., Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984); *Haines v. Mid-Century Ins. Co.*, 177 N.W.2d 328, 330 (Wis. 1970).

19

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2). Additionally, the Restatement § 6 factors are also considered in selecting the applicable law. *Id.*

Similar to the Restatement analysis under § 221(2), the first four factors all weigh in favor of applying the law of the state where the purchases occurred. Plaintiffs urge the Court to weigh the fifth factor to the degree that it is more significant than the first four factors weighing in another direction. (Doc. # 217, pp. 35-39). However, Plaintiffs overlook a directive from the Restatement that

> [t]he validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined . . . by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless . . . some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties . . . .

Restatement (Second) of Conflict of Laws § 191. Plaintiffs assert that Tennessee has a more significant relationship than the states where the motor oil was purchased. (Doc. # 217, pp.-35-37). However, as discussed above, the § 6 factors support the conclusion that the states of purchase have a more significant interest in applying their laws rather than the laws of Tennessee.

The Court agrees with Defendants that Plaintiffs' reliance on *Cuesta v. Ford Motor Co.*, 209 P.3d 278 (Okla. 2009), *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170 (D. Mass. 2010), and *Payne v. Fujifilm, U.S.A., Inc.*, No. 07-385(JAG), 2007 WL 4591281 (D.N.J. Dec. 28, 2007), to support a claim that the Court should adopt its "hub-and-spokes" theory is unpersuasive. First, *Cuesta* and *Watkins* are cases from Oklahoma and Massachusetts, respectively, which are not cases from a transferor court in this case. This means that the Court is not bound to apply the choice of law principles discussed in either decision. *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law . . . the

20

transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Second, the district court in *Payne* did not conduct a choice of law analysis. *Payne*, 2007 WL 4591281, at *8-9. Lastly, Restatement § 191, Comment f, which was relied on by the court in *Cuesta*, explains that a state other than the state of delivery of the chattel would be more likely to be applied when the contract "contemplates a continued relationship between the parties" or "the contract would be invalid under the local law of the state of delivery but valid under the local law of a state with a close relation to the transaction and the parties." Restatement (Second) Conflicts of Law, § 191, cmt. f. Neither of those rationales is present in the case at hand and does not negate the interest that states have in protecting its consumers and regulating businesses who do business within their borders. As such, the Court rejects Plaintiffs' proposed "hub-and-spokes" theory and emphasizes the above discussion of the § 6 factors to conclude that the law of the state where the motor oil was purchased will apply to the breach of implied warranties class. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("If recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where seller maintains its headquarters.") (emphasis in original); *True*, 2011 WL 176037, *7 ("[A]ny injury would have occurred outside of [the manufacturing location], the parties' relationship would be centered where the purchase and consumption occurred, and the non-forum states would each have their own significant interest in protecting their residents.").

  b.    *Other Choice-of-law Analyses*

  Similar to their treatment of unjust enrichment claims, Florida, Maryland, and Michigan follow the *lex loci contractus* approach to choice-of-law issues arising in contractual disputes, along with Kansas. *See, e.g.*, *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1164 (Fla. 2006);

Case 4:16-md-02709-GAF   Document 228   Filed 03/21/19   Page 21 of 62

*Erie Ins. Exch. v. Hefferman*, 925 A.2d 636, 648 (Md. 2006); *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d at 701 n.14; *Brenner v. Oppenheimer*, 44 P.3d 364, 374 (Kan. 2002). New York and North Carolina follow the "significant contacts" approach. *In re Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 939 (N.Y. 1993); *Boudreau*, 368 S.E.2d at 854-55. Minnesota also follows Leflar's factors in contracts choice-of-law analyses. *Whitney*, 700 F.3d at 1123-24. Lastly, California follows the "governmental interest" approach to choice-of-law issues within the realm of contracts. *Keilholtz*, 268 F.R.D. at 340. These analyses, as set forth above, all support the conclusion that the state laws where the motor oil was purchased will govern the breach-of-implied-warranties class. The Court will consider the applicability of the different breach of implied warranties laws when determining if Plaintiffs' proposed nationwide class satisfies Rule 23(a) and Rule 23(b)(3).

## C.      Interpretation of Rule 23

"If . . . there is a change in venue under 28 U.S.C. § 1404(a), a federal court sitting in diversity is obliged to apply the law that would have been applied in the transferor court." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 935 (D. Minn. 2007) (citation omitted). "In the MDL setting, the forum state is usually the state in which the action was initially filed before it was transferred to the court presiding over the MDL proceedings." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 140 (E.D. La. 2002). "When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law." *In re Gen. Am. Life Ins. Co.*, 391 F.3d at 911. Rule 23 was promulgated by the Supreme Court pursuant to 28 U.S.C. § 2072, making it federal law. Thus, the Court will apply the Eighth Circuit's interpretation of Rule 23 when determining if Plaintiffs have satisfied Rule 23's class-certification requirements and not the interpretations of the transferor

circuits. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) ("Applying divergent interpretations of the governing federal law to plaintiffs, depending solely on where they initially filed suit, would surely reduce the efficiencies achievable through consolidated preparatory proceedings."); *see also In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 105 n. 8 (D.D. Cal. 2007) (rejecting an argument to apply multiple Rule 23 standards because "the reduction in efficiency of forcing a court to apply divergent interpretations of governing federal law and the logical inconsistency of requiring one judge to apply simultaneously different and conflicting interpretations of what is supposed to be a unitary federal law").

## III.    RULE 23 ANALYSIS

"Federal Rule of Civil Procedure 23(a) 'sets out four threshold requirements that must be met before a plaintiff may file a lawsuit on behalf of a class of persons.  Once those prerequisites have been met, the plaintiff must also establish that the class fits within one of three types of class actions listed in Rule 23(b).'" *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) (quoting *Avritt, v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)).  The plaintiff has the burden of proving that his or her case is appropriate for class certification under Rule 23.  *Blades v. Monsanto*, 400 F.3d 562, 569 (8th Cir. 2005).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  "[S]ometimes it may be necessary for a court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

certification stage." *Amgen Inc. v. Conn. Ret Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## A.  Initial Considerations

1.  Standing

Plaintiffs propose the following definition for a nationwide unjust enrichment class:

> All persons in the United States who, at any time since May 2013, purchased DG Auto SAE 10W-30 motor oil and/or DG SAE 10W-40 motor oil for use in vehicles manufactured after 1988 and/or DG Auto SAE 30 motor oil, for use in vehicles manufactured after 1930.

(Doc. # 174-32, p. 2). Plaintiffs propose the following definition for a nationwide implied warranties class:

> All persons in the United States, who purchased Defendants' DG-branded motor oil, DG SAE 10-W 30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988 and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for re-sale, since February 8, 2012.

(*Id.*). The proposed statewide classes contain nearly identical language to the implied warranties class. (*See id.* at pp. 3-7).

"Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies." *In re SuperValu, Inc. Consumer Data Sec. Breach Litig.*, 870 F.3d 763, 767-68 (8th Cir. 2017) (citing *Spokeo v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016)). "A plaintiff invoking the jurisdiction of the court must demonstrate standing to sue by showing that she has suffered an injury in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by the relief she seeks." *Id.* at 768 (citing *Spokeo*, 136 S. Ct. at 1547). To establish an injury in fact, a plaintiff must show that her injury is "'concrete and particularized' and 'actual or imminent, not

24

conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"The requirements for standing do not change in the class action context . . . ." *In re. SuperValu, Inc.*, 870 F.3d at 768. "A putative class action can proceed as long as one named plaintiff has standing." *Id.* "Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court; there is no further, separate class action standing requirement." *Id.* at 773 (quoting 2 Newberg on Class Actions § 2:1 (5th ed. 2012)). However, "[a] class 'must . . . be defined in such a way that anyone within it would have standing.'" *Avritt*, 615 F.3d at 1034 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d. Cir. 2006)).

In this case, Plaintiffs assert that their injury is that they purchased an obsolete motor oil and they would not have purchased the motor oil but for Defendants' deceptive labeling and product placement practices. (Doc. # 217, pp. 6-7). The injury is concrete, particularized, and actual because the purchases of the obsolete motor oil did occur. Further, that injury is fairly traceable to the Defendants' conduct because the Plaintiffs' theory is that they would not have purchased the obsolete motor oil absent the deceptive labeling and marketing practices.

