# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

|  |  |
|---|---|
| | **MDL No. 2709** |
| **IN RE: DOLLAR GENERAL CORP. MOTOR OIL MARKETING AND SALES PRACTICES LITIGATION** | |
| | **Master Case No. 16-02709-MD-W-GAF** |
| **THIS PLEADING RELATES TO:** | |
| **ROBERT OREN V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00105** |
| **ROBERTO VEGA V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00518** |
| **ALLEN BROWN V. DOLLAR CORP., ET AL.;** | **Case No. 4:16-cv-00519** |
| **BRADFORD BARFOOT V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00520** |
| **GERARDO SOLIS V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00521** |
| **NICHOLAS MEYER V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00522** |
| **JOHN FOPPE V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00523** |
| **JOHN MCCORMICK, III V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00524** |
| **BRUCE GOOEL V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00525** |
| **SCOTT SHEEHY V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00526** |
| **JANINE HARVEY V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00528** |
| **WILLIAM FLINN V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00529** |
| **KEVIN GADSON V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00530** |
| **MIRIAM FRUHLING V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00531** |
| **ROBIN PREAS V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00533** |
| **JAMES TASCHNER V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00606** |
| **JASON WOOD, ET AL. V. DOLLAR GENERAL CORP., ET AL.;** | **Case No. 4:16-cv-00607** |
| **BRANDON RAAB V. DOLGENCORP, LLC;** | **Case No. 4:16-cv-00868** |
| **SEIT ALLA V. DOLGENCORP, LLC** | **Case No. 4:17-cv-00413** |

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, COSTS, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS[1]

---

[1] Plaintiffs have filed an unopposed motion to exceed the page limitation and file a supporting brief of not more than twenty pages. See Doc. 264. If Plaintiffs' motion is denied, Plaintiffs will seek leave to file substitute suggestions within the fifteen page limit.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.  INTRODUCTION ................................................................................................ 1

II. LITIGATION AND SETTLEMENT BACKGROUND ...................................... 1

    A.  Plaintiffs' Allegations and Initial Suits ..................................................... 1

    B.  The Case Involved Significant and Difficult Litigation .............................. 2

    C.  Settlement Negotiations and Resulting Settlement Agreement .................... 3

    D.  Preliminary Approval ................................................................................. 7

III. LAW AND ARGUMENT ................................................................................... 7

    A.  The Court Should Award Class Counsel $9,105,244.23 in Attorneys' Fees ................ 7

        1.  Legal standard ................................................................................... 7

        2.  The fee request should be evaluated under the lodestar method .......... 8

        3.  Class Counsel's lodestar figure is reasonable, and the requested award represents a negative multiplier ........................................................... 9

        4.  The *Johnson* factors confirm the reasonableness of the fee request ................ 10

            a.  *Johnson* factor 1: the time and labor required ........................... 10

            b.  *Johnson* factor 2: the novelty and difficulty of the questions ................... 10

            c.  *Johnson* factor 3: the skill requisite to perform the legal service properly ....................................................................... 11

            d.  *Johnson* factor 4: the preclusion of employment by the attorney due to acceptance of the case ..................................... 11

            e.  *Johnson* factor 5: the customary fee ....................................... 12

            f.  *Johnson* factor 6: whether the fee is fixed or contingent ........... 12

            g.  *Johnson* factor 7: time limitations imposed by the client or the circumstances .............................................................. 12

i

h. *Johnson* factor 8: the amount involved and the results obtained..............13

i. *Johnson* factor 9: the experience, reputation, and ability of the attorneys....................................................................15

j. *Johnson* factor 10: the undesirability of the case......................................15

k. *Johnson* factor 11: the nature and length of the professional relationship with the client.........................................................16

l. *Johnson* factor 12: awards in similar cases...............................................16

B. Reimbursement of Class Counsel's Costs and Litigation Expenses Should be Approved...................................................................................17

C. The Requested Service Awards Should be Approved ................................18

IV. CONCLUSION.................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                         ***Page***

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................................14, 15

*Barfield v. Sho-Me Power Elec. Co-op.,*
    No. 11-4321, 2015 WL 3460346 (W.D. Mo. June 1, 2015)...........................12

*Caligiuri v. Symantec Corp.,*
    855 F.3d 860 (8th Cir. 2017) .........................................................................16

*Claxton v. Kum & Go, L.C.,*
    No. 16-3385, 2015 WL 3648776 (W.D. Mo. June 11, 2015)........................18

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)...................................................................................8, 13

*Hermsen v. City of Kansas City,*
    No. 11-753 (W.D. Mo. Sept. 22, 2014) .........................................................18

*In re Charter Commc'ns, Inc., Sec. Litig.,*
    No. 02-1186, 2005 WL 4045741 (E.D. Mo. Jun. 30, 2005)...........................9

*In re Genetically Modified Rice Litig.,*
    764 F.3d 864 (8th Cir. 2014) ...........................................................................8

*In re Kula,*
    213 B.R. 729 (B.A.P. 8th Cir. 1997)................................................................8

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,*
    847 F.3d 619 (8th Cir. 2017) ...........................................................................7