Defendants contend that the proposed classes are defined in such a way that they would contain members without standing because of the presence of state-of-mind criterion. (Doc. # 216, pp. 26-37). Defendants' arguments in support are that: 1) the motor oil was recommended for use in some purchasers' post-1988 engines; 2) some purchasers knew about the motor oil's API specification or recommended automobile use before purchase or otherwise bought the motor oil without relying on those facts; and 3) some purchasers that otherwise qualify for the class definition at the time of purchase would later use the motor oil for recommended or other appropriate uses. (*Id.* at 27). The overall thrust of these arguments misses the point of how the proposed definitions

25

that require that a potential plaintiff to purchase a given motor oil "for use" in vehicles manufactured after 1988 and/or 1930. First, Defendants' arguments regarding SF oil being recommended for post-1988 vehicles and evidentiary issues about actual reliance is better addressed in a Rule 23 analysis of commonality and predominance and not in the realm of standing. Also, when evaluating whether definitions are written a manner that a class could not contain members who lack standing, it is clear the definitions are drafted in a way that require any Plaintiff to have suffered an injury, *i.e.*, purchase of an obsolete motor oil due to deceptive labeling and product placement. This definition would exclude those who purchased the motor oil for multiple uses. Further, the injury is the *purchase* of the obsolete motor oil, meaning that any argument about a change in use is irrelevant. Plaintiffs' theory is that these consumers would not have purchased the motor oil *at all* absent the deceptive labeling and placement practices.

Defendants also assert that Plaintiffs' proposed single-state classes cannot be certified because the representative Plaintiffs lack standing to assert claims on motor oil they did not purchase. (Doc. # 216, pp. 108-109). The court rejects this argument because the alleged injuries are sufficiently similar. The physical characteristics of the different motor oils were substantially similar–10W-40, 10W-30, and SAE 30 all had the DG Auto label, the checkered racing flag, and the viscosity of the motor oil on the front, the cautionary language on the back label, and all had identical fonts. (*See* Docs. ## 174-13; 174-14, p. 3; 175-16; 175-17; 175-21). Similarly, the alleged misrepresentations are sufficiently similar because the obsolete motor oil was displayed in close proximity to name-brand oils throughout the class period in all stores, notwithstanding the slight variations in exact display. (*See* Docs. ## 174-16; 175-9; 175-10, 88:23-89:4). Because the different motor oils and alleged misrepresentations are sufficiently similar, representative plaintiffs

have standing to bring claims for motor oil they did not purchase. *See Hudock v. LG Elecs. U.S.A., Inc.*, Civil No. 16-1220 (JRT/FLN), 2017 WL 1157098, at *2 (D. Minn. Mar. 27, 2017).

The Plaintiffs have demonstrated that at least one named Plaintiff in each proposed class and subclass has Article III standing. Any additional analysis of individual standing is unnecessary. Further, the proposed class definitions are defined in such a way that they would not contain members who lack Article III standing. Defendants' arguments regarding standing are better addressed by a Rule 23 analysis and will be taken up below. Therefore, Plaintiffs have standing to bring this class action and have properly defined the class to satisfy the standing requirement.

2.    Ascertainability

In addition to the Rule 23(a) prerequisites to class certification, "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Sandusky*, 821 F.3d at 996 (quotation omitted). Ascertainability is not a separate, preliminary inquiry, but a court should include the ascertainability requirement in its rigorous Rule 23 analysis. *Id*. at 998. "A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) (citing *Sandusky*, 821 F.3d at 997-98).

Defendants assert that ascertainability is a distinct, threshold inquiry that the Court must engage in before analyzing the Rule 23 requirements. (Doc. # 216, pp. 17-18). The Eighth Circuit quote cited by Defendants to support their position provides "a dispute regarding the method for identifying class members calls for an independent *discussion* of whether a class is ascertainable." *McKeage*, 847 F.3d at 998 (emphasis added). What Defendants fail to recognize is that the ascertainability discussion in *McKeage* pertained to Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement. *See id*. (explaining that defendants argued that

27

"individual issues predominated over common issues during the highly individualized process the district court used to identify class members"). In the same opinion, the Eighth Circuit upheld the Court's finding "that the class as ultimately defined met the *requirements* of Rule 23[.]" *Id*. at 1000 (emphasis added). A separate threshold ascertainability requirement is not the law in this circuit. *Sandusky*, 821 F.3d at 998. As such, the Court will address Defendants' arguments regarding ascertainability when it analyzes the pertinent Rule 23 requirements.

**B.    Proposed Unjust Enrichment Classes**

As mentioned above, Plaintiffs propose a nationwide unjust enrichment class. Further, the Court has found that under all applicable choice of law approaches, the laws of the state where the transaction occurred would govern these claims. The Court will analyze the proposed nationwide unjust enrichment class pursuant to the requirements of Rule 23.

1.    Rule 23(a)

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(a)'s prerequisites to class certification are referred to as numerosity, commonality, typicality, and adequacy of representation. *Heldt v. Payday Fin., LLC*, 3:13-CV-03023-RAL, 2016 WL 96156, *7 (D.S.D. Jan. 8, 2016).

a.    *Rule 23(a)(1): Numerosity*

"[T]he central focus of Rule 23(a)(1) is the impracticability of joinder." *Id*. at *7. In determining the impracticability of joinder, courts may consider "the number of persons in a proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *vacated on other grounds* 487 U.S. 1229 (1988).

Numerosity is easily satisfied in the proposed nationwide unjust enrichment class. Records indicate that Defendants sold over 44 million units of the at-issue obsolete motor throughout the class period. (Doc. # 175-40). It would be impracticable to adjudicate so many potential plaintiffs individually. The size of all of the claims is small given the low-cost nature of the at-issue motor oil. Lastly, it would be very inconvenient to try potentially millions of cases individually for the same or similar set of circumstances. Therefore, the Court find that Plaintiffs have satisfied the numerosity requirement for the nationwide unjust enrichment class.

    *b.*      *Rule 23(a)(2): Commonality*

When analyzing whether there are questions of law or fact common to the class, "[e]ven a single [common] question will do." *Dukes*, 564 U.S. at 359 (alterations in original) (quotations and internal citations omitted). Commonality requires "the plaintiff to demonstrate that the class members 'have suffered the same injury,'" rather than merely "suffered a violation of the same provision of law." *Id*. at 350 (quoting *Falcon*, 457 U.S. at 157). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 522, 561 (8th Cir. 1982)).

With regard to the proposed unjust enrichment class, the Court agrees with Plaintiffs that the following questions of fact or law are common to the proposed class: (1) whether Defendants

misrepresented the safety and suitability of their DG Auto motor oil; (2) the amount of Defendants' DG Auto motor oil they sold relative to the limited number of automobiles for which these motor oils were appropriate; (3) the cost to Defendants to manufacture, distribute, market, and sell the DG branded motor oil compared to the revenue they received from the sales; (4) what profits Defendants earned on sales of their DG Auto motor oil. (Doc. # 217, pp. 21-22). Each of these common questions relate to resolution of the litigation, whether related to issues factual issues of the representations, the calculation of damages, and legal issues of whether the Defendants received a wrongful benefit from the sale of the at-issue motor oil. *See DeBoer*, 64 F.3d at 1174. Accordingly, the commonality requirement for a nationwide unjust enrichment class is met.

   c.    *Rule 23(a)(3): Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is generally considered satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-62 (quotation omitted). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff[s]." *DeBoer*, 64 F.3d at 1174.

For the unjust enrichment claims, the harms claimed by the representative parties are the same as those of the class members and no claim of the representative parties is opposed to claims of class members. Defendants assert that each individual plaintiff or class member would be subject to individual defenses and would require individual inquiries to resolve their claims. (Doc. # 216, pp. 65-66). While Defendants highlight a few examples of potential individual defenses, they have failed to show that unique individual defenses would "threaten[] to play a major role in the litigation" to defeat typicality. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999).

30

The Court will address Defendants' assertions regarding individual issues of reliance and individual defenses in its discussion of Rule 23(b)(3)'s predominance requirement. However, the Court finds that Plaintiffs have satisfied the typicality requirement.

### d.    Rule 23(a)(4): Adequacy of Representation

Rule 23(a)(4)'s focus is twofold: "(1) [whether] the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. "The central component of class representative adequacy is the absence of conflicts of interest between the proposed representatives and the class." 1 Newberg on Class Actions § 3:54.

Plaintiffs argue that the class representatives have common interests with members of the class for the same reasons that the typicality requirement is satisfied. (Doc. # 217, pp. 22-23,41). Further, Plaintiffs provide that they are represented by experienced class action counsel that will vigorously prosecute the case. (Doc. # 174-34). Defendants posit that, because there are such close relationships between named plaintiffs and various counsels of record, representation is *per se* inadequate. (Doc. # 216, pp. 55-63). Defendants also assert that there are individual credibility issues with certain named Plaintiffs. (*Id*. at 63-64).

While Defendants extensively list the close relationships, familial or otherwise, between named Plaintiffs and counsels-of-record, they present no evidence of an impermissibly close relationship between any named Plaintiff and lead class counsel. As lead counsel is responsible for the control of litigation, which includes settlement discussions (Doc. # 5), the close relationships listed by Defendants are insufficient to create an issue with the adequacy of representation. *See Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 337-38 (D. Minn. 1987); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 91 (7th Cir. 1977).