*In re NTL, Inc. Sec. Litig.,*
    No. 02-3013, 2007 WL 623808 (S.D.N.Y. Mar. 1, 2007)..............................10

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    892 F.3d 968 (8th Cir. 2018) ..................................................................8, 9, 10

*In re Zurn Pex Plumbing Prod. Liab. Litig.,*
    No. 08-1958, 2013 WL 716460 (D. Minn. Feb. 27, 2013)..............................10

*Johnson v. Casey's Marketing Co.,*
    No. 15-3086, 2015 WL 12806576 (W.D. Mo. Dec. 12, 2015).......................18

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................8

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996) ............................................................7

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ...............................................7, 14, 17

*Matter of Malewicki*,
    142 B.R. 353 (Bankr. D. Neb. 1992) ..........................................11, 13

*Parton v. GTE N., Inc.*,
    802 F. Supp. 255 (W.D. Mo. 1991), *aff'd*, 971 F.2d 150 (8th Cir. 1992)........................13

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ........................................................17

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) .........................18

*Rawa v. Monsanto Co.*,
    No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018) ............................19

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ...............................................7, 8, 9

*Swinton v. SquareTrade, Inc.*,
    454 F. Supp. 3d 848 (S.D. Iowa 2020) .........................................11, 12, 15, 16

*Winter v. Cerro Gordo Cty. Conservation Bd.*,
    925 F.2d 1069 (8th Cir. 1991) .........................................................8

*Yarrington v. Solvay Pharm., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ............................................11

# I. INTRODUCTION

As chronicled previously, Plaintiffs' nearly five-year arduous litigation efforts resulted in a highly favorable Settlement marked by significant monetary and injunctive relief. *See* Pls.' Mot. for Prelim. Approval, ECF No. 257 at 2-7. Now, with the claims process underway, and in accordance with this Court's Order granting preliminary approval (ECF No. 259), Class Counsel move this Court for an award of $10,000,000 (ten million dollars) for attorneys' fees and reimbursement of litigation costs and expenses, and a $6,750 service award for each of the twenty (20) Class Representatives. As described below, Class Counsel's fee request, which represents a *negative* lodestar and does not diminish the benefits available to the Settlement Class, is more than reasonable, and the costs and expenses for which reimbursement is sought were necessary and typical. Likewise, the requested service awards reasonably recognize the risk, time and dedication of the Class Representatives in successfully prosecuting this matter and monitoring Dollar General's future compliance. Plaintiffs' Motion should be granted in its entirety.

# II. LITIGATION AND SETTLEMENT BACKGROUND

## A. Plaintiffs' Allegations and Initial Suits

Between late 2010 and early 2017, Dollar General sold millions of bottles of DG Auto motor oil in its retail stores, next to other brand name motor oils. Plaintiffs' Consolidated Amended Class Action Complaint, ECF No. 44 at ¶¶ 44-48. Unfortunately, though allegedly marketed as a cheaper but substantively identical alternative to the brand name counterparts, the DG Auto motor oil was rated SA or SF by the American Petroleum Institute, meaning it was not suitable for use in automobiles manufactured after 1930 or 1988, respectively. *Id.* at ¶¶ 58-63.

Between 2016 and 2017, a number of putative class actions were filed in federal courts across seventeen states, which were consolidated before this Court by the Judicial Panel on Multidistrict Litigation. Therein, Plaintiffs sought redress under state consumer protection and

1

warranty statutes for harms allegedly caused by Defendants' marketing and sale of DG Auto obsolete motor oil (also referred to herein as "the Product(s)"), which Plaintiffs alleged was obsolete and not suitable for use in automobiles. Plaintiffs alleged that the DG Auto obsolete motor oil label was deceptive by failing to adequately disclose that the Products were unsuitable, harmful, and ineffective for use as a motor oil for automotive engines manufactured after 1930 (for the SA-rated Products) or 1988 (for the SF-rated Products).

### B.    The Case Involved Significant and Difficult Litigation

The consolidated case was heavily litigated from its inception, marked by significant motion practice and discovery.[2] Plaintiffs, *inter alia*, resisted Defendants' efforts to stay discovery (ECF Nos. 14, 21); filed an extensive consolidated complaint (ECF No. 44); and fully briefed motions to dismiss (ECF. Nos. 85, 89, 91, 102), to strike class allegations (ECF Nos. 87, 88, 92), for class certification (and subsequent motions for reconsideration) (ECF Nos. 174, 184, 192, 228, 232, 234, 235, 236), and other discovery motions or motions *in limine* (ECF Nos. 16, 20, 186, 190, 197, 200, 201, 214, 221). Further, after prevailing in large part on their Motion for Class Certification,[3] Plaintiffs had to contend with Defendants' Rule 23(f) appeal, the petition for which was granted by the United States Court of Appeals for the Eighth Circuit.

_____

[2] In addition, the cases were first litigated to varying degrees in the transferor courts prior to transfer, with motions to dismiss and/or motions to strike class allegations being briefed in Colorado, Florida, Illinois, Kentucky, Maryland, Michigan, Minnesota, Missouri, New Jersey, and Ohio.