31

Defendants argue that previous convictions, credibility issues, and lack of knowledge of the case render the named Plaintiffs inadequate. The Court rejects Defendants' argument that certain named Plaintiffs are inadequate because of past criminal convictions. *See* 1 Newberg on Class Actions § 3.68 (explaining that most courts have rejected challenges to class representatives based on allegations of "unrelated unsavory, unethical, or even illegal conduct"). The Court also determines the testimony cited by Defendants does not support a finding that named Plaintiffs are inadequate due to credibility issues. Lastly, the requirement that a named Plaintiff have an understanding of the litigation only requiring one to "be aware of the basic facts underlying the lawsuit." *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (quotation omitted). Plaintiffs have shown that the named representatives are aware of the basic facts of the case. (*See* Docs. ## 174-33, 192-9, 192-11). Because Plaintiffs have shown the named representatives have common interests with the class and the class representatives will vigorously prosecute the interests of the class, the Court finds that Plaintiffs' proposed nationwide unjust enrichment class satisfies Rule 23(a)(4).

Plaintiffs have satisfied all four of Rule 23(a)'s prerequisites to class action certification for the nationwide unjust enrichment class. The Court will proceed to analyze the requirements of Rule 23(b)(3), which must also be satisfied to certify the proposed nationwide class.

2.      Rule 23(b)(3)

In addition to satisfying the Rule 23(a) prerequisites, claimants must further prove that they meet the requirements of Rule 23(b)(1), (b)(2), or (b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs attempt to certify all proposed classes pursuant to Rule 23(b)(3). (Doc. # 161). Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The two requirements of Rule 23(b)(3) are referred to as predominance and superiority. Rule 23(b)(3) also provides four illustrative factors relevant to the predominance and superiority inquiries. *See Amchem*, 521 U.S. at 615. Those factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

 *a.*   Predominance

 "Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion is far more demanding." *Amchem*, 521 U.S. at 623-24. "In adding 'predominance' . . . to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id*. at 615 (second ellipses in original) (quoting Fed. R. Civ. P. 23 advisory committee's notes). The predominance requirement "does not require that common questions be dispositive or significant," simply that they predominate. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Blades*, 400 F.3d at 566.

*i.  Ascertainability*

Issues regarding ascertainability of class members arise when determining if common issues of fact or law predominate over individual issues.  *See McKeage*, 847 F.3d at 998 (explaining that the defendant's arguments about the need for individualize inquiry implicated the predominance requirement along with the implicit ascertainability requirement).  Regarding the identification of class members, Plaintiffs propose that self-identification affidavits be used to identify potential class members.  (Doc. # 192, pp. 20-21).  Defendants argue that the proposed class cannot be ascertainable because class members cannot be defined in reference to objective criteria.  (Doc. # 216, pp. 18-26).

Defendants first argue that the class definition requirements that any proposed Plaintiff must have purchased the at-issue motor oil "for use" in vehicles made after 1988 and/or 1930 are subjective.  (*Id*. at 19-20).  The Court rejects this argument because the intended use language disputed by Defendants does not lead to a conclusion that this phrase could mean different things to different people.  *See McAllister v. St. Louis Rams, LLC*, Nos. 4:16–CV–172 SNLJ, 4:16–CV–262, 4:16–CV–297, 4:16–CV–189, 2018 WL 1299553, at *8 (E.D. Mo. Mar. 13, 2018) ("The fact that some individualized proof may be required does not prevent the plaintiffs from carrying their burden to show that common questions otherwise predominate.").

Defendants also argue that self-identification cannot be used to adequately ascertain potential class members.  (Doc. # 216, pp. 20-23).  The Court also rejects this argument.  Self-identification affidavits are appropriate in "consumer class actions concerning low-cost products . . . where class members are unlikely to retain purchasing records and financial incentives to falsify are low."  1 McLaughlin on Class Actions § 4:2 (15th ed. 2018).  In low-cost products cases, "the risk of dilution based on fraudulent or mistaken claims seems low, perhaps to the point of being

negligible." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 667 (7th Cir. 2015).  While Defendants assert that their due process rights will be violated if self-identification affidavits are used to identify potential class members, they fail to show how the use of these affidavits would render class members unascertainable, thus showing that individual issues would predominate over common issues.

Lastly, Defendants argue that the use of self-identification affidavits cannot be used to ascertain the class because it would not be administratively feasible to determine class membership. (Doc. # 216, pp. 23-26).  Class members can be readily identified when the court can determine "class membership without having to answer numerous fact-intensive inquiries." *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *5 (W.D. Mo. Sept. 7, 2005).  As discussed above, the Court finds that the risk of fraudulent claims in this case is minimal and would not require resort to intensive individual inquiries.  *See Mullins*, 795 F.3d at 667.  Further, the Court notes that "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court . . ." can be used to manage any potentially fraudulent claims.  *Id*. (citing Manual for Complex Litigation §§ 21.66–.661 (4th ed. 2004); 1 Newberg on Class Actions § 12:20).

The Court finds that the proposed class definitions do not require subjective evidence that would defeat Rule 23(b)(3)'s predominance requirement.  Additionally, class members are ascertainable through the use of self-identification affidavits.  Lastly, the evaluation of self-identification affidavits does not cause individual factual issues to predominate over common factual issues.  As such, Plaintiffs have satisfied Rule 23's implicit ascertainability requirement in the predominance context.

## ii. Legal Predominance

Having concluded that the laws of states where the motor oil was purchased will apply to the unjust enrichment claims, Plaintiffs must demonstrate how the differences between the potentially applicable laws do not defeat the requirement that common factual or legal issues would predominate over individual issues or show that the differences between the laws could be addressed through subclassing. *In re Digitek*, 2010 WL 2102330, at *7 (citing 7AA Charles A Wright, *et al.*, Federal Practice & Procedure § 1780.1 (3d. ed. 2010)).

In addressing the variances in state unjust enrichment laws, Plaintiffs complied a survey of state unjust enrichment laws. (Doc. # 174-1). In summarizing the survey, Plaintiffs highlighted the following differences in states' unjust enrichment laws:

> (1) differences between the various statute of limitations periods, (2) differences between the availability and circumstances under which such periods will be tolled, (3) whether unjust enrichment may be asserted as an independent cause of action, (4) whether the assertion of an unjust enrichment claim requires that there be no adequate remedy at law, (5) whether the assertion of a claim requires that the benefit be directly conferred upon the defendant, (6) differences between the levels of misconduct on the part of the defendant necessary to assert a claim, and (7) differences between the defenses available to such claims.

(Doc. # 217, p. 26). There are numerous courts that have found that the variation in state unjust enrichment laws prevents common issues of law from predominating over a proposed class. *See Spencer v. Hartford Fin. Servs. Grp Inc.*, 256 F.R.D. 284, 304 (D. Conn. 2009) ("Courts considering unjust enrichment claims in the context of nationwide class action have frequently found a lack of predominance due to conflicts in legal standards from state to state."); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) ("[C]ertification of a nationwide unjust enrichment class is improper under Rule 23 because material variations in state law would predominate."); *Tyler*, 265 F.R.D. at 428 ("[T]he outcome-determinative conflicts between states' unjust enrichment . . . laws in this case are fatal to the satisfaction of Rule 23(b)(3)'s . . . predominance requirements."); *In re*

36

*Actiq*, 307 F.R.D. at 168 ("For the same reasons why an actual conflict exists among the unjust enrichment laws of the fifty states, individual issues of law predominate with regard to a nationwide class.").

However, Plaintiffs may demonstrate that state-law variances would not defeat predominance by undertaking the required "extensive analysis" of state-law variances. *In re Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at *5. Variances of state law may also be overcome through the use of subclasses to allow common issues of fact or law to predominate over individual issues of state law. *See In re Digitek*, 2010 WL 2102330, at *7; *Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 183 (3d Cir. 2014) ("[G]rouping, in general, may be a permissible approach to a nationwide class action litigation.").

Throughout their discussion of the variations in state unjust enrichment laws, Plaintiffs either emphasize that no matter the variations, common evidence can satisfy any standard (such as differing levels of misconduct a plaintiff must show), or propose subclasses to sort the variances (differing statutes of limitation, whether unjust enrichment is allowed if an adequate remedy at law exists, whether unjust enrichment is allowed as an independent cause of action). (Doc. # 217, pp. 26-31). Rather than engage in an analysis of the variances in states' unjust enrichment laws, Plaintiffs state that their proposed method of subclassing can address any variances. For example, Plaintiffs state that "there exist some differences among state laws as to the affirmative defenses that a defendant may assert against unjust enrichment claims," but only cite that the defense of laches is immaterial because of a lack of factual basis. (*Id*. at 28-29). Plaintiffs cite two cases, out of the potential 43 states whose unjust enrichment laws would apply and provide no discussion of potentially available defenses in their state survey. (*Id*.; Doc. # 174-1). Further, when discussing the level of misconduct, a plaintiff must show in a prima facie case, Plaintiffs state that because

they can present evidence that Defendants knowingly sold obsolete motor oil, they satisfy every potential standard. (Doc. # 217, p. 28). However, Plaintiffs cited four cases from the potential 43 states and did not provide any discussion in their survey regarding the level of misconduct a plaintiff must show to prove that a defendant's enrichment was unjust. (*Id*.; Doc. # 174-1). The Court cannot accept Plaintiffs assertions that any differences are immaterial without an "extensive analysis" to support such assertions. As such, the Court finds that Plaintiffs have failed to show that common legal issues predominate over the proposed class.