[3] On August 20, 2018, Plaintiffs moved for class certification, seeking certification of a nationwide unjust enrichment class, a multi-state implied warranty class, and seventeen (17) statewide sub-classes asserting violations of consumer protection statutes, implied warranty, and unjust enrichment claims. ECF No. 174. After extensive briefing, which included hundreds of exhibits and various motions to strike, the Court granted in part and denied in part Plaintiffs' Motion. *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-2709, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) (Class Certification Order). Specifically, the Court granted certification with respect to Plaintiffs' unjust enrichment classes and consumer protection classes, and denied certification of the proposed nationwide unjust enrichment, multi-state implied

Fact discovery was extensive. The Parties exchanged written discovery including initial disclosures and numerous rounds of interrogatories and requests for the production of documents, which resulted, *inter alia*, in the production of over 240,000 pages of documents. **Exhibit 1**, Declaration of Allan Kanner ("Kanner Decl.") at ¶ 14. Over forty fact witnesses were deposed, including Defendants' corporate representative, fourteen Dollar General current or former employees and/or officers, and each of the Class Representatives. *Id.* at ¶¶ 15-16. Class Counsel also undertook significant third-party discovery, serving subpoenas, receiving documents, and taking five depositions of various trade industry groups, Defendants' business partners, and even state regulators. *Id.* at ¶ 17. Defendants also took significant third-party discovery. *Id.* at ¶ 18. All of this work led to the creation of trial-ready exhibits which were also used in settlement negotiations.

Expert discovery was also fully completed. The Parties exchanged reports from fifteen experts in a wide range of fields. *Id.* at ¶¶ 19-20. Every expert was deposed, and the Parties were in the process of drafting dueling *Daubert* motions and motions for summary judgment when the case was stayed pending appeal. *Id.* at ¶¶ 21, 25. In short, litigation had proceeded to advanced stages, with little but a pending appeal of this Court's class certification order standing between the Parties and trials of each individual case once they were sent back to their respective transferor courts following the conclusion of the coordinated pretrial proceedings.

### C. Settlement Negotiations and Resulting Settlement Agreement

The Parties first began settlement discussions in November 2016 with a mediation before Jill Morris, the Court's then-Director of Mediation and Assessment Program. Kanner Decl. at ¶

---

warranty, and statewide implied warranty classes. *Id.* at *27-30; ECF No. 243 (certifying Texas class).

3

26. The Parties participated in two formal mediations and numerous teleconferences in between sessions with Ms. Morris, but the discussions were not fruitful. *Id.* During the course of the next year, counsel for the Parties continued to engage in settlement discussions among themselves. *Id.* at ¶ 27. Then, on April 24, 2019, the Parties turned again to formal mediation, mediating the Actions before Eric Van Loon, a highly respected JAMS mediator with more than 20,000 hours of mediation experience. *Id.* at ¶ 28. No agreement was reached on that date, but the Parties, working with Mr. Van Loon, continued their settlement discussions. *Id.* at ¶ 29. In the midst of settlement discussions, on June 26, 2019, the Eight Circuit granted Defendants' Rule 23(f) petition, creating a new risk for Plaintiffs. *Id.* at ¶ 30. After over a year of settlement negotiations under the supervision of Mr. Van Loon, the Parties agreed in principle to a Settlement on August 6, 2020. *Id.* at ¶ 31. Further negotiations continued on the details of an agreement, and a final Settlement Agreement was executed on February 1, 2021. *Id.* at ¶ 32; *see also* ECF No. 257-1 ("Settlement Agmt.") Notably, attorneys' fees were not discussed until *after* the class relief was agreed to. *Id.* at ¶ 34; Settlement Agmt. at 38.

For settlement purposes only, Plaintiffs sought conditional certification of the Settlement Class, which broadens the previously certified classes to include:

> All Persons in the United States who, between September 1, 2010 and December 31, 2017, for personal use and not for resale, purchased Defendants' DG-branded motor oil, DG SAE 10W-30 (SF specification) and/or DG SAE 10W-40 (SF specification) for use in vehicles manufactured after 1988, and/or DG SAE 30 (SA specification) for use in vehicles manufactured after 1930.

> Excluded from the Settlement Class are: (a) Dollar General, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or their officers and/or directors; (b) Judges, justices, magistrates or judicial officers presiding over this matter and their immediate family members and staff; (c) Counsel for Plaintiffs in the lawsuits listed

above and their employees; and (d) any Settlement Class Member who files a valid, timely Opt-Out request.

Settlement Agmt. at 11-12. The Court conditionally certified this Class in its Preliminary Approval Order. ECF No. 259 at 1-2.

The key terms of the Settlement Agreement are as follows:

1. Defendants agree to permanently stop selling the obsolete version of its DG Auto brand motor oil—the prime point of contention in this lawsuit—replacing it with a modern specification motor oil which they will continue to update as the standards evolve (subject to minor limitations).[4] Settlement Agmt. at 13.

2. Defendants will employ a full-time employee to monitor the quality of its motor oil, review customer complaints, consult with vendors to ensure compliance with applicable specifications and labeling requirements, and make quarterly reports to Dollar General's Vice President for Global Compliance. *Id.* at 14.