Plaintiffs attempt to overcome these individual legal issues by engaging in subclassing of the nationwide class, albeit, in its discussion of superiority. (Doc. # 217, pp. 31-35). Plaintiffs propose first dividing the class between states with varying statutes of limitation. (*Id*. at 32-33). These subclasses would then further be divided to reflect whether states disallow claims of unjust enrichment when an adequate remedy exists in law or an express contract exists. (*Id*. at 33-34). Lastly, those sub-sub classes would be divided between states that do allow unjust enrichment as an independent cause of action, and those states that do not. (*Id*. at 34-35). While Plaintiffs do provide how the states are divided for each of the proposed subclass levels, they fail to explain what potential subclasses would look like after all these levels of division. Further, the proposed subclasses do not account for the above-discussed differences in available defenses and the level of misconduct a plaintiff must show. Therefore, the Court finds that the method of subclassing proposed by the Plaintiffs fails to satisfy Rule 23(b)(3)'s predominance requirement. *See Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 374 (8th Cir. 2013) (providing that the Eighth Circuit "has previously rejected certification of classes where trial would require considering varied circumstances"); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 98 (W.D. Mo. 1997)

(explaining that the "need for numerous subclasses . . . demonstrates the initial lack of common issues, so predominance is diminished as more subclasses are added").

### iii.    Factual Predominance

When discussing the predominance requirement, Plaintiffs emphasize that common evidence can and will be used to satisfy the varying prima facie requirements of state unjust enrichment laws.  (Doc. # 217, pp. 23-25).  Plaintiffs stress that even if there are variances in the prima facie elements of unjust enrichment between the states' laws, these differences are immaterial and can be satisfied using evidence common to the entire class.  (Doc. # 192, pp. 38-39); *see Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007), *vacated on other grounds*, 328 Fed. Appx. 121 (3d Cir. 2009).  Plaintiffs assert that this common evidence will show Defendants sold the same motor oil with identical labeling in each of its stores throughout the entire class period.  (Docs. ## 174-12; 175-1, 282:8-16; 175-6).  Plaintiffs also state that they will produce evidence that shows Defendants were aware they were selling obsolete products (*see* Docs. ## 174-8; 175-26; 175-27; 175-28; 175-29), but intentionally marketed them as comparable to brand-name motor oils.  (Doc. # 217, p. 24).  Lastly, Plaintiffs proffer expert testimony to show that common evidence would prove that the entire class was denied all expected value of non-obsolete motor oil and that no reasonable person would have purchased DG Auto motor oil for use in a vehicle manufactured after 1988 if the product were marketed in a non-misleading way.  (Docs. ## 175-3; 174-23).

Plaintiffs have produced evidence to support Defendants' labeling and placement practices were the same or substantially similar for all members in the potential class.  Further, Dr. Scott's expert report (Doc. # 174-23), if accepted as persuasive, could be used to show on a class-wide basis that consumers were likely to be misled by the DG Auto labeling and product placement. What is more difficult to prove without the need to analyze conflicting legal standards is whether

39

the Defendants' enrichment was unjust, as interpreted by different states. Evidence produced by Plaintiffs undisputedly shows that Plaintiffs paid Defendants for the at-issue motor oil. Further, Plaintiffs have also produced evidence that could be used to support a conclusion that Defendants knew that the at-issue motor oil was obsolete. However, there has not been a showing from Plaintiffs that these few pieces of evidence, or subsequent evidence, could satisfy the differing definitions of "unjust" between the different states. *See In re Actiq*, 307 F.R.D. at 168 (explaining the difficulties of proving whether an enrichment was "unjust" on a class-wide basis); *see also Burlington N. R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996) ("Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *Nelson v. Levy Home Ent., LLC*, No. 10 C 3954, 2012 WL 403974, at *12 (N.D. Ill. Feb. 8, 2012) ("A cause of action based upon unjust enrichment does not require fault or illegality on the part of the defendants . . . .") (quotation omitted).

Variances in state law lead to a lack of legal predominance in the proposed unjust enrichment class. The proposed subclasses do not alter this conclusion. Because of variation in state unjust enrichment laws, individual issues of law predominate over common issues of law in the proposed nationwide unjust enrichment class. Further, because common evidence cannot be used to satisfy the different prima facie elements of the different laws, common factual issues do not predominate individual factual inquiries. As such, Plaintiffs have failed to satisfy Rule 23(b)(3)'s predominance requirement. Therefore, a nationwide unjust enrichment class cannot be certified.

40

3.      Statewide Unjust Enrichment Classes

Plaintiffs alternatively seek certification of 17 statewide unjust enrichment classes. (Doc. # 217, pp. 65-66).[8]  The Rule 23(a) analyses and conclusions conducted and reached above regarding the proposed nationwide unjust enrichment class are nearly identical for statewide sub classes.  The only variation in the analysis pertains to numerosity.  While there are not as many potential class members as a nationwide class, Plaintiffs have proffered evidence that between 2012 and 2017 Defendants sold at least 10,000 quarts of the at-issue motor oil in each of California, Colorado, Minnesota, New Jersey, and Wisconsin; and at least 100,000 quarts in each of Florida, Illinois, Kansas, Kentucky, Maryland, Michigan, Missouri, Nebraska, New York, North Carolina, and Ohio. (Docs. ## 175-42, 175-43).  These figures still show that Plaintiffs satisfy the numerosity requirement.  As such, Plaintiffs have satisfied the Rule 23(a) prerequisites to class certification for statewide unjust enrichment subclasses.

    a.      *Predominance*

In addition to satisfying Rule 23(a), Plaintiffs must show that statewide unjust enrichment subclasses meet the predominance and superiority requirements of Rule 23(b)(3).  Unlike the proposed nationwide unjust enrichment class, statewide unjust enrichment classes would not suffer from the same legal conflicts because each class would be governed by the law of a single state. Differing interpretations on the level of misconduct necessary to show that retention of a benefit was "unjust" are not applicable when solely applying the laws of one state.  As previously discussed, Plaintiffs identify evidence that they assert can be used to satisfy the prima facie requirements of unjust enrichment for the entire class.  (*See, e.g.*, Docs. ## 174-12 pp. 8-10, 13-14,

---

[8] No statewide class can be certified for Texas.  *See supra* n.5. As such, 16 statewide unjust enrichment classes may be certified.

41

26-27; 175-1, 282:8-16; 175-6). Defendants contend that no unjust enrichment class can be certified because analyzing whether a receipt of a benefit was "unjust" requires individual inquiries into each transaction. (Doc. # 216, pp. 86-87). While it is true that in many circumstances unjust enrichment claims require individual inquiries, common evidence can be used to satisfy all claims when the actions of the defendant are uniform and the transaction with all members are equitably similar. *See James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011) ("[W]hen the defendant's conduct is the same, it is difficult to conceive of any significant equitable differences between class members.") (quotation omitted); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) (providing that if the plaintiff's theory was ultimately supported with evidence, a jury could conclude that the defendant was unjustly enriched no matter what the particular facts of each individual class member's transaction).

As previously discussed, Plaintiffs' theory of liability centers on the substantial similarities of the labeling and product placement practices of Defendant throughout the class period. (Docs. ## 174-12, pp. 8-10, 16-17; 174-16; 175-9; 175-10, 88:23-89:4; 174-13; 174-14, p. 3; 175-16; 175-17; 175-21). Defendants assert that the variations in labeling and product placement practices throughout the class period, which necessitates individual inquiries into each transaction. (Doc. # 216, pp. 43-46). However, the evidence cited by Plaintiffs, if found to be persuasive, could be viewed as substantially similar, if not uniform, throughout the class period. This evidence, if accepted as showing uniform conduct by Defendants, could be used to show that the retention of the benefit was unjust and would serve as common evidence for all class members. *See James D. Hinson Elec.*, 275 F.R.D. at 647. This common evidence could be used to plausibly support the question of whether the Defendant's retention of the benefit received was unjust, as defined by the law of the state. *See Amgen*, 568 U.S. at 459 (explaining that a class certification movant must

42

show "that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class") (emphasis in original). Because common evidence could potentially be used to show that the retention of the benefit was unjust, as defined by the laws of a single state, factual predominance is satisfied in the proposed statewide unjust enrichment classes.