3. Defendants will pay up to $28.5 million to compensate purchasers of the DG Auto obsolete motor oil, consisting of Partial or Full Refund Benefits and Property Damage Benefits:

   a. Partial Refund Benefits without Proof of Purchase: Settlement Class Members without proof of purchase can recover $1.68 per quart of the Products purchased during the Settlement Class Period,[5] with a maximum household (same address) recovery of $16.80 (10 quarts). *Id.* at 15.

   b. Full Refund Benefits with Proof of Purchase: Settlement Class Members with proof of purchase can recover the full amount spent on the Products during the Settlement Class Period for which they have proofs of purchase. *Id.*

   c. Property Damage Benefits: Settlement Class Members who sustained automotive damage to post-1988 cars (SF purchasers) or post-1930 cars (SA purchasers) from the use of the Products can seek reimbursement for that property damage subject to an aggregate cap of $4,275,000. *Id.* at 16-20. All Property Damage Benefit claimants must provide the year / make / model of the damaged automobile, the damage date and repair cost (if known), documentation showing ownership, and a

---

[4] In situations where an active specification motor oil is re-categorized as non-active, the permanent injunction shall expressly allow for a twelve (12) month window during which Defendants can attempt to sell-through their current inventory of non-active specification motor oil, unless a regulatory agency directs otherwise. Settlement Agmt. at 13-14.

[5] For the vast majority of the Class Period, the retail price of the Product in most markets was $2.75 per quart. Kanner Decl. at ¶ 36. Further, the Settlement Class Period encompasses the entire time Dollar General sold the Product, so that every consumer who ever purchased the Product may participate in this Settlement. *Id.* at ¶ 37.

description of the damage. The Property Damage Benefit amount depends on the level of additional proof provided, and the age and/or mileage of the automobile (wherein the decision is made independently by a Special Master):

  i. Vehicle damage diagnosed by an ASE certified mechanic: for Settlement Class Members providing repair receipts / estimates / work orders and an affidavit from an Automotive Service Excellence (ASE) certified mechanic, up to $2,250 (depending on the age and mileage on the vehicle). *Id.* at 19-20.

  ii. Vehicle damage diagnosed by someone other than an ASE certified mechanic: for Settlement Class Members providing repair receipts / estimates / work orders and an affidavit from someone other than a certified mechanic, up to $500 (depending on the age and mileage on the vehicle). *Id.* at 17-19.

d. Settlement Class Members may submit claims for either Partial Refund Benefits or Full Refund Benefits *and* for Property Damage Benefits (if applicable). *Id*. at 16.

4. Notice is being provided pursuant to a comprehensive, nationwide notice campaign paid for by Dollar General (with an estimated cost of almost $300,000.00). *Id.* at 26; *see also* Kanner Decl. at ¶ 39.

5. Settlement Class Members (except for Class Representatives) may opt-out of the Settlement Class at any time during the opt-out period. Settlement Agmt. at 30.

6. Settlement Class Members who submit a timely and valid claim (whether by mail or online) will receive a settlement check or electronic payment. *Id.* at 23.

7. Dollar General will pay for settlement administration costs (including the Settlement Administrator and the Property Damage Benefits Special Master). *Id.* at 28.

8. Class Counsel will seek, and Defendants will not object to, attorneys' fees and costs in the amount of $10 million, representing 90.6% percent of the current lodestar, and reimbursement of current expenses and costs totaling $894,755.77. *Id.* at 37-38; *see also* Kanner Decl. at ¶¶ 42-47.

9. The Class Representatives will seek, and Defendants will not object to, $135,000 in Service Awards to be allocated equally among the twenty (20) Class Representatives. Settlement Agmt. at 38-39.

The award of attorneys' fees and costs, Service Awards, and the costs associated with notice, administration, and the Settlement Administrator and the Special Master will be paid for by Dollar General and will not diminish the recovery of the Settlement Class. *Id.* at 28, 37, 39.

6

### D. Preliminary Approval

On February 8, 2021, this Court granted preliminary approval of the Settlement. *See* Preliminary Approval Order, ECF No. 259. As relevant to the instant motion, the Court therein found the Settlement was reached after arm's length negotiation between experienced counsel. *Id.* at 1. The Court also set various deadlines, including the deadline for Class Counsel to file a motion for attorneys' fees, costs, and Service Awards. *Id.* at 9. Class Counsel submits this fee application in accordance with that schedule.

## III. LAW AND ARGUMENT

### A. The Court Should Award Class Counsel $9,105,244.23 in Attorneys' Fees

#### 1. Legal standard

In the Eighth Circuit, "[t]he district court has discretion to use either a lodestar or percentage-of-the-fund method in determining an appropriate recovery[.]" *Rawa v. Monsanto Co*., 934 F.3d 862, 870 (8th Cir. 2019). "'Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action.'" *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)). "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnston*, 83 F.3d at 244-45. "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (internal quotations and citations omitted).