Included in the predominance analysis is Plaintiffs' burden to establish "that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). At the class-certification stage, "any model supporting a plaintiff's damages case must be consistent with its liability case . . . ." *Id.* (quotation omitted). Defendants assert that Plaintiffs' damages models cannot be used to satisfy Rule 23(b)(3)'s predominance requirement. (Doc. # 216, pp. 48-55). Specifically, Defendants claim that both damages models advanced by Dr. Krueger, a full-refund model and a benefit-of-the-bargain model (Doc. # 175-49), invite individual inquiries and are not tethered to Plaintiffs' theory of liability. (*Id.*). Defendants also assert that not every potential class member would be entitled to a full refund either because a particular state law does not permit full-refund damages or that certain class members may have obtained a benefit from the motor oil. (*Id.* at 49-54).

As previously discussed, Plaintiffs' theory of damages is "that consumers would not have purchased this obsolete product had they known its true propensity; or alternatively, reasonably believed they were getting a comparable, name-brand motor oil." (Doc. # 192, p. 26). The Court rejects Defendants' arguments regarding varying capability of recovering full-refund damages because at the class certification stage, Plaintiffs are only required to show that "common questions to the class predominate, not that those questions will be answered in favor of the class." *Amgen,* 568 U.S. at 459. While Plaintiffs may ultimately fail to show each class member is entitled to a full refund, the full-refund model aligns with Plaintiffs' theory that they would not have purchased the

at-issue motor oil had they known it was obsolete. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670-71 (C.D. Cal. 2014).

Defendants also urge the court to reject Plaintiffs' benefit-of-the-bargain damages model because some states do not allow these damages in implied warranty or consumer protection claims if the "'product performs satisfactorily, and never exhibits an alleged defect.'" (Doc. # 216, pp. 54-55) (quoting *Briehl v. GMC*, 172 F.3d 623, 628 (8th Cir. 1999)). Similar to the full-refund model, the Court rejects this argument because this proposed model can be used to measure damages on a class-wide basis and Plaintiffs are not required to show that each class member will ultimately be entitled to these damages. *See Amgen*, 568 U.S. at 459. Additionally, a benefit-of-the bargain model is in line with Plaintiffs' theory that consumers purchased the at-issue motor oil with the expectation that it would be comparable to name-brand oils but received an obsolete motor oil.

Because common evidence can be used to satisfy a prima facie case of unjust enrichment and legal conflicts are inapplicable to single-state unjust enrichment classes, the Court finds that common issues predominate over individual issues within these classes. Therefore, the predominance requirement of Rule 23(b)(3) is satisfied for the proposed statewide unjust enrichment classes.

> b. **Superiority**

Plaintiffs must still demonstrate that a class action would be superior to alternative methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3). First, it is important to note that this case is comprised of low-value consumer claims, meaning that it would be highly unlikely that individual actions would even be brought in the absence of a class action. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.") (quotation

44

omitted).  When considering Rule 23(b)(3)(A), these circumstances indicate that individuals would have a low interest of controlling litigation individually due to the low value of a potential recovery. Additionally, considering Rule 23(b)(3)(D), single-state classes present a manageable jury trial. Rather than being instructed on multiple subclasses and the laws of 44 jurisdictions of a potential nationwide class comprised of the states where Defendants did business, a jury would receive instruction on the unjust enrichment laws of their own state and no others.  Because of the distinct nature of the 16 different statewide classes, these class action classes would be manageable.  Lastly, as previously discussed, the Court believes any ascertainability issues that could be implicated through the use of self-identification affidavits could be managed in an administratively feasible manner.  These considerations show that a class action would be superior to other methods of adjudicating the claims.

Plaintiffs have satisfied the Rule 23(a) prerequisites to class action certification for statewide unjust enrichment classes.  Likewise, Plaintiffs have met the predominance and superiority requirements of Rule 23(b)(3) for these classes.  Because Plaintiffs have satisfied both Rule 23(a) and Rule 23(b)(3), the Court determines that certification of statewide unjust enrichment classes in the 16 proposed states is proper in this case.

**C.     Proposed Implied Warranties Classes**

It does not appear that Plaintiffs desire a nationwide breach of warranties class, which would include purchasers from any of the 44 states where Defendants did business, if the Court determines that Tennessee law does not apply.  (Doc. # 217, p. 45).  Since the Court has determined that the laws of the states where the transactions occurred govern the Plaintiffs' breach of implied warranty claims, Plaintiffs seek certification of a multistate class, which limits the class to purchasers in specific states, but still would comprise one class, defined as:

45

> All persons in the United States who purchased Defendants' DG-branded motor oil, DG SAE 10W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988 and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for re-sale, since February 8, 2012 in the states of Arkansas, California, Florida, Georgia, Illinois, Indiana, Kansas, Louisiana, Maryland, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, or Virginia; since February 8, 2011 in the states of Iowa or Oklahoma; since February 8, 2010 in the state of Wisconsin; and since February 8, 2013 in the states of Colorado or Connecticut.

(Doc. # 217, p. 45). The Court must conduct the same Rule 23 analysis to determine if the proposed multistate implied warranties class can be certified.

1.      Rule 23(a)

For the same reasons stated in the discussion of the unjust enrichment class, Plaintiffs satisfy Rule 23(a)(1)'s numerosity requirement. Additionally, common questions of law and fact also exist in the proposed multistate implied warranties class. For the breach of warranty of merchantability, whether the at-issue motor oil was of average quality given the label description, whether the motor oil was adequately contained and packaged, and whether the at-issue motor oils conform to the promises or affirmations made on the labels are all common questions of fact and law present. For the breach of the implied warranty of fitness for a particular purpose, whether Defendants had reason to know that consumers were purchasing the DG Auto motor oil for use on post-1930 or post-1988 cars and whether the motor oil sold were, in fact, fit for the purpose of use in the class's vehicles are common questions of fact and law present. These common issues of fact and law tend to show that all Plaintiffs suffered the same injury, if proven; they bought motor oil that was not merchantable or fit for the particular purpose of use in post-1930 or post-1988 vehicles. *See Sandusky*, 821 F.3d at 998 (concluding that "[a] common contention, capable of classwide resolution" was whether plaintiffs were subject to actions that violated a statute). Lastly, for the

46

same reasons provided in the discussion of the nationwide unjust enrichment class, typicality and adequacy of representation are satisfied for the proposed multistate implied warranties class.

2.      Rule 23(b)(3)

As discussed in the discussion of the unjust enrichment class, Plaintiffs must demonstrate that variances in the state laws do not preclude certification of a class comprised of claims governed by the laws of different states. *In re Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at *5.

a.      *Legal and Factual Predominance*

Plaintiffs first point out that all of the states in the multistate class, except Louisiana, have adopted UCC § 2-314, the breach of implied warranty of merchantability provision.[9]  (Doc. # 217, p. 46).  Plaintiffs state that the same goes for adoption UCC § 2-315, of the implied warranty of fitness for a particular purpose.[10]  (*Id.* at 47).  Plaintiffs argue that because all of the relevant states

_____

[9] *See* Ark. Code Ann. § 4-2-314 (Arkansas); Cal. Com. Code § 2314 (California); Colo. Rev. Stat. § 4–2–314 (Colorado); Conn. Gen. Stat. § 42A-2-314 (Connecticut); Fla. Stat. § 672.314 (Florida); O.C. Ga. § 11-2-314 (Georgia); Ind. Code Ann. § 26-1-2-314 (Indiana); Iowa Code § 554.2314 (Iowa); 810 Ill. Comp. Stat. § 5/2–314 (Illinois); Kan. Stat. Ann. § 84–2–314 (Kansas); Ky. Rev. Stat. Ann. § 355.2–314 (Kentucky); Md. Code Ann., Com. Law § 2–314 (Maryland); Mich. Comp. Laws § 440.2314 (Michigan); Minn. Stat. § 336.2–314 (Minnesota); Mo. Rev. Stat. § 400.2–314 (Missouri); Neb. Rev. Stat. UCC § 2–314 (Nebraska); N.J. Stat. Ann. § 12A:2–314 (New Jersey); N.Y. UCC Law § 2–314 (New York); N.C. Gen. Stat. § 25–2–314 (North Carolina); O.R.C. § 1302.27 (Ohio); 12A Okla. Stat. § 2-314 (Oklahoma); 13 Pa. Cons. Stat. Ann § 2314 (Pennsylvania); Tenn. Code Ann. § 47-2-314 (Tennessee); Tex. Bus. & Com. Code Ann. § 2.314 (Texas); Va. Code. § 8.2-314 (Virginia); Wis. Stat. § 402.314 (Wisconsin).  Louisiana has adopted a similar breach of the implied warranty of merchantability provision.  *See* La. Civ. Code Ann. Art. 2524.