After choosing which method, the Court then evaluates "the ultimate reasonableness of the award…by considering relevant factors from the twelve factors listed in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 719-20 (5th Cir. 1974).'" *Rawa*, 934 F.3d at 870 (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). "'The [*Johnson*] factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.'" *In re Target Corp.*, 892 F.3d at 977 (quoting *Winter v. Cerro Gordo Cty. Conservation Bd.*, 925 F.2d 1069, 1074 n.8 (8th Cir. 1991) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)). In the Eighth Circuit, "the lodestar amount is presumed to be reasonable[.]" *In re Kula*, 213 B.R. 729, 738 (B.A.P. 8th Cir. 1997). The Eighth Circuit further "'give[s] substantial deference to a district court's determinations, in light of the district court's superior understanding of the litigation.'" *Rawa*, 934 F.3d at 870 (quoting *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 871 (8th Cir. 2014)).

## 2.     The fee request should be evaluated under the lodestar method

Class Counsel respectfully submit that the lodestar method is most appropriate in awarding attorneys' fees for a number of reasons. First, there is no common fund created in this case. Second, the injunctive relief is significant. Dollar General is not providing labeling disclosures on an inferior product, but rather replacing the Products with modern-specification motor oil, which it will continue to update.

Finally, as described below, the amount sought by Class Counsel actually represents a *negative* multiplier. Since Class Counsel are seeking less than their actual lodestar, this plainly brings this case within the range of awards in similar cases. *See, e.g., In re Target Corp.*, 892 F.3d at 977 (negative 0.74 multiplier evidence of reasonableness); *Rawa*, 934 F.3d at 870 ("while the 5.3 lodestar multiplier is high, it does not exceed the bounds of reasonableness"); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding reasonable a 5.61 cross-check multiplier and noting that "[t]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services") (internal quotation omitted)).

### 3. Class Counsel's lodestar figure is reasonable, and the requested award represents a negative multiplier

As noted in the attached declaration, the total time incurred by Class Counsel is 21,046.62 hours.[6] Kanner Decl. at ¶ 46. These hours were all necessary for the successful prosecution of this matter, and assignments were delegated by Lead Counsel to avoid duplication of effort. *Id.* at ¶ 56. Itemized time records were collected from each firm on a monthly basis and reviewed by Lead Counsel. *Id.* at ¶¶ 50-53. Further, non-billable time (such as that incurred preparing billing records or this fee application) were excluded from the lodestar. *Id.* at ¶ 52. The hourly rates, ranging from $200 to $1,000 (attorneys) and $115 to $225 (staff and paralegals) are reasonable with respect to consumer class actions and complex litigation and represent each firm's standard and customary hourly rates. *Id.* at ¶¶ 54, 57.

Though Plaintiffs' lodestar is $10,047,652.02, they seek only $9,105,244.23 in fees,

---

[6] Class Counsels' work here is not done, and their lodestar and costs and expenses will inevitably increase through subsequent filings and any potential appeals. Further, Class Counsel will supervise the administration of the Settlement, and monitor compliance with the Settlement Agreement's injunctive relief provisions. Kanner Decl. at ¶ 49.

9

representing a *negative* multiplier of 0.906. Kanner Decl. at ¶¶ 47-48. This makes the fee request under the lodestar method more than presumptively reasonable. *See, e.g., In re Target*, 892 F.3d at 977 (noting district court's finding that requested fee "amounts to a negative lodestar multiplier of .74"); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-1958, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013) (noting "ongoing work in finalizing this litigation and administering claims…will erode the fee award to a negative lodestar multiplier"); *In Re NTL, Inc. Sec. Litig.*, No. 02-3013, 2007 WL 623808, at *8 (S.D.N.Y. Mar. 1, 2007) (fee awards based on negative lodestars are fair and reasonable).

### 4. The *Johnson* factors confirm the reasonableness of the fee request

The *Johnson* factors further confirm the reasonableness of the fee request. Each factor is analyzed below, with each factor underscoring the reasonableness of Plaintiffs' fee request.

#### a. *Johnson* factor 1: the time and labor required

The actual time and labor required, as represented by Class Counsel's lodestar, exceeds the amount sought in attorneys' fees. This consolidated case was zealously defended and heavily litigated, marked by significant fact and expert discovery, motion practice, appellate briefing, and settlement negotiations. *See supra,* Sections II(B)-(C). As a result, Class Counsel necessarily incurred a lodestar of $10,047,652.02, which represents more than what Class Counsel now request in awarded fees. The time and labor required support Plaintiffs' fee request.

#### b. *Johnson* factor 2: the novelty and difficulty of the questions

This case involved novel and difficult questions with respect to fact, law, and procedure. The factual scenario (out-of-specification automotive motor oil) was novel, and Class Counsel did not have the benefit of precedent with which to assess the viability of the claims, nor could they piggy-back on the work of others. Kanner Decl. at ¶ 63. The case involved experts in fields rarely seen in civil litigation, such as tribology (the science of fluid lubrication). *Id.* at ¶ 64.