[10] *See* Ark. Code Ann. § 4-2-315 (Arkansas); Cal. Com. Code § 2315 (California); Colo. Rev. Stat. § 4–2–315 (Colorado); Conn. Gen. Stat. § 42A-2-315 (Connecticut); Fla. Stat. § 672.315 (Florida); O.C. Ga. § 11-2-315 (Georgia); Ind. Code Ann. § 26-1-2-315 (Indiana); Iowa Code § 554.2315 (Iowa)810 Ill. Comp. Stat. § 5/2–315 (Illinois); Kan. Stat. Ann. § 84–2–315 (Kansas); Ky. Rev. Stat. Ann. § 355.2–315 (Kentucky); Md. Code Ann., Com. Law § 2–315 (Maryland); Mich. Comp. Laws § 440.2315 (Michigan); Minn. Stat. § 336.2–315 (Minnesota); Mo. Rev. Stat. § 400.2–315 (Missouri); Neb. Rev. Stat. UCC § 2–315 (Nebraska); N.J. Stat. Ann. § 12A:2–315 (New Jersey); N.Y. UCC Law § 2–315 (New York); N.C. Gen. Stat. § 25–2–315 (North Carolina); O.R.C. § 1302.28 (Ohio); 12A Okla. Stat. § 2-315 (Oklahoma); 13 Pa. Cons. Stat. Ann § 2315

have adopted these UCC provisions, or a substantially similar statute, common legal issues predominate over individual legal issues.  (*Id*. at 47-48).  Plaintiffs further contend that objective standards, as of the time of delivery, are applied to implied warranty of merchantability claims.

When discussing predominance of common issues within the multistate implied warranties class, Plaintiffs highlight the following differences in state implied warranty laws: 1) a requirement of vertical privity, meaning the plaintiff has a direct contractual relationship with the defendant; 2) notice of breach requirements; 3) differing statutes of limitations; and 4) the availability of the buyer misuse defense.  (*Id*. at 49-51).  First, Plaintiffs state that differences in vertical privity requirements are immaterial because any potential class member is a purchaser of the DG Auto motor oil.  (*Id*.).  Secondly, the Court will discuss Plaintiffs' analysis of the different notice requirements below.  Next, Plaintiffs point to the class definition to account for variances in statutes of limitation.  (Doc. # 217, p. 51).  Lastly, Plaintiffs argue that the availability of the buyer misuse defense is only applicable to breach of implied warranty claims sounding in tort.  (*Id*. at 51-52).  Because Plaintiffs seek only contractual damages (refund and benefit of the bargain), the buyer misuse defense is inapplicable to this case.  (*Id*.).

Regarding notice, Plaintiffs state that no matter the requirement for notice of breach, all named Plaintiffs and class members have satisfied any requirement.  "Under UCC § 2-607(3), the buyer must within a reasonable time after he [or she] discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *In re Dollar Gen. Corp. Motor*

---

(Pennsylvania); Tenn. Code Ann. § 47-2-315 (Tennessee); Tex. Bus. & Com. Code Ann. § 2.315 (Texas); Va. Code. § 8.2-315 (Virginia)Wis. Stat. § 402.315 (Wisconsin); *see also* La. Civ. Code Ann. Art. 2524 ("Where the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or his particular purpose.").

*Oil*, 2017 WL 3863866, at *13. States have varying interpretations of this notice requirement. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 727 (5th Cir. 2007). Plaintiffs provided a summary on the notice requirement, but emphasized that no matter the standard, named Plaintiffs and all potential class members have satisfied the varying standards. (Doc. # 217, pp. 49-50). The summary provided that twelve of 22 states included in the proposed multistate class–Arkansas, California, Colorado, Connecticut, Illinois, Indiana, Iowa, Louisiana, Ohio, Pennsylvania, Texas, and Wisconsin–hold that an implied warranty defendant has notice of breach based on its actual knowledge of the product's non-conforming condition.[11] Eight of the states–Colorado, Kansas, New Jersey, New York, North Carolina, Oklahoma, and Tennessee–provide that the filing of a lawsuit satisfied the notice requirement. Lastly, Plaintiffs state that Florida and Maryland require plaintiffs to provide pre-suit notice to Defendants, which was done in this case. (CAC ¶¶ 164-165).

Plaintiffs' arguments regarding varying notice requirements seemingly stand for the proposition that individualized issues of notice will not predominate over common issues because every notice standard is already satisfied. However, the necessary analysis to show that conflicting laws do not defeat predominance must prove that either common evidence can satisfy every

---

[11] *See Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 491 (W.D. Ark. 1993); *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558 (HAA), 2008 WL 4126264, at *11 (D.N.J. Sept. 2, 2008) (California law); *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 207 n.3 (Colo. 1984); *Exp. Dev. Canada v. T. Keefe & Son, LLC*, No. CV 95032894S, 2016 WL 8488125, at * 17(Conn. Super. Ct. Nov. 9, 2016); *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 715 (7th Cir. 1992) (Illinois law); *Advantage Eng'g, Inc. v. Burks Pumps, Inc.*, No. 93-3883, 1994 WL 317126, at *7 (7th Cir. June 30, 1994) (Indiana Law); *Archer Daniels Midland Co. v. Eco, Inc.*, 821 F. Supp. 2d 1083, 1098 (S.D. Iowa 2011) (citing Iowa Code § 554.1202); *Harrison v. Slidell Specialty Hosp., LP*, No. 2013 CA 0691, 2013 WL 6858261, at *4-5 (La. Ct. App. Dec. 27, 2013) (citing La. Civ. Code Ann. art. 2522); *Galoski v. Stanley Black & Decker, Inc.*, No. 1:14 CV 553, 2015 WL 5093443, at *6 (N.D. Ohio Aug. 28, 2015); *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 26 (Pa. 2011); *Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F. Supp. 3d 661, 669 (W.D. Tex. 2015); *Cornerstone Design, Ltd. v. Elumatec USA, Inc.*, No. 2005AP2448, 2007 WL 1695246, at *7 (Wis. Ct. App. June 13, 2007).

standard, or that the differences between the differing laws are not material. *See Ramthun v. Bryan Career Coll.-Inc.*, 93 F. Supp. 3d 1011, 1029 (W.D. Ark. 2015) (requiring plaintiffs to show that differing breach of implied warranty issues can be resolved by common evidence); *In re Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at *6 (directing Plaintiffs to explain how variations in states' implied warranty laws do not conflict to the extent that it fails to satisfy Rule 23).

Merely stating that differences exist between states' interpretations of the UCC notice requirement, without analyzing such differences, fails to satisfy the directive the Court gave in its previous order. *See In re Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at *6. The Court is unpersuaded by Plaintiffs' assertion that no matter the notice standard, all class members have, or could, satisfy that standard without the need to resort to individual inquiries. Plaintiffs do not assert that common evidence could be used to satisfy these differing requirements. The Court cannot accept that the differences between these requirements are not material without adequate analysis. *See Cole*, 484 F.3d at 727; *In re Dollar Gen. Corp. Motor Oil*, 2017 WL 3863866, at *13 (explaining differences in notice requirements and collecting cases). In states that hold the filing of suit or direct notice is required for a plaintiff, whether such notice was provided within a reasonable time is an inquiry that requires individualized inquiry. *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, No. 08-1967-MD-W-ODS, 2011 WL 6740338, at *7, n.13 (W.D. Mo. Dec. 22, 2011).

Plaintiffs proffer evidence that Defendants had knowledge that its DG Auto SF motor oil was obsolete. (Docs. ## 175-51, 175-52, 175-53). Plaintiffs assert this evidence establishes that Defendants had notice of their breaches of implied warranties. (Doc. # 217, p. 49-50). However, this evidence falls short of assuring the Court that additional necessary evidence, likely individualized, would not predominate over common issues, or that common evidence can be used

to satisfy all standards. *See Cole*, 484 F.3d at 727 ("State law varies on what constitutes reasonable notice and to whom notice should be given."); *Haley v. Kolbe & Millwork Co., Inc.*, No. 14-cv-99-bbc, 2015 WL 9255571, at *13 (W.D. Wisc. Dec. 18, 2015) ("If there are states in which notice is required, individual fact-specific inquiries would be necessary with respect to the timing, content and recipient of each class member's notice.").

These issues regarding the notice requirement weigh against both a finding of factual and legal predominance of common issues. Because individualized issues of law and fact will predominate over common issues, the Court finds that Plaintiffs have failed to satisfy Rule 23(b)(3)'s predominance requirement. Because Rule 23(b)(3) is not satisfied, the Court will not certify Plaintiffs' proposed multistate implied warranties class.