10

The case also involved difficult questions of law and procedure. Several courts have recognized that multi-state consumer protection class actions present significant risks, such as choice-of-law and class certification issues. *See, e.g., Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1062-63 (D. Minn. 2010) (recognizing the risk involved in case implicating different state laws and noting that "[e]ven if Plaintiffs had obtained class certification, the trial of their claims under multiple state consumer laws would have required substantial preparation and involved the presentation of dozens of witnesses and numerous experts, with no assurance of a favorable outcome"). Further, this case involved legal issues that were novel (such as potential preemption or safe harbor defenses as applied to automotive oil) and difficult (such as the appellate briefing around ascertainability). The novelty and difficulty of the questions implicated by this case support the requested fee award.

c.     ***Johnson* factor 3: the skill requisite to perform the legal service properly**

Given the novelty and difficulty of the questions, this case demanded attorneys well-versed in complex, multi-district consumer class action litigation. "Class actions are not easy cases. It takes lawyers of great skill to navigate the procedural and substantive hurdles inherent in them and, should such a matter settle, arrive at a settlement that is fair to the class as a whole." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 886 (S.D. Iowa 2020). This Court witnessed first-hand Class Counsel's skill in representing the classes here. The third *Johnson* factor supports Plaintiffs' fee request.

d.     ***Johnson* factor 4: the preclusion of employment by the attorney due to acceptance of the case**

Due to the length and complexity of this case, as well as its substantial costs, the attorneys involved were necessarily precluded from undertaking other cases. *See, e.g., Matter of Malewicki*, 142 B.R. 353, 357 (Bankr. D. Neb. 1992) (this factor weighs in favor of fee request where "[l]egal

11

services may be required over…36 months"). Here, this case has been actively litigated for nearly five years, and during that period, there were significant time periods where members of Class Counsel were emersed in the litigation, such as in responding to discovery, reviewing the voluminous document productions, taking and defending depositions, and working with experts to prepare reports and take and defend expert depositions. This factor supports the reasonableness of the requested fee.

### e. *Johnson* factor 5: the customary fee

Class Counsel seek reimbursement of fees under the lodestar method, which is one of two customary methods by which to calculate the reasonableness of fees. Courts also recognize the availability of statutory fees under the fee-shifting provisions of state consumer protection statutes, such as those at issue here. *Swinton*, 454 F. Supp. 3d at 886-87. This factor weighs in favor of finding Plaintiffs' requested fee to be reasonable.

### f. *Johnson* factor 6: whether the fee is fixed or contingent

Here, Class Counsel's retention agreements with the Class Representatives provide for payment of fees contingent upon success. Kanner Decl. at ¶ 65. As a result, Class Counsel have litigated this case for almost five years, and expended hundreds of thousands of dollars in expenses, without receiving any payment or reimbursement to date. This factor thus weighs in favor of the fee request. *See, e.g., Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-4321, 2015 WL 3460346, at *5 (W.D. Mo. June 1, 2015) (contingency fee agreement with class representatives supported requested fee).

### g. *Johnson* factor 7: time limitations imposed by the client or the circumstances

Here, significant time limitations were imposed by the circumstances in this case. Where the party making the fee request had limited "control over the case because [the opposing party]

may take the initiative with motions to dismiss [or other relief] [and] must always react within the time limits imposed by the court," this factor weighs in favor of the requested fee. *Matter of Malewicki*, 142 B.R. at 357. As noted above, Dollar General was hardly a passive litigant and filed a number of aggressive motions (and an appeal) that Class Counsel were forced to respond to under strict time limitations. This factor supports the reasonableness of the requested fee.

h. *Johnson* factor 8: the amount involved and the results obtained

Courts routinely provide that "the 'most critical factor is the degree of success obtained.'" *Parton v. GTE N., Inc.*, 802 F. Supp. 255, 257 (W.D. Mo. 1991), *aff'd*, 971 F.2d 150 (8th Cir. 1992) (quoting *Hensley*, 461 U.S. at 436). As described above, the Settlement provides up to $28.5 million in monetary benefits for Settlement Class Members. Those claimants with proof of purchase may receive the full amount they spent on the Products. Claimants with no proof of purchase may receive $1.68 per quart (out of the approximate $2.75 actually spent), up to $16.80 per household. *See supra*, Section II(C). The Settlement also provides up to $4.275 million for Settlement Class Members whose automobiles suffered damage, with an independent Special Master to oversee the process and make compensation determinations. *Id.* In addition, the Settlement also provides that Dollar General will pay the cost of notice and administration, as well as attorneys' fees and costs for Class Counsel, separate and apart from the monetary benefits available for Settlement Class Members.

Further, the Settlement in this case actually provides benefits that would not be achievable even if Plaintiffs were to prevail at trial. First, the *nationwide* Settlement Class is a significant expansion of the seventeen state-only classes previously certified by this Court. *Compare* Settlement Agmt. at 11-12 to ECF No. 21 at 58-62. As Plaintiffs' economic model demonstrates, Dollar General's sales nationwide were more than double the total sales for the certified states. Kanner Decl. at ¶ 38; *see also* ECF No. 175-49 at Table 1 (comparing refund damages in certified

13

states to implied warranty nationwide damages). The Eighth Circuit has noted that a nationwide settlement for a case where nationwide relief would not otherwise be possible strongly weighs in favor of approving the Settlement. *See Keil*, 862 F.3d at 696 ("although the district court certified the class for purposes of settlement, it is uncertain whether, if the case proceeded to trial, this multistate class of consumers would have created 'intractable management problems' requiring the district court to decertify it") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Second, the Settlement extends back to 2010, encompassing the entire time Dollar General sold the Products, a window that would be unavailable to most class members had the cases gone to trial, given the statutes of limitations at issue. *Id.* Only five of the certified state classes extended back to 2010. ECF. No. 213 at 58-62.