Variation in state law would not be at issue if the Court were to certify statewide implied warranties classes. The removal of variations in law does not relieve Plaintiffs' burden of establishing that common evidence can be used to satisfy all class members' claims without the resort to individual factual inquiries. *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member."). As discussed above, the individual factual inquiries necessary to evaluate notice, primarily whether it was given within a reasonable time, still exist if statewide classes were created. For example, some courts hold that generalized knowledge of a product's defect is insufficient to provide notice because notice is transaction specific. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 493-94 (Ill. 1996). As such, Plaintiffs fail to satisfy the predominance requirement for statewide implied warranties classes. Therefore, the Court will not certify statewide implied warranties classes.

b.    *Property Damage Claims*

Plaintiffs assert several methods for the Court to incorporate class members who have property damage claims into the proposed classes.  (Doc. # 217, pp. 66-72).  The "property damage claims" class members would be represented by Mr. Jason Wood.  (*Id*. at 67-68).  The only proposed method of address the "property damage claims" the Court will address is Rule 23(c)(4) issue certification.  Plaintiffs propose that vehicle damages are recoverable as consequential damages allowed under a breach of implied warranty claim.  (Doc. # 217, p. 67).  Plaintiffs ask the Court to certify the issue of "whether Dollar General's obsolete motor oil causes damage to modern engines" as a subclass of the implied warranties class.  (Doc. # 217, p. 70).  However, because the Court is not certifying an implied warranties class, whether nationwide, multistate, or statewide, no certification for damages contingent on those claims cannot be certified.[12]

## D.    **Statewide Consumer Protection Classes**

Plaintiffs move for the Court to certify statewide classes comprising of state unfair trade practices act and/or consumer fraud statutory claims.  (Doc. # 217, pp. 59-65).[13]  For the same

---

[12] Defendants raise a number of arguments asserting that no potential transferor forum can exert jurisdiction over them in a potential trial.  (Doc. # 216, pp. 69-76).  The Court need not address these arguments because no nationwide, or multistate class will be certified.

[13] The statutory arise under the following statutes: California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; California's False and Misleading Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; California's Consumer Legal Remedy Act, Cal. Civ. Code § 1750 *et seq.*; Colorado's Uniform Deceptive Sales Practices Act, Colo. Rev. Stat. § 6-1-105 *et seq.*; Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Florida's Misleading Advertising Law, Fla. Stat. § 817.41 *et seq.*; Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 510/1 *et seq.*; Kansas's Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*; Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220 *et seq.*; Maryland's Consumer Protection Act, Md. Code. Ann. Com. Law § 13-101 *et seq.*; Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*; Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*; Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*; Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*; Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.*;

reasons as the Court's previous discussion of the proposed unjust enrichment and implied warranties classes, the Court finds that Plaintiffs' proposed statewide classes satisfy Rule 23(a). All the considerations of proposed nationwide classes remain the same for the proposed representatives of the statewide classes. The only Rule 23(a) requirement that differs from the above discussion is numerosity because it must be evaluated on a state-by-state basis. The same evidence advanced by Plaintiffs to satisfy the numerosity requirement for statewide unjust enrichment classes satisfies the requirement for the statewide consumer protection classes.

### a.  *Predominance*

The proposed state subclasses do not present predominance issues due to the variations in the laws because each statewide class is governed by one state's law or set of laws. Rather, the predominance issues implicated in the consumer protection sub-classes pertain to reliance. Certain states require a showing of consumer reliance to make a prima facie showing under their statutes,[14]

---

Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.*; New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 349 and § 350; North Carolina's Consumer Protection Act, N.C. Gen. Stat. § 75-1.1 *et seq.*; Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*; Wisconsin's Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 *et seq.*; Wisconsin's Unfair Methods of Competition and Trade Practices Act, Wis. Stat. Ann. § 100.20 *et seq.*

[14]  The state statutes that require a showing of reliance are as follows: California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; California's False and Misleading Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; California's Consumer Legal Remedy Act, Cal. Civ. Code § 1750 *et seq.*; Florida's Misleading Advertising Law, Fla. Stat. § 817.41 *et seq.*; Maryland's Consumer Protection Act, Md. Code. Ann. Com. Law § 13-101 *et seq.*; Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*; Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*; Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*; New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 350; Wisconsin's Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.*18 et seq.*; Wisconsin's Unfair Methods of Competition and Trade Practices Act, Wis. Stat. Ann. § 100.20 *et seq.*

while others do not.[15]  Class certification is typically denied for classes with claims involving reliance when there is variance in the representations made by the defendant.  *See In re St. Jude*, 522 F.3d at 838; Fed. R. Civ. P. 23 advisory committee's note to the 1966 amendment ('[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons of whom they were addressed.").  Reliance requirements preclude certification when a defendant "did not adopt a uniform approach with respect to its representations."  *Avritt*, 615 F.3d at 1034-35.  Plaintiffs urge the court that *St. Jude* and *Avritt*, both Eighth Circuit opinions that denied certification because of the necessity of individual showings of reliance, are distinguishable from the case at hand.  (Doc. # 217, pp. 61-63).

In *St. Jude*, the Eighth Circuit determined that Rule 23(b)(3)'s predominance requirement was unsatisfied in a Minnesota consumer protection class.  *In re St. Jude*, 522 F.3d at 840.  While the Eighth Circuit's discussion focused solely on Minnesota's consumer protections statutes, its predominance analysis is enlightening.  The Eighth Circuit highlighted that the defendant planned on presenting evidence that an individual plaintiff did not rely on the defendant's misrepresentations.  *Id*.  This evidence was important to the predominance determination because

---

[15] The state statutes which do not require a showing of reliance are as follows: Colorado's Uniform Deceptive Sales Practices Act, Colo. Rev. Stat. § 6-1-105 *et seq.*; Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 510/1 *et seq.*; Kansas's Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*; Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220 *et seq.*; Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*; Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.*; Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.*; New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; New York's Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 349; North Carolina's Consumer Protection Act, N.C. Gen. Stat. § 75-1.1 *et seq.*; Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*

"[w]hen such evidence is available, then it is highly relevant and probative on the question whether there is a causal nexus between alleged misrepresentations and any injury." *Id*. Because the defendant in *St. Jude* planned on presenting evidence of individual non-reliance, the resolution of its liability to each plaintiff under the Minnesota consumer fraud statues would be "dominated by individual issues of causation and reliance." *Id*. The Eighth Circuit concluded that the need for individualized reliance determinations meant that common issues would not predominate. *Id*.

Defendants claim that they will present evidence that would require individual inquiry into reliance. (Doc. # 216, pp. 100-01). As previously discussed, Defendants assert that the variances in store layout, shelf placement, and changes over time raise individual issues of reliance. (Docs. ## 184-54; 184-55; 184:56; 216-36). The Court similarly rejects this argument because Plaintiffs have shown the similarities between these changes could be accepted to show the near uniformity in Defendants' actions throughout the class period. (*See* Docs. ## 174-13, pp. 3, 5; 174-14, p. 5; 174-16; 174-21; 175-17; 175-16, p. 3; 175-9; 175-10, 88:23-89:4; 175-17).

Defendants attempt to highlight evidence regarding named Plaintiffs' varying degrees of pre-purchase knowledge, which shows individual variance in the reaction to Defendants' alleged misrepresentations. (*See* Docs. ## 184-63; 184-64; 184-66). While the Defendants assert that this evidence necessitates individualized inquiries based on *St. Jude*, the Court disagrees. The evidence presented by the defendant in *St. Jude* that led the Eighth Circuit to conclude that individualized inquires would be necessary to determine reliance was: 1) two of the five named plaintiffs were never exposed to the misrepresentation; and 2) sources of knowledge of doctors who recommended the defective product to the plaintiffs varied, which altered whether the doctors' knowledge could be imputed to any plaintiff. *In re. St. Jude*, 522 F.3d at 839. In this case, Defendants do not point to evidence that suggests that any Plaintiff was never exposed to the alleged misrepresentations.

Further, the evidence Defendants have presented regarding varying pre-purchase knowledge of certain named Plaintiffs (Docs. ## 184-63; 184-64; 184-66) does not negate the evidence of the similarity of the alleged misrepresentations throughout the class period and the evidence that the at-issue labeling and placement practices did, in fact, occur. (*See* Docs. ## 174-13, pp. 3, 5; 174-14, p. 5; 174-16; 174-21; 175-17; 175-16, p. 3; 175-9; 175-10, 88:23-89:4; 175-17). Because Plaintiffs have presented evidence that the alleged misrepresentations could be accepted as nearly uniform, individualized reliance inquiries are not necessary to establish class members' state consumer protection claims. As such, common issues of fact and law predominate over individual issues regarding consumer protection laws that have a reliance requirement. *See Mooney v. Allianz Life Ins. Co. of N. Am*, No. 06-545 ADM/FLN, 2008 WL 2952055, at *3 (D. Minn. July 28, 2008).