Third, since selling obsolete oil is not *per se* illegal, Plaintiffs' best hope for injunctive relief at trial would be labeling changes. But here, Defendants have agreed to not only permanently cease selling the Products, but to replace them with high-quality, modern specification motor oil, which Defendants will continue to update as the specifications evolve. Settlement Agmt. at 13.

Fourth, Defendants have also agreed to employ a full-time employee to monitor the quality of its motor oil, review customer complaints, consult with vendors to ensure compliance with applicable specifications and labeling requirements, and make quarterly reports to Dollar General's Vice President for Global Compliance. *Id.* at 14. This changes the way Dollar General operates and lowers the risk of harm to consumers going forward. Given that Defendants' liability was not contingent upon its failure to have such an employee, it is speculative as to whether this type of relief could have been achieved at trial.

Finally, the Settlement provides a mechanism whereby consumers suffering damage to

14

their automobiles may seek compensation, a benefit that is rarely seen in consumer class actions. It is not clear whether this would have been possible following trial given the manageability issues regarding same. But, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods.*, 521 U.S. at 620.

In short, Class Counsel not only achieved an excellent result, but one that goes beyond what they could ever hope to achieve at trial. Despite this, Plaintiffs still seek a negative multiplier of 0.906. The eighth *Johnson* factor strongly supports the reasonableness of the proposed fee award.

> i. ***Johnson* factor 9: the experience, reputation, and ability of the attorneys**

With respect to the ninth *Johnson* factor, this Court (in granting class certification) noted that "Plaintiffs provide that they are represented by experienced class action counsel that will vigorously prosecute the case." ECF No. 228 at 31 (citing ECF No. 174-34). As the firm biographies note, Class Counsel has been recognized by many courts for its mastery of multi-district consumer class actions similar to the one at hand. *See* ECF No. 174-34. Accordingly, this factor supports the reasonableness of the proposed fee award.

> j. ***Johnson* factor 10: the undesirability of the case**

Related to the fifth and sixth "fee-based factors [is] the tenth *Johnson* factor: the undesirability of the case." *Swinton*, 454 F. Supp. 3d at 887. As explained by one court, this factor supports the reasonableness of the lodestar fee in consumer protection cases like this one:

> In cases, such as here, where an individual's damages may be relatively modest, plaintiffs may be unwilling (or unable) to pay attorney's fees and costs in advance. Thus, were it not for statutory provisions allowing for awards of attorney's fees and costs to prevailing parties, and attorneys willing to assume representation on a contingent fee basis because of those provisions, it would be

15

> difficult for a plaintiff to obtain legal representation in such matters. Consequently, public policy favors adequate fee awards in cases involving fee-shifting statutes so as to encourage aggrieved plaintiffs to bring such actions and to provide incentives for counsel to take them on a contingent fee basis.

*Id.* This case likewise involved small individual claims based on fee-shifting consumer protection statutes. Accordingly, this factor also supports the reasonableness of Plaintiffs' requested fee.

### k. *Johnson* factor 11: the nature and length of the professional relationship with the client

The eleventh *Johnson* factor is most often met in the consumer class action context where Class Counsel has "represented [the Class Representatives] for [multiple] years in this case, and [the Class Representatives] have been actively involved in this matter." *Swinton*, 454 F. Supp. 3d at 888. This litigation has been ongoing for multiple years, and as explained *infra*, Section III(C), the Class Representatives have been actively involved in not only the litigation but will also monitor Dollar General's injunctive relief obligations. Because "[t]his shows [the Class Representatives] and [their] attorneys have had a positive, cooperative professional relationship[,]" this factor also supports the reasonableness of the proposed fee award. *Id.*

### l. *Johnson* factor 12: awards in similar cases

The last *Johnson* factor also weighs in Plaintiffs' favor because "lodestar multipliers under two are commonly approved in the Eighth Circuit." *Swinton*, 454 F. Supp. 3d at 888 (citing *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017)). Here, Class Counsel seek a lodestar with a 0.906 *negative* multiplier.

Because the lodestar sought here is presumptively reasonable, courts do not "cross-check"

16

it against the common fund.[7] This task is made even more irrelevant where, as here, the Settlement does not establish a common fund and contains *significant* non-monetary relief. Even so, as part of their motion for final approval, Plaintiffs will submit the Declaration and Report of Dr. Kurt Krueger, an economist retained by Class Counsel. Kanner Decl. at ¶ 69. Dr. Krueger's report will calculate the economic value of one component of the injunctive relief: the commitment to provide modern-specification motor oils in the future. *Id.* at ¶ 70. Based on Dr. Krueger's initial review, Plaintiffs anticipate this number to exceed $20,000,000 (twenty million dollars) on an annual basis. *Id.* at ¶ 71. Thus, even if the Court were to take the unusual step of considering the monetary value of the injunctive relief in assessing the reasonableness of the fee, the fee amount requested represents a small fraction of the benefits Settlement Class Members will enjoy going forward. This is in addition to the pure monetary components of the Settlement.

Plaintiffs' request for its lodestar with a negative multiplier is far less than what is awarded in similar cases. The twelfth *Johnson* factor—like each of the eleven before it—underscores the reasonableness of Plaintiffs' fee request.

## B.    Reimbursement of Class Counsel's Costs and Litigation Expenses Should be Approved

Class Counsel have thus far incurred a total of $894,755.77 in properly documented costs and litigation expenses. Kanner Decl. at ¶ 58. These costs and expenses were reasonable and necessary in the pursuit of this litigation and the results obtained. *Id.* at ¶¶ 54, 60. Courts routinely reimburse costs and expenses in class action litigation like those incurred by Class Counsel, including, *inter alia*, those relating to "travel expenses; expert compensation; transcripts; . . .

---

[7] Rather, the lodestar is used to cross-check the reasonableness of a "percentage of the benefit approach." *Keil*, 862 F.3d at 701 (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). And even then, a court is "not required to do so[.]" *Id.*

17

mediation charges; copying documents; document hosting; telephone, postage, and delivery costs; making court appearances; and communicating with class members." *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 224 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018).

Further, these costs and expenses will be paid from the total $10 million fee and expense request, which was negotiated only after the relief to the Settlement Class was agreed upon, and will not reduce any benefits made available to the Settlement Class. Kanner Decl. at ¶ 61. Class Counsel put forward these necessary out-of-pocket costs without assurance that they would ever be repaid. *Id.* at ¶ 62. The requested amount is therefore reasonable and should be approved.

### C. The Requested Service Awards Should be Approved

Plaintiffs request a service award of $6,750 to each Class Representative.[8] As with the attorneys' fees and expenses, Defendants' payment of the Service Awards will be separate and apart from the monetary benefits available to Settlement Class Members. Settlement Agmt. at 38.

In light of their value compared to the overall benefit of the Settlement, the Service Awards are reasonable. Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See, e.g., Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776, at *2, 7 (W.D. Mo. June 11, 2015) (approving incentive award to named plaintiff in the amount of $14,145); *Johnson v. Casey's Marketing Co.*, No. 15-3086, 2015 WL 12806576, at *1 (W.D. Mo. Dec. 12, 2015) (approving the terms of the settlement agreement, including incentive award to named plaintiff in the amount of $7,500); *Hermsen v. City of Kansas City*, No. 11-753 (W.D. Mo. Sept. 22, 2014) (ECF No. 115) (approving service award to named plaintiff in the

---

[8] The Settlement provides that Defendants will pay a Service Award to the Class Representatives in a total amount not to exceed $135,000, which is $6,750 for each of the twenty Class Representatives. Settlement Agmt. at 38.

amount of $42,282); *Rawa v. Monsanto Co*., No. 17-1252, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018) (approving service awards of $10,000; $5,000 and $2,500).

Here, each Class Representative invested significant time in the litigation by working with Class Counsel to facilitate the investigation, litigation, and resolution of this matter. Kanner Decl. at ¶ 74. They each received and reviewed various drafts and final pleadings, provided Class Counsel with pertinent information, responded to written discovery and provided responsive documents, and were deposed by Dollar General's counsel. Kanner Decl. at ¶¶ 75-78. The Class Representatives also received and carefully reviewed the Settlement Agreement to understand its terms and benefits to the Settlement Class, and discussed same with Class Counsel. *Id.* at ¶ 79. Further, the Class Representatives have agreed to assist in Class Counsels' future efforts to monitor Dollar General's compliance with the "modern specification" injunctive relief component. *Id.* at ¶ 80. Declarations of each of the Class Representatives describing their respective efforts in the litigation are attached to the Kanner Declaration as **Exhibit A**.

Given the importance of the assistance provided by the Class Representatives, and their ongoing commitment to help monitor compliance with the Settlement's terms, these Service Awards are reasonable.

## IV.    CONCLUSION

For all of the aforementioned reasons, Plaintiffs' Motion should be granted in its entirety. The Court should award Class Counsel $10 million in attorneys' fees, costs, and litigation expenses, as well as $135,000 in service awards to be distributed equally among the Class Representatives.

Dated: April 26, 2021                              Respectfully submitted,

19

/s/ Kenneth B. McClain
Kenneth B. McClain
Kevin D. Stanley
Colin W. McClain
J'Nan C. Kimak
Andrew K. Smith
HUMPHREY FARRINGTON & MCCLAIN, P.C.
221 West Lexington, Suite 400
Independence, Missouri 64050
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
kds@hfmlegal.com
cwm@hfmlegal.com
jck@hfmlegal.com
aks@hfmlegal.com
*Liaison Class Counsel*

and

Allan Kanner
Cynthia St. Amant
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
Fax: (504) 524-5763
a.kanner@kanner-law.com
c.stamant@kanner-law.com
*Lead Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2021, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

/s/ Kenneth B. McClain
Kenneth B. McClain