Predominance is likewise satisfied in states that do not require reliance in a prima facie consumer fraud claim. The substantially similar labeling and product placement practices utilized by Defendants can be used as evidence common to all members in the proposed subclasses to prove to make a prima facie showing of consumer fraud. *See Harris v. D. Scott Carruthers & Assoc*., 270 F.R.D. 446, 453 (D. Neb. 2010) (finding predominance satisfied when entire class received same representation that allegedly violated the Nebraska Consumer Protection Act); *Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 481 (E.D. Mo. 2010) (holding "[b]ecause the class claim is based upon a promise given to all putative class members . . . and can be proven with common evidence, individualized inquiries are not necessary and do not defeat class certification"). Similar to the discussion of predominance in states with a requirement of reliance, the Court does not believe that individual defenses regarding reliance would result in individualized inquiries overbearing common questions. While the parties discuss issues of presumed reliance and rebutting that presumption, the Court determines these issues do not bear on the issues pertinent to class

certification. Because common issues of fact predominate over any individualized issues in the proposed consumer-protection subclasses, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

b. **Superiority**

A class action would be superior to alternative options. Despite the presence of 16 different statewide classes, these different classes would achieve far greater efficiency than individual claimants litigating their own claims. *See* Fed. R. Civ. P. 23(b)(3)(A); *Phillips Petroleum Co. v. Shutts*, 472 U.S., 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.") (quotation omitted). Additionally, manageability concerns contemplated by Rule 23(b)(3)(D) that would accompany a nationwide or multistate class –primarily the application of multiple laws to one class–are not present in this circumstance because each states' laws would apply to subclasses of citizens of those states. Further, an eventual trial of these statewide classes would require only instruction of the law of a single state to a jury, rather than multiple laws. Lastly, as discussed above, potential class members can be ascertained in an administratively feasible manner. For these reasons, the 16 statewide classes of consumer protection claims are superior to alternative methods for resolving the dispute.

Plaintiffs have satisfied all of Rule 23(a)'s prerequisites to class certification for statewide consumer protection classes. Additionally, Plaintiffs have satisfied the predominance and

57

superiority requirements of Rule 23(b)(3). As such, class certification is proper for the 16 statewide classes comprised of state consumer fraud and/or unfair trade practice act claims.[16]

## IV. CONCLUSION

Plaintiffs have satisfied Rule 23(a) and Rule 23(b)(3) with regard to the 16 statewide unjust enrichment classes and the 16 statewide consumer protection classes. Plaintiffs have failed to demonstrate that common issues of fact or law predominate over individual issues for the proposed nationwide unjust enrichment class, the multistate implied warranties class, and the statewide implied warranties classes. For these reasons and the reasons discussed above, Plaintiffs' Motion for Class Certification (Doc. # 161) is GRANTED in part and DENIED in part. Pursuant to Rule 23(g), Kanner & Whiteley, LLC is appointed as lead counsel for all classes. Class counsel for each class will be noted in the summary of the class. A summary of certified classes and the appointed representatives is as follows[17]:

California:
- Class Definition: All persons in the State of California who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 8, 2012.
- Named Representative: Roberto Vega
- Class Counsel: Humphrey, Farrington & McClain, PC; Milstein Adelman Jackson Fairchild & Wade LLP
- Claims:
  1) Unjust Enrichment
  2) False Advertising (Cal. Bus. & Prof. Code § 17500)
  3) Consumer Legal Remedies (Cal. Civ. Code § 1750)
  4) Songs Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1791, 1792)
  5) Unfair Competition (Cal. Bus. & Prof. Code § 17200)

---

[16] Defendants assert that the laws of certain states do not permit class actions as a means of enforcement. (Doc. # 216, pp. 102-05). Plaintiffs dispute these contentions. (Doc. # 192, pp. 52-55). These issues will not be determined at this time as the Court believes that they are more suitable for analysis in potential dispositive motions.

[17] *See* Doc. # 174-32.

Colorado:
- Class Definition: All persons in the State of Colorado who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 15, 2013.
- Named Representative: Allen Brown
- Class Counsel: Humphrey, Farrington & McClain, PC
- Claims:
  1) Unjust Enrichment
  2) Colo. Uniform Deceptive Trade Practices Act (Colo. Rev. Stat. § 5-1-105)

Florida:
- Class Definition: All natural persons residing in the State of Florida who, after December 18, 2011, purchased Defendants' DG-branded motor oil, DG SAE 10W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for re-sale.
- Named Representative: Bradford Barfoot
- Class Counsel: Humphrey, Farrington & McClain, PC; Ku & Mussman, P.A.
- Claims:
  1) Unjust Enrichment
  2) Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201)
  3) Misleading Advertising Law (Fla. Stat. § 817.41)

Illinois:
- Class Definition: All persons in the State of Illinois who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 15, 2013.
- Named Representative: Gerardo Solis
- Class Counsel: Humphrey, Farrington & McClain, PC
- Claims:
  1) Unjust Enrichment
  2) Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill Comp. Stat. 510/1)

Kansas:
- Class Definition: All persons in the State of Kansas who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 2013.
- Named Representative: Nicholas Meyer
- Class Counsel: Humphrey, Farrington & McClain, PC
- Claims:
  1) Unjust Enrichment
  2) Kansas Consumer Protection Act (Kan. Stat. Ann. § 50.623)

59

Kentucky:
- Class Definition: All persons in the Commonwealth of Kentucky who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 15, 2014.
- Named Representative: John Foppe
- Class Counsel: Humphrey, Farrington & McClain, PC; Futscher Law PLLC
- Claims:
  1) Unjust Enrichment
  2) Kentucky Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.220)

Maryland:
- Class Definition: All persons in the State of Maryland who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since December 2011.
- Named Representative: John McCormick, III
- Class Counsel: Humphrey, Farrington & McClain, PC; Law Offices of Stephen J. Nolan
- Claims:
  1) Unjust Enrichment
  2) Maryland Consumer Protection Act (Md. Code Ann., Com. Law § 13-101)

Michigan:
- Class Definition: All persons in the State of Michigan who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 2010.
- Named Representative: Bruce Gooel
- Class Counsel: Humphrey, Farrington & McClain, PC; Law Offices of John P. Zuccarini
- Claims:
  1) Unjust Enrichment
  2) Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901)

Minnesota:
- Class Definition: All persons in the State of Minnesota who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 15, 2010.
- Named Representative: Scott Sheehy
- Class Counsel: Humphrey, Farrington & McClain, PC; Maschka, Riedy, Ries & Frentz Law Firm
- Claims
  1) Unjust Enrichment
  2) Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43)

3) Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 324F.68)

Missouri:
- Class Definition: All persons in the State of Missouri who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 15, 2011.
- Named Representatives: Robert Oren, James Taschner
- Class Counsel: Humphrey, Farrington & McClain, PC; Simmons Hanly Conroy LLC
- Claims
  1) Unjust Enrichment
  2) Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010)

Nebraska:
- Class Definition: All persons in the State of Nebraska who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 2012.
- Named Representative: Janine Harvey
- Class Counsel: Humphrey, Farrington & McClain, PC
- Claims:
  1) Unjust Enrichment
  2) Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601)
  3) Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. § 87-301)

New Jersey:
- Class Definition: All persons in the State of New Jersey who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since December 2009.
- Named Representative: William Flinn
- Class Counsel: Humphrey, Farrington & McClain, PC; Clark Law Firm
- Claims:
  1) Unjust Enrichment
  2) New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1)

New York:
- Class Definition: All persons in the State of New York who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since December 2009.
- Named Representatives: Kevin Gadson, Robert Barrows, Jason Wood
- Class Counsel: Humphrey, Farrington & McClain, PC; Clark Law Firm; Simmons Hanly Conroy LLC
- Claims:

61

1) Unjust Enrichment
2) N.Y. Gen. Bus. Law § 349
3) N.Y. Gen. Bus. Law § 350

North Carolina:
- Class Definition: All persons in the State of North Carolina who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since on or before 2010.
- Named Representative: Brandon Raab
- Class Counsel: Humphrey, Farrington & McClain, PC; Daniels Law Firm, PC
- Claims:
  1) Unjust Enrichment
  2) North Carolina Consumer Protection Act (N.C. Gen. Stat. § 75-1.1)

Ohio:
- Class Definition: All persons in the State of Ohio who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, since February 2011.
- Named Representative: Miriam Fruhling
- Class Counsel: Humphrey, Farrington & McClain, PC; Futscher Law PLLC
- Claims:
  1) Unjust Enrichment
  2) Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01)

Wisconsin:
- Class Definition: All persons in the State of Wisconsin who purchased Defendants' DG-branded motor oil, DG SAE 10-W-30 and/or DG SAE 10W-40 for use in vehicles manufactured after 1988, and/or DG SAE 30 for use in vehicles manufactured after 1930, for personal use and not for resale, from May 8, 2011, to the present.
- Named Representative: Seit Alla
- Class Counsel: Humphrey, Farrington & McClain, PC; Ademi & O'Reilly, LLP
- Claims:
  1) Unjust Enrichment
  2) Wisconsin Deceptive Trade Practices Act (Wis. Stat. § 100.18)
  3) Wisconsin Unfair Methods of Competition and Trade Practices (Wis. Stat. § 100.20)


**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 21, 2